1  Derek W. Loeser, WSBA #24274
2  Gretchen S. Obrist, WSBA #37071
   KELLER ROHRBACK L.L.P.
3  1201 Third Avenue, Suite 3200
   Seattle, WA 98101
4  Tel: (206) 623-1900

5  *Attorneys for Plaintiffs*

6

7               UNITED STATES DISTRICT COURT
8          WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9  JEANINE PRESCOTT, MICHAEL BEWLEY,
   SCOTT STRUMELLO, JULIA BOSS, and
10 TYPE 1 DIABETES DEFENSE                    Civil Action No.
   FOUNDATION (T1DF), INDIVIDUALLY
11 AND ON BEHALF OF ALL OTHERS
   SIMILARLY SITUATED,                        CLASS ACTION COMPLAINT AND
12                                            DEMAND FOR JURY TRIAL
13                          Plaintiffs,

14        v.

15 CVS HEALTH CORPORATION,
   CAREMARK RX, L.L.C., CAREMARK RX,
16 INC., EXPRESS SCRIPTS HOLDING
   COMPANY, EXPRESS SCRIPTS, INC.,
17 UNITEDHEALTH GROUP, INC.,
   OPTUMRX, INC., ABBOTT
18 LABORATORIES, ABBOTT DIABETES
   CARE, INC., ABBOTT DIABETES CARE
19 SALES CORPORATION, BAYER
   HEALTHCARE LLC, ASCENSIA DIABETES
20 CARE US INC., LIFESCAN, INC., JOHNSON
   & JOHNSON, ROCHE DIAGNOSTICS
21 CORPORATION,

22                          Defendants.
23

24

25

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL        **KELLER ROHRBACK L.L.P.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I.      INTRODUCTION ................................................................................. 1

II.     PARTIES ........................................................................................... 11

        A.      Plaintiffs. ................................................................................ 11

        B.      Defendants. ............................................................................. 15

III.    JURISDICTION AND VENUE .......................................................... 18

IV.     FACTUAL ALLEGATIONS .............................................................. 20

        A.      Millions of patients use blood glucose test strips to avoid serious
                and even life threatening complications of diabetes. ......................... 20

        B.      The diabetes care market is enormous. ......................................... 23

        C.      The prescription medical product supply chain. ............................. 24

        D.      Consumer costs in the test strip supply chain. ................................ 26

        E.      The rise of the PBMs in the pharmaceutical supply chain. ................ 29

        F.      The Test Strip Pricing Scheme. ................................................... 34

        G.      The Manufacturer Defendants' test strips are drastically
                overpriced. .............................................................................. 39

                1.      Even though test strips cost pennies to produce, the
                        Manufacturer Defendants charge more than a dollar per
                        strip. ............................................................................ 39

                2.      Identical strips sold in other markets are much cheaper. ......... 39

                3.      List prices for the Manufacturer Defendants' test strips
                        continue to rise. ............................................................. 40

        H.      PBMs collude with the Manufacturer Defendants to inflate test
                strip prices. ............................................................................. 41

        I.      The Defendants profit at the financial and physical expense of
                consumers. .............................................................................. 43

V.      ERISA ALLEGATIONS ..................................................................... 44

        A.      The PBM Defendants are fiduciaries and parties in interest. ............. 44

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

B.     The PBM Defendants' ERISA duties. ............................................... 53

C.     The PBM Defendants breached their duties. .................................... 58

VI.     EQUITABLE TOLLING AND THE DISCOVERY RULE ........................ 60

VII.     CLASS ACTION ALLEGATIONS .................................................. 62

VIII.     CLAIMS FOR RELIEF ................................................................ 68

COUNT ONE — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
ACT, 18 U.S.C. §1961, *ET SEQ.* ........................................................ 68

A.     Description of the CVS Health RICO Enterprise. ............................ 69

B.     The CVS Health RICO Enterprise Sought to Fraudulently Increase
Defendants' Profits and Revenues. .................................................. 72

C.     Predicate Acts: Mail and Wire Fraud. ............................................ 74

COUNT TWO — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
ACT, 18 U.S.C. §1961, ET SEQ. ........................................................ 78

A.     Description of the Express Scripts RICO Enterprise. ....................... 79

B.     The Express Scripts RICO Enterprise Sought to Fraudulently
Increase Defendants' Profits and Revenues. .................................... 82

C.     Predicate Acts: Mail and Wire Fraud. ............................................ 85

COUNT THREE — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
ACT, 18 U.S.C. §1961, *ET SEQ.* ........................................................ 89

A.     Description of the OptumRx RICO Enterprise. ............................... 90

B.     The OptumRx RICO Enterprise Sought to Fraudulently Increase
Defendants' Profits and Revenues. .................................................. 93

C.     Predicate Acts: Mail and Wire Fraud. ............................................ 95

COUNT FOUR — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)
FOR VIOLATIONS OF ERISA § 406(B), 29 U.S.C. § 1106(B) ............... 100

COUNT FIVE — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)
FOR VIOLATIONS OF ERISA § 404, 29 U.S.C. § 1104 ......................... 102

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- ii

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COUNT SIX — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)
FOR VIOLATIONS OF ERISA § 702, 29 U.S.C. § 1182 .........................................104

COUNT SEVEN — PURSUANT TO ERISA § 502(A)(3), 29 U.S.C. §
1132(A)(3) FOR KNOWING PARTICIPATION IN VIOLATIONS OF
ERISA .....................................................................................................................107

COUNT EIGHT — VIOLATIONS OF ALABAMA DECEPTIVE TRADE
PRACTICES ACT (ALA. CODE § 8-19-1, *ET SEQ.*) ...............................................108

COUNT NINE — VIOLATION OF THE ALASKA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT.
§ 45.50.471, *ET SEQ.*) ............................................................................................112

COUNT TEN — VIOLATIONS OF THE ARIZONA CONSUMER FRAUD
ACT  (ARIZ. REV. STAT. § 44-1521, *ET SEQ.*)......................................................114

COUNT ELEVEN — VIOLATIONS OF THE ARKANSAS DECEPTIVE
TRADE PRACTICES ACT (ARK. CODE ANN. § 4-88-101, *ET SEQ.*) ..................117

COUNT TWELVE — VIOLATION OF CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)..........................................120

COUNT THIRTEEN — VIOLATIONS OF CALIFORNIA FALSE
ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)...............124

COUNT FOURTEEN — VIOLATIONS OF THE CALIFORNIA UNFAIR
COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*).................125

COUNT FIFTEEN — VIOLATIONS OF THE COLORADO CONSUMER
PROTECTION ACT (COL. REV. STAT. § 6-1-101, *ET SEQ.*)................................128

COUNT SIXTEEN — VIOLATIONS OF CONNECTICUT UNLAWFUL
TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET SEQ.*) .................131

COUNT SEVENTEEN — VIOLATIONS OF THE DELAWARE CONSUMER
FRAUD ACT (6 DEL. CODE § 2513, *ET SEQ.*) ......................................................134

COUNT EIGHTEEN — VIOLATIONS OF FLORIDA'S UNFAIR &
DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET
SEQ.*)......................................................................................................................137

COUNT NINETEEN — VIOLATIONS OF GEORGIA'S FAIR BUSINESS
PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ.*)...................................139

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- iii

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT TWENTY — VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN. § 10-1-370, *ET SEQ.*) ..............................................................................142

COUNT TWENTY-ONE — UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW (HAW. REV. STAT. § 480, *ET SEQ.*) .................145

COUNT TWENTY-TWO — VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE § 48-601, *ET SEQ.*) ........................................148

COUNT TWENTY-THREE — VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A) ...................................................151

COUNT TWENTY-FOUR — VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) ............................................155

COUNT TWENTY-FIVE — VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*) ......................................................................158

COUNT TWENTY-SIX — VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. § 50-623, *ET SEQ.*) .................................160

COUNT TWENTY-SEVEN — VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. § 367.110, *ET SEQ.*) ..........................................................................................................163

COUNT TWENTY-EIGHT — VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. REV. STAT. § 51:1401, *ET SEQ.*) ...........................................................166

COUNT TWENTY-NINE — MAINE UNFAIR TRADE PRACTICES ACT (MUTPA) AND UNIFORM DECEPTIVE TRADE PRACTICES ACT (MUDTPA) (5 M.R.S.A. § 205-A *ET SEQ.*, 5 M.R.S.A. § 1211 *ET SEQ.*) ...............168

COUNT THIRTY — VIOLATIONS OF THE MARYLAND  CONSUMER PROTECTION ACT (MD. CODE COM. LAW § 13-101, *ET SEQ.*) ........................172

COUNT THIRTY-ONE — DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*) ...........................................................................................................175

COUNT THIRTY-TWO — VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.903, *ET SEQ.*) ..........................178

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- iv

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT THIRTY-THREE — VIOLATIONS OF MINNESOTA PREVENTION
  OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, *ET SEQ.*).......................181

COUNT THIRTY-FOUR — VIOLATIONS OF MINNESOTA UNIFORM
  DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43-48,
  *ET SEQ.*) ........................................................................................................184

COUNT THIRTY-FIVE — VIOLATIONS OF MISSISSIPPI CONSUMER
  PROTECTION ACT (MISS. CODE. ANN. § 75-24-1, *ET SEQ.*).............................187

COUNT THIRTY-SIX — VIOLATIONS OF MISSOURI MERCHANDISING
  PRACTICES ACT (MO. REV. STAT. § 407.010, *ET SEQ.*)....................................190

COUNT THIRTY-SEVEN — VIOLATION OF THE MONTANA UNFAIR
  TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973
  (MONT. CODE § 30-14-101, *ET SEQ.*) ....................................................................193

COUNT THIRTY-EIGHT — VIOLATION OF THE NEBRASKA CONSUMER
  PROTECTION ACT (NEB. REV. STAT. § 59-1601, *ET SEQ.*)................................194

COUNT THIRTY-NINE — VIOLATIONS OF THE NEVADA DECEPTIVE
  TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ.*)....................196

COUNT FORTY — VIOLATIONS OF N.H. CONSUMER PROTECTION ACT
  (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*) ........................................................199

COUNT FORTY-ONE — VIOLATIONS OF THE NEW JERSEY CONSUMER
  FRAUD ACT (N.J. STAT. ANN. §§ 56:8-1, *ET SEQ.*)..............................................202

COUNT FORTY-TWO — VIOLATIONS OF THE NEW MEXICO UNFAIR
  TRADE PRACTICES ACT (N.M. STAT. ANN. §§ 57-12-1, *ET SEQ.*)....................205

COUNT FORTY-THREE — VIOLATIONS OF NEW YORK GENERAL
  BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349)............................................208

COUNT FORTY-FOUR — VIOLATIONS OF THE NORTH CAROLINA
  UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. GEN.
  STAT. §§ 75-1.1, *ET SEQ.*) ....................................................................................210

COUNT FORTY-FIVE — VIOLATION OF THE NORTH DAKOTA
  UNLAWFUL SALES OR ADVERTISING PRACTICES LAW (N.D.
  CENT. CODE § 51-15-02) ........................................................................................213

COUNT FORTY-SIX — VIOLATIONS OF THE OHIO CONSUMER SALES
  PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ.*)................................215

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- v

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT FORTY-SEVEN — VIOLATIONS OF THE OHIO DECEPTIVE
  TRADE PRACTICES ACT (OHIO REV. CODE § 4165.01, *ET SEQ.*)....................218

COUNT FORTY-EIGHT — VIOLATIONS OF OKLAHOMA CONSUMER
  PROTECTION ACT (OKLA. STAT. TIT. 15 § 751, *ET SEQ.*)................................221

COUNT FORTY-NINE — VIOLATIONS OF THE OREGON UNLAWFUL
  TRADE PRACTICES ACT (OR. REV. STAT. §§ 646.605, *ET SEQ.*).....................224

COUNT FIFTY — VIOLATIONS OF THE PENNSYLVANIA UNFAIR
  TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S.
  § 201-1, *ET SEQ.*) ......................................................................................................226

COUNT FIFTY-ONE — VIOLATION OF THE RHODE ISLAND UNFAIR
  TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I.
  GEN. LAWS § 6-13.1, *ET SEQ.*)................................................................................229

COUNT FIFTY-TWO — VIOLATIONS OF THE SOUTH CAROLINA
  UNFAIR TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10, *ET
  SEQ.*)................................................................................................................................231

COUNT FIFTY-THREE — VIOLATION OF THE SOUTH DAKOTA
  DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION
  LAW (S.D. CODIFIED LAWS § 37-24-6)................................................................234

COUNT FIFTY-FOUR — VIOLATIONS OF TENNESSEE CONSUMER
  PROTECTION ACT OF 1977 (TENN. CODE ANN. § 47-18-101, *ET
  SEQ.*)................................................................................................................................235

COUNT FIFTY-FIVE — VIOLATIONS OF THE DECEPTIVE TRADE
  PRACTICES ACT – CONSUMER PROTECTION ACT (TEX. BUS. &
  COM. CODE §§ 17.41, *ET SEQ.*)................................................................................238

COUNT FIFTY-SIX — VIOLATIONS OF UTAH CONSUMER SALES
  PRACTICES ACT (UTAH CODE ANN. § 13-11-1, *ET SEQ.*) ................................242

COUNT FIFTY-SEVEN — VIOLATIONS OF VERMONT CONSUMER
  PROTECTION ACT (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*) ...........................244

COUNT FIFTY-EIGHT — VIOLATIONS OF THE VIRGINIA CONSUMER
  PROTECTION ACT (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*).............................247

COUNT FIFTY-NINE — VIOLATIONS OF THE WASHINGTON
  CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. §§
  19.86.010, *ET SEQ.*)................................................................................................250

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- vi

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

COUNT SIXTY — VIOLATIONS OF THE WEST VIRGINIA CONSUMER
    CREDIT AND PROTECTION ACT (W. VA. CODE § 46A-1-101, *ET
    SEQ.*)...................................................................................................253

COUNT SIXTY-ONE — VIOLATIONS OF THE WISCONSIN DECEPTIVE
    TRADE PRACTICES ACT (WIS. STAT. § 100.18) ...................................255

COUNT SIXTY-TWO — VIOLATIONS OF THE WYOMING CONSUMER
    PROTECTION ACT (WYO. STAT. §§ 40-12-101, *ET SEQ.*)....................258

COUNT SIXTY-THREE — COMMON LAW FRAUD .......................................261

COUNT SIXTY-FOUR — UNJUST ENRICHMENT .........................................263

IX.    PRAYER FOR RELIEF ............................................................264

X.    JURY DEMAND ...................................................................266

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# I.     INTRODUCTION

1.     Nearly 30 million people, 9.3% of the U.S. population, have diabetes.[1] Failure to properly control blood sugar levels can have severe consequences for diabetes patients, including damage to internal organs, nerves, eyes, feet, and skin.[2] For people with diabetes, not monitoring blood sugar levels can lead to too little insulin in the system (hyperglycemia)[3] or too much insulin being injected into their system (hypoglycemia), both of which can be fatal.[4] Diabetes-related complications are the "seventh leading cause of death in the United States."[5]

2.     The financial costs of living with diabetes have ballooned recently.[6] Of the nearly 30 million diabetes patients in the United States, approximately six million rely on daily insulin treatments to survive[7] and almost twelve million more take oral medication to control their blood sugar.[8] To properly administer insulin or other medications and manage diabetes, patients must monitor their blood glucose throughout the day, which they do by testing with blood glucose monitors and single-use blood glucose test strips. This action is about the inflated price of the blood glucose test strips that are integral to diabetes management.

3.     Diabetes-related prescription drugs and supplies are subject to similar pricing abuses. For example, the price of insulin has soared over the last decade—a prescription that might have cost a consumer $25 in the past, now costs between $250 and $450. As recent articles have revealed, the prices for insulin have surged in part because of powerful middlemen— pharmacy benefit managers, or PBMs—who negotiate the prices of drugs and other medical

---

[1] Centers for Disease Control and Prevention [hereinafter CDC], *National diabetes statistics report: estimates of diabetes and its burden in the United States*, CDC (2014), https://www.cdc.gov/diabetes/pubs/statsreport14/national-diabetes-report-web.pdf.
[2] *Id.* at 5.
[3] *Diabetic ketoacidosis*, Mayo Clinic: Diseases and Conditions, http://www.mayoclinic.org/diseases-conditions/diabetic-ketoacidosis/basics/definition/con-20026470 (last visited Mar. 10, 2017).
[4] Gita Shafiee, et al., *The importance of hypoglycemia in diabetic patients*, 11 J. OF DIABETES & MED. DISORDERS 17, 1 (2012).
[5] CDC, *supra* note 1, at 7.
[6] Allison Tsai, *The Rising Cost of Insulin*, DIABETES FORECAST, (Mar. 2016), http://www.diabetesforecast.org/2016/mar-apr/rising-costs-insulin.html.
[7] *See* CDC, *supra* note 1, at 5.
[8] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

products on behalf of their clients, insurers.[9] PBMs profit from "rebates" and other payments received from manufacturers in exchange for making the manufacturers' prescription products available to their clients. In the case of insulin, manufacturers have artificially increased the list price for the drug to accommodate PBM "rebates"—which are estimated to comprise up to 50 percent of the list price of analog insulin.[10]

4.    Like the skyrocketing price of insulin, the list prices of glucose test strips—the focus of this case—are artificially inflated as a result of a scheme and enterprise among four dominant manufacturers (collectively, as defined below, the "Manufacturer Defendants") and the three largest PBMs (collectively, as defined below, the "PBM Defendants"). In this "Test Strip Pricing Scheme," the Manufacturer Defendants set two different prices for test strips—a publicly-available "list" price and an undisclosed lower "net" price that the PBMs actually pay for the test strips.

5.    And, also like insulin, test strips are a big business. In 2015, the global glucose monitoring and diabetes management market was valued at over $10 billion.[11] Every year, diabetes patients in the United States spend close to $4 billion on the disposable strips.[12] As shown in the below figure, test strips comprise a significant component of the global diabetes care market:

---

[9] *See, e.g.*, Kasia Lipska, *Break Up the Insulin Racket*, N.Y. TIMES (Feb. 20, 2016), https://www.nytimes.com/2016/02/21/opinion/sunday/break-up-the-insulin-racket.html.
[10] *Id.*
[11] Press Release, Kalorama, *Report: Glucose Monitoring Market tops $10 Billion*, (Sep. 30, 2015, 11:12), http://www.prnewswire.com/news-releases/report-glucose-monitoring-market-tops-10-billion-300151264.html.
[12] *A 'Gray Market' For Diabetes Supplies Highlights The Cost of Care*, NATIONAL PUBLIC RADIO (Jan. 31, 2017), http://kbia.org/post/gray-market-diabetes-supplies-highlights-cost-care#stream/0.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 2

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Figure 1: Components of Global Diabetes Care Market**[13]



6.      To understand the Test Strip Pricing Scheme, it is necessary to understand the role of PBMs in the pharmaceutical supply chain. The PBM Defendants serve as both middlemen and gatekeepers between drug and medical supply manufacturers on the one hand, and health insurers and patients on the other. For the PBM Defendants, business is booming. Combined, they report more than $200 billion a year in revenue.[14] They control over 80% of the industry, administering and managing pharmacy benefits for over 180 million insureds.[15]

7.      PBMs are supposed to negotiate lower prices for their clients, health insurers and plan administrators. Using the sheer volume of their clients as leverage, the PBM Defendants set up exclusionary tiered formularies—ranked lists of drugs and other medical products, such as

---

[13] *Diabetes: Outlook for Monitoring, Management, and Technology Development*, MEDMARKET DILIGENCE, LLC (April 18, 2012), https://blog.mediligence.com/2012/04/18/diabetes-outlook-for-monitoring-management-and-technology-development/.
[14] Lipska, *supra* note 9.
[15] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 3

test strips, where some cheaper and more effective products are supposed to be placed into lower tiers, generally with lower cost-sharing amounts due from patients. Plan administrators and health insurers rely on PBMs' formularies to calculate how much of their insureds' costs for formulary products they will cover. Medical products that are in the lower, preferred, formulary tiers should be cheaper for health plan members.

8.     If two medical products are basically interchangeable, a PBM sometimes will exclude from its formulary the more expensive version—again, supposedly based on the price of the product for consumers. Health plans that use a PBM's formulary either will not reimburse members for the purchase price of products that are excluded from the formulary or will require members to pay a larger coinsurance amount based on the list price rather than the actual net price that the PBM paid. Thus, exclusionary formularies allow PBMs, including the PBM Defendants, to push patients toward certain brands over others. This gives the PBM Defendants enormous control over purchasing and leverage over manufacturers.

9.     While the PBM Defendants could use this market power to drive down the prices for medical products by forcing manufacturers to compete on price for formulary placement, instead they and the Manufacturer Defendants have figured out a way to game the system for their mutual benefit. To gain formulary access, the Manufacturer Defendants have inflated their list prices and then "rebate" a significant portion of the list price back to the PBM Defendants. The rebates are provided under a variety of labels—discounts, credits, concession fees, etc. [16] Regardless of the term used to describe them, they are a *quid pro quo* for formulary inclusion or preferential placement. In the context of this complaint, rebates should be understood to include all payments or financial benefits of any kind conferred by the Manufacturer Defendants to the PBM Defendants, either directly via contract or indirectly via manufacturer-controlled intermediaries.

---

[16] *See, e.g.*, Linda Cahn, *Don't Get Trapped By PBMs' Rebate Labeling Games*, MANAGED CARE (Jan. 2009), https://www.managedcaremag.com/archives/2009/1/don-t-get-trapped-pbms-rebate-labeling-games.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 4

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

10. The result of this rebating scheme is a vast difference between the list price reported by the Manufacturer Defendants and the net price obtained by the Manufacturer Defendants after the PBM Defendants have taken their rebates.

11. The PBM Defendants may pass a portion of the rebates to their major insurer clients, some of which are owned by or affiliated with them, and pocket the rest. The higher the rebate, the more the PBM Defendants can pocket. The total amount and nature of the rebates, the amount that the PBM Defendants pocket, and the amount that the PBM Defendants pass through to payers are all carefully guarded secrets.

12. This rebate scheme creates the best of both worlds for the Defendants. The PBM Defendants obtain large rebates in exchange for granting access to the exclusionary formularies, increasing their take, and the Manufacturer Defendants maintain their profits by increasing their market share for sale of the rebated strips while charging the inflated list price to the over-the-counter market. This is because the net price for test strips—the amount that the PBM Defendants actually pay—is independent of the list price.

13. The result of this scheme is a wide gap between the price paid by the PBM Defendants for test strips (*i.e.*, the net realized price actually received by the Manufacturer Defendants), and the publicly available manufacturer list price. And, by dictating most glucose meter selections, the PBM Defendants create a captive market of diabetes patients who will purchase the Manufacturer Defendants' particular test strips.

14. This scheme has allowed the Manufacturer Defendants to do something that would be impossible for a product that is subject to normal market conditions: even though multiple manufacturers produce test strips, the Manufacturer Defendants have maintained dominance of the test-strip market while *increasing* prices on both the insured and over-the counter retail markets. For example, Roche raised the average wholesale price for a box of 51 Accu-Chek Compact Plus strips from $72.56 in February 2013 to $79.45 the next year, and to

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

$87.40 in 2015.[17] The average wholesale prices for test strips manufactured by the other Manufacturer Defendants has steadily increased as well.

15.     Nevertheless, the PBM Defendants—which are supposed to negotiate *lower* prices for medical products—list the Manufacturer Defendants' test strips as the preferred or even exclusive brands on formularies because this scheme generates profits for the PBM Defendants without actually requiring the Manufacturer Defendants to lower their prices. This is the same tactic that manufacturers and PBMs use to artificially inflate the list price of insulin and other life-saving medications.

16.     And diabetes patients have no choice but to play into the Defendants' Test Strip Pricing Scheme if they need dependable test strips that their insurance will cover. Although cheaper blood glucose monitors are available, not all monitors and test strips are equally accurate. A study of seven commonly used monitoring systems found that only *three* of the systems met accuracy criteria of the International Organization for Standardization.[18] Moreover, insured patients can use the considerable expense of test strips to contribute to paying down their annual deductible only if they purchase the brand that their insurance covers.

17.     The Manufacturer Defendants' list price increases for these strips appear to correlate to the time when the Centers for Medicare & Medicaid Services (CMS) implemented the Competitive Bidding Program (CBP) for diabetes supplies. The CBP's purpose is to lower consumer costs for medical equipment. In 2011, CMS launched the CBP in nine markets for diabetes supplies, including test strips.[19] At that time, single payment rates for test strips obtained through mail order were reduced from $34 to $14 per box.[20] In 2013, when CMS implemented the national launch of the CBP for diabetes testing supplies, reimbursement for test strips was

---

[17] From Medi-Span historical and current average wholesale price data.
[18] Ronald L. Brazg, et al., *Performance Variability of Seven Commonly Used Self-Monitoring of Blood Glucose Systems: Clinical Considerations for Patients and Providers*, J. OF DIABETES SCI. AND TECH., Vol. 7, Iss. 1 (Jan. 2013).
[19] *See* Gary A. Puckrein, et al., *Impact of CMS Competitive Bidding Program on Medicare Beneficiary Safety and Access to Diabetes Testing Supplies: A Retrospective, Longitudinal Analysis*, 39 DIABETES CARE at 563 (April 2016).
[20] *Id.* at 564.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

reduced from about \$35 to \$10.41 per 50-test-strip box, when acquired through either mail order or retail.[21]

18.     CMS's reduction in reimbursement rates lowered the Manufacturer Defendants' profits for test strips, which are based on a business model of practically, or actually, giving meters away so that people with diabetes are locked into buying that brand of strips.[22] In 2013, for example, Abbott reported that its worldwide diabetes care sales decreased by 3.6 percent—despite an increase in international sales—because of the expected impact of CMS competitive bidding in the United States.[23] In an investor call held in 2014, Abbott explained that its strategy in light of the CBP was to focus on gaining a market share in other segments.[24] However, it is apparent that rather than competing by lowering net prices on test strips, the Manufacturer Defendants merely increased the spread between list and net prices, raising list prices to gain favorable formulary access from the PBM Defendants—at the expense of diabetes patients.

19.     The PBM Defendants tout their market power to drive down prices for prescription products. They boast about the "rebates" or "discounts" for which they bargain with manufacturers. The story they tell is that these rebates and discounts are obtained for the benefit of patients since they purportedly result in lower costs for prescription products. For example, Express Scripts claims, "[w]e put medicine within reach of patients while helping health benefit providers improve access to prescription drugs and make them more affordable. . . ."[25]

20.     OptumRx also claims that its PBM "businesses have dedicated units that help improve overall health system performance through optimizing care quality, reducing costs and improving consumer experience and care provider performance leveraging distinctive

---

[21] *Id.* at 570.
[22] Arundhati Parmar, *Who's J&J's stepchild? Its consumer diabetes device business*, MEDCITYNEWS (Jan. 31, 2017, 6:14 PM), http://medcitynews.com/2017/01/whos-jjs-stepchild-consumer-diabetes-device-business/.
[23] Press Release, Abbott Investors, *Abbott Reports Fourth-Quarter and Full-Year 2013 Results* (Jan. 22, 2014), http://www.abbottinvestor.com/phoenix.zhtml?p=irol-eventDetails&c=94004&eventID=5079517.
[24] Q1 2014 Abbott Laboratories Earnings Call (Apr. 16, 2014), recording available at https://www.earningscast.com/ABT/20140416.
[25] Express Scripts Holding Company, Annual Report (Form 10-K) (Dec. 31, 2016).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 7

capabilities in data and analytics, pharmacy care services, population health, health care delivery and health care operations."[26]

21.    CVS Health Corp. contends, "[w]e assist our clients in designing pharmacy benefit plans that help minimize the costs to the client while helping improve health outcomes . . . ."[27]

22.    But the story that the PBM Defendants tell is far from the whole truth. They obtain rebates and discounts, but neglect to reveal the large portion of the rebates that they pocket. They also neglect to reveal that their formulary decisions are based on the amount of the spread they obtain from the rebates and other payments from manufacturers. And they neglect to reveal that the consequence of this scheme is higher costs for patients, whose payments at the pharmacy point of sale are calculated based on the unrebated list price of medical products, not the lower price paid by the PBMs after all rebates and other financial benefits received by the PBMs from the Manufacturers and other third parties are taken into account. Indeed, the PBM Defendants misrepresent the role they play in the supply chain, and their impact on the prices actually paid by consumers. The PBMs are avaricious middlemen, with a stranglehold on the medical supply chain. Their scheme to sell formulary access for rebates drives up the cost of prescription drugs and other medical products for the people who need to use them to stay alive.

23.    The Manufacturer Defendants are equally at fault. Their conduct deprives patients of a fair price for glucose test strips—a price that would result from the operation of normal market forces. They maintain the ability to sell test strips to the millions of Americans who depend on them, without having to lower the "real," net prices to gain market share. They bargain for market share by providing ever-larger rebates to PBMs and entering into exclusive relationships with those PBMs, inflating the prices paid by consumers in order to preserve their net realized price or sales volumes. Their refusal to disclose their net realized prices for test

---

[26] UnitedHealth Group, Annual Report (Form 10-K) (Dec. 31, 2016).
[27] CVS Health Corp., Annual Report (Form 10-K) (Dec. 31, 2016).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 8

strips and the web of confidentiality agreements they have created and/or participated in with PBMs have been critical to the furtherance of the Test Strip Pricing Scheme.

24. Diabetes patients who rely on test strips to maintain safe blood glucose levels are the victims of the Defendants' Test Strip Pricing Scheme. These patients are burdened with exorbitant out-of-pocket expenses for test strips because their payment obligations are based on the list prices, not the secret net prices provided to the PBM Defendants. This is the case regardless of whether these patients are uninsured and paying the entire list price, or whether they are insured and paying large deductibles, coinsurance, high-tier copayments, or paying the full list price for the extra test strips they need that beyond the number allowed by their insurance. All of these patients are making payments based on the inflated list price.

25. The hardship—monetary, physical, and emotional—caused by the Test Strip Pricing Scheme is terrible. Many insurance companies limit the amount of test strips per day that they will cover to three or four, leaving patients to pay for any extra test strips out-of-pocket.[28] Some diabetes patients are unable to afford the number of strips that their physicians recommend and therefore do not test their blood sugar levels as frequently as they should—others stop testing at all because of the expense.[29]

26. The demand for affordable strips in the most commonly used brands is so great that a "gray market" exists of unauthorized resellers—people who purchase unused strips from diabetes patients and resell them to others. Test strips contain enzymes and must be stored at controlled temperatures, but diabetes patients who turn to the dubious "gray market" cannot know whether the strips were properly stored. As the FDA recently warned, pre-owned test strips could be dangerous: "A lack of proper storage or using expired strips could put you at risk for getting incorrect results from your glucose meter. And incorrect results can put you at risk for

---

[28] Kathryn Doyle, *Test strip supply linked to better diabetes care*, CHICAGO TRIBUNE (Feb. 07, 2013), http://articles.chicagotribune.com/2013-02-07/lifestyle/sns-rt-us-test-strip-supply-linked-to-better-diabetesbre9-20130207_1_sugar-levels-blood-sugar-a1c.

[29] Tom Avril, *Paper money: Why patients pay so much for strips*, THE PHILADELPHIA INQUIRER (Nov. 19, 2009, 5:47 PM), http://www.philly.com/philly/health/diabetes/20091117_Why_patients_pay_so_much_for_strips.html.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 9

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

serious health complications—and even death."[30] Because of the high cost of test strips, however, some patients resort to purchasing strips that may not measure their glucose levels accurately— and they may be unaware of the danger the "gray market" strips pose to their health. If diabetes patients fail to adequately monitor and control their blood sugar levels, they risk serious complications such as heart disease, kidney failure, infection, blindness, coma, and amputations.[31]

27.    Besides the "gray market," patients may turn to low-quality brands of test strips to save money—which may put them at risk because of the less accurate nature of these products.[32]

28.    This lawsuit alleges that the three largest PBMs—CVS Health, Express Scripts, and OptumRx—violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., various state consumer protection laws, and state common law, by engaging in extortion, a RICO enterprise, a self-dealing and conflict-laden scheme, and deceptive conduct, whose purpose is to unlawfully extract ever-larger portions of rebates along with other payments—"PBM Kickbacks"—from the four top makers of blood glucose test strips—Roche, Bayer, Abbott, and Johnson & Johnson, along with their affiliates. Plaintiffs further allege that these four test-strip producers have provided the PBM Defendants increasingly large rebates and kickbacks by inflating the list prices of test strips, and then have further conspired with the PBM Defendants and their insurer clients to prevent disclosure of net prices to consumers—also in violation of the aforementioned laws. Defendants' Test Strip Pricing Scheme directly and foreseeably causes consumers to overpay for these life-saving medical products. Thus, this action is brought to redress Plaintiffs' injuries that flow from Defendants' Test Strip Pricing Scheme—which has driven up the cost of branded test strips to the substantial benefit of PBMs and test-strip manufacturers—and to obtain prospective injunctive relief to

---

[30] Consumer Updates, *How to Safely Use Glucose Meters and Test Strips for Diabetes*, FDA U.S. Food & Drug Administration (updated May 16, 2017), https://www.fda.gov/ForConsumers/ConsumerUpdates/ucm049051.htm.
[31] CDC, *supra* note 1, at 5.
[32] *See* Brazg, et al., *supra* note 18 at 145.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 10

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

curtail Defendants' practices and provide greater transparency in test-strip pricing, as well as lower prices going forward. The causes of action asserted herein allow, *inter alia*, the remedies of monetary damages, damage multipliers, surcharge, restitution, injunctive relief, and other equitable relief.

## II.    PARTIES

**A.    Plaintiffs.**

29.    **Plaintiff Jeanine Prescott** is domiciled in the state of Colorado. She has been diagnosed with type 1 diabetes for thirty-three years. Ms. Prescott uses Bayer's Contour Next test strips nine times per day to check her blood glucose levels. She is currently limited to this brand of strip because it is compatible with her Bayer Contour Next Link meter which is the only meter that relays glucose readings from blood testing as well as her continuous glucose monitor (CGM) to her insulin pump. In the past, she has used Johnson & Johnson's One Touch Ultra test strips. From January 1, 2014 to June 30, 2016 and from May 1, 2017 to present, Plaintiff Prescott has been enrolled in an Anthem BlueCross BlueShield Blue Priority PPO plan through her husband's employer, the American Numismatic Association, for which Defendant Express Scripts administers the pharmacy benefits. The plan is an employee welfare benefit health plan governed by ERISA. Pursuant to the terms of the plan, she paid a $60 copay per 30-day supply of Bayer's Contour Next test strips. On numerous occasions, pursuant to the terms of her health plan, Plaintiff Prescott paid a tier-dependent copay and/or the full price for test strips produced by one or more of the Manufacturer Defendants, including Bayer and Johnson & Johnson, as defined below.

30.    **Plaintiff Michael Bewley** is domiciled in New York. He has type 1 diabetes and uses Johnson & Johnson's One Touch Verio test strips four times per day to monitor his blood glucose levels. In the past, he used Roche's Accu-Chek test strips. Bewley is insured through his wife's employer, HSBC, and is enrolled in the HSBC—North America U.S. Consolidated Health and Welfare Plan, for which Defendant CVS Health administers pharmacy benefits. The plan is

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

an employee welfare benefit health plan governed by ERISA. On numerous occasions, pursuant to the terms of his plan, Bewley paid a copay, coinsurance, and/or the full price for the One Touch Verio test strips produced by Defendants Johnson & Johnson and Roche, as defined below.

31.    From 2013 to 2016, Bewley was enrolled in the HSBC Blue Cross Blue Shield PPO Plan for which Defendant CVS Health administered the pharmacy benefits. During this time, Bewley was forced to pay a high copay for test strips pursuant to the terms of his plan. On numerous occasions in 2016, Bewley paid a $120 copay for Johnson & Johnson's One Touch Verio test strips.

32.    As of January 1, 2017, Bewley is enrolled in the HSBC Blue Cross Blue Shield Health Savings Plan, for which Defendant CVS Health administers the pharmacy benefits. Under the terms of his plan, Bewley pays 100% of the cost of Johnson & Johnson's One Touch Verio test strips until he meets his $2,600 deductible, after which the plan pays 90% of the cost. In just three months, from January 2017 to March 2017, Bewley paid approximately $590 for Johnson & Johnson's One Touch Verio test strips.

33.    **Plaintiff Scott Strumello** is domiciled in New York. He has type 1 diabetes and he uses Johnson & Johnson's One Touch Verio test strips more than six times per day to monitor his blood glucose levels. Mr. Strumello enrolled in employee welfare benefit health plans for which Defendants CVS Health and Express Scripts administer pharmacy benefits. On numerous occasions, pursuant to the terms of those plans, Plaintiff Strumello paid a copay, coinsurance, and/or the full price for test strips produced by Manufacturer Defendant Johnson & Johnson.

34.    In the past, Mr. Strumello was insured through his employer Auriemma Consulting Group, Inc., via Extensis Group, Inc., in an Aetna health care plan for which Defendant CVS Health administers the pharmacy benefits. On information and belief, the plan is an employee welfare benefit health plan governed by ERISA. Under the terms of the plan, Mr.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Strumello paid 100% of the cost of Johnson & Johnson's One Touch Verio test strips until he reached his individual deductible.

35.    As of April 1, 2016, Mr. Strumello is enrolled through his spouse's employer Swedish Institute, Inc. in the UnitedHealthcare Oxford New York EPO Plan, for which Defendant OptumRx administers the pharmacy benefits. On information and belief, the plan is an employee welfare benefit health plan governed by ERISA. Under the terms of the plan, Mr. Strumello pays 100% of the cost of Johnson & Johnson's One Touch Verio test strips until he meets his $5,700 family deductible, after which the plan specifies a $35 copay. Mr. Strumello was forced to attain pre-authorization for testing supplies in excess of his plan's maximum quantity of 6 test strips per calendar day. Between May 2016 and March 2017, Mr. Strumello spent over $3,831 on Johnson & Johnson's One Touch Verio test strips.

36.    **Plaintiff Julia Boss** is domiciled in Oregon. She is the mother and a caretaker for her minor daughter, who was diagnosed with type 1 diabetes in March 2015. In both Oregon and Washington, where she formerly resided, Boss purchased and enrolled in health benefit plans through the Affordable Care Act ("ACA") marketplace, as well as directly through an insurer, for which Defendants CVS Health and Express Scripts administer pharmacy benefits. On numerous occasions, pursuant to the terms of those plans, Boss paid a copay, coinsurance, and/or the full price for test strips produced by one or more of Manufacturer Defendants—Abbott, Bayer, Johnson & Johnson, and Roche, as defined below.

37.    In 2015, while residing in Washington, Boss was enrolled in the Assurant Health Washington CoreMed Bronze 1 Plan, for which CVS Health administered the pharmacy benefits. Under this plan, Boss paid 100% of the list price for test strips until she met her $6,000 deductible/out-of-pocket maximum, after which the plan paid 100% of the cost of test strips. Boss paid the full list price of Johnson & Johnson's One Touch Verio and Bayer's Contour Next test strips.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 13

38.     On January 1, 2016, Boss enrolled in the Premera Blue Cross Preferred Silver 3000 HSA, for which Express Scripts administered the pharmacy benefits. During this time Boss paid the full list price in cash for her daughter's test strips until she met the $3,000 deductible, after which she paid a 20% coinsurance for Roche's Accu-Chek Aviva test strips until she met the $4,100 out-of-pocket limit, after which the plan paid 100% of the cost of test strips.

39.     During August 2016, Boss and her family moved to Eugene, Oregon, where she enrolled in the Moda Health Oregon Standard Silver Plan using the ACA Marketplace. The plan had an effective date of September 1, 2016, and included a prescription benefit administered by MedImpact. Under this plan, Boss paid a $50 copay for Abbott's Freestyle Lite test strips, the plan's preferred brand of test strip.

40.     As of January 1, 2017, Boss is enrolled in the Providence Oregon Standard Silver Plan, for which Argus Health Systems, Inc. administers the pharmacy benefits. Under the terms of her current plan, her daughter's diabetes supplies, including her test strips are covered in full. Since her daughter's diagnosis in March 2015, Boss has paid approximately $1,700 for test strips, $1,400 of which she paid while residing in Washington.

41.     **Plaintiff Type 1 Diabetes Defense Foundation ("T1DF")** is a not-for profit corporation initially incorporated in Washington and currently organized and existing under the laws of Oregon. T1DF is an organization operated exclusively for charitable purposes and to promote the social welfare, further the common good, and protect the legal rights of all individuals diagnosed with type 1 diabetes and individuals with other insulin-dependent diabetes. In furtherance of its goals, the organization works through lobbying, litigation, and campaigns to raise public awareness about issues that affect people with type 1 diabetes.

42.     On information and belief, each individual Plaintiff paid out-of-pocket for test strips and that payment was based on an artificially inflated list price. As a result, each individual Plaintiff has been injured, and Plaintiffs have standing to protect their own rights and the rights of others whose interests are at stake in this case.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 14

43.    Together, Plaintiffs Prescott, Bewley, Strumello, and T1DF seek to represent the ERISA Class as the "ERISA Plaintiffs." Together, Plaintiffs Boss and T1DF seek to represent the Non-ERISA Employee/Exchange Plan Class as the "Non-ERISA Employee/Exchange Plaintiffs." T1DF seeks to represent the Uninsured Class as the "Uninsured Plaintiffs." The respective Classes are defined below.

**B.    Defendants.**

44.    **Defendant CVS Health Corporation** is a corporation organized under the laws of Delaware and headquartered at One CVS Drive, Woonsocket, Rhode Island, 02895. CVS Health Corporation is a pharmacy benefit manager and, as such, contracts on behalf of health plans and insurers with the Manufacturer Defendants for the test strips that these companies make. CVS Health Corporation provides comprehensive prescription benefit management services to over 2,000 health plans, including corporations, managed care organizations, insurance companies, unions and government entities, and covers 65 million lives.[33] CVS Health Corporation reported $177.5 billion in revenue in 2016.[34]

45.    **Defendant Caremark Rx, L.L.C.** is a Delaware limited liability company and an immediate or indirect parent of many subsidiaries, including pharmacy benefit management subsidiaries. Caremark Rx, L.L.C. is a subsidiary of Defendant CVS Health Corporation.

46.    **Defendant Caremark Rx, Inc.** is a corporation organized under the laws of Delaware and headquartered at 211 Commerce Street, Suite 800, Nashville, Tennessee, 37201. Caremark Rx, Inc. is an immediate or indirect parent of many subsidiaries, including pharmacy benefit management subsidiaries, and a subsidiary of Defendant CVS Health Corporation. Collectively, Defendant CVS Health Corporation, Defendant Caremark Rx, L.L.C. and Defendant Caremark Rx, Inc. are referred to as "CVS Health."

---

[33] Ed Kaplan & Wendy Pongracz, *Negotiating and Drafting Pharmacy Benefit Manager Contracts for Self-Insured Plans*, STRAFFORD (June 21, 2016), http://media.straffordpub.com/products/negotiating-and-drafting-pharmacy-benefit-manager-contracts-for-self-funded-plans-2016-06-21/presentation.pdf.
[34] CVS Health Corp., *supra* note 27.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 15

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

47. **Defendant Express Scripts Holding Company** is a Delaware corporation. Its principal place of business is at 1 Express Way, St. Louis, Missouri, 63121.

48. **Defendant Express Scripts, Inc.** is a corporation organized under the laws of Delaware and headquartered at 1 Express Way, St. Louis, Missouri, 63121. Express Scripts is a pharmacy benefit manager and, as such, contracts on behalf of health plans and insurers with the Manufacturer Defendants for purchase of the test strips that these companies make. As the largest pharmacy benefit management organization in the United States, Defendant Express Scripts Inc. covers 79 million lives[35] and the company reported $96.5 billion in revenue in 2016.[36] Defendant Express Scripts, Inc. is a subsidiary of Defendant Express Scripts Holding Company. Defendant Express Scripts, Inc., and Defendant Express Scripts Holding Company collectively are referred to as "Express Scripts."

49. **Defendant UnitedHealth Group, Inc.** is a Delaware corporation with its principal place of business at 9900 Bren Road East, Minnetonka, Minnesota, 55343. UnitedHealth is a diversified managed healthcare company. In 2015, UnitedHealth Group reported revenue in excess of $157 billion, and the company is currently ranked sixth on the Fortune 500 list. UnitedHealth offers a spectrum of products and services including health insurance plans through its wholly owned subsidiaries and prescription products through its PBM, OptumRx.

50. **Defendant OptumRx, Inc.** is a corporation organized under the laws of California and headquartered at 2300 Main St., Irvine, California, 92614. OptumRx is a pharmacy benefit manager and, as such, contracts on behalf of health plans and insurers with the Manufacturer Defendants for purchase of the test strips that these companies make. As one of the largest pharmacy benefit management companies in the United States, OptumRx covers 65 million lives[37] and reported approximately $48.2 billion in revenue in 2015; and over $60.44

---

[35] Kaplan & Pongracz, *supra* note 33.
[36] Express Scripts Holding Co., *supra* note 25.
[37] Kaplan & Pongracz, *supra* note 33.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

billion in 2016.[38] Collectively, Defendant OptumRx and Defendant UnitedHealth are referred to as "OptumRx."

51.    Together, CVS Health, Express Scripts, and OptumRx are referred to as the "PBM Defendants."

52.    **Defendant Abbott Laboratories** is an Illinois corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois, 60064. Abbott Laboratories' market value is greater than $60 billion. It manufactures and markets health care products such as the FreeStyle brand of test strips, including Lite, InsuLinx, and Precision Neo varieties.

53.    **Defendant Abbott Diabetes Care, Inc.** is a Delaware corporation, and its principal place of business is at 100 Abbott Park Road, Abbott Park, Illinois, 60064. Abbott Diabetes Care, Inc. is a wholly-owned subsidiary of Abbott Laboratories. It develops and sells blood glucose monitoring systems, including test strips.

54.    **Defendant Abbott Diabetes Care Sales Corporation** is a Delaware corporation with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois, 60064. Abbott Diabetes Care Sales Corporation is a wholly-owned operating subsidiary of Abbott Diabetes Care, Inc. It markets and sells blood glucose monitoring systems, including test strips, in the United States. Collectively, Abbott Laboratories, Abbott Diabetes Care, Inc., and Abbott Diabetes Care Sales Corporation are referred to as "Abbott."

55.    **Defendant Bayer Healthcare LLC** is a Delaware corporation. Its principal place of business is 100 Bayer Boulevard, Whippany, New Jersey, 07981. Bayer Healthcare LLC produced test strips under the names Contour, Contour Next, and Breeze2 test strips, until Bayer Diabetes Care was acquired by Panasonic Healthcare Holdings in 2016.

56.    **Defendant Ascensia Diabetes Care US Inc.** is a Delaware corporation with headquarters located at 5 Wood Hollow Road, Parsippany, New Jersey, 07054. Ascensia produces Contour, Contour Next, and Breeze2 test strips. Ascensia Diabetes Care US Inc. was

---

[38] UnitedHealth Group, *supra* note 26.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 17

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

established in 2016 through the acquisition of Bayer Diabetes Care by Panasonic Healthcare Holdings.

57.     Collectively, Bayer Healthcare LLC and Ascensia Diabetes Care US Inc. are referred to as "Bayer."

58.     **Defendant LifeScan, Inc.** is a California corporation having its principal place of business at 965 Chesterbrook Boulevard, Wayne, Pennsylvania, 19087. LifeScan manufactures OneTouch test strips, including Ultra and Verio varieties.

59.     **Defendant Johnson & Johnson** is a New Jersey corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey, 08933. Johnson & Johnson is the parent corporation of LifeScan. Collectively, Johnson & Johnson and LifeScan are referred to as "Johnson & Johnson."

60.     **Defendant Roche Diagnostics Corporation** is an Indiana company that has its headquarters at 9115 Hague Road, P.O. Box 50457, Indianapolis, Indiana, 46250-0457. Roche produces a variety of Accu-Chek test strips, including the Guide, Aviva, Aviva Plus, Compact, SmartView, Performa, and Active varieties.

61.     Collectively, Abbott, Bayer, Johnson & Johnson, and Roche are referred to as the "Manufacturer Defendants."

62.     Throughout this complaint, when reference is made to a defendant or defendants, this includes the officers, agents, or employees of said defendants as well as predecessor and successor entities to the named defendants.

### III.     JURISDICTION AND VENUE

63.     **Subject Matter Jurisdiction**. Because claims alleged in this Complaint arise under federal law, 28 U.S.C. § 1331 provides subject-matter jurisdiction in this Court. Jurisdiction also exists pursuant to 18 U.S.C. § 1964(c) because Plaintiffs allege claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Further, 29 U.S.C. § 1132(e)(1) confers subject matter jurisdiction on this Court over claims brought under Title I of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 18

ERISA. This Court also has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), (5), because Plaintiffs and most members of the putative Class are citizens of different states than the Defendants, the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs, and the Class has more than 100 members.

64. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendants because Defendants are amenable to service of process, are co-conspirators, and each has minimum contacts with this district and has purposefully availed itself of the privilege of conducting business in the State of Washington, in particular with respect to Plaintiff Boss. ERISA § 502(e)(2) and 29 U.S.C. § 1132(e)(2) provide for nationwide service of process. This Court also has personal jurisdiction over all Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in Washington.

65. **Venue**. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), because each Defendant transacts business in, is found in, and/or has agents in the Western District of Washington, and because some of the actions giving rise to the complaint took place within this district, including with respect to Plaintiff Boss. Venue is also proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendants may be found in this District and some of the fiduciary breaches or other violations for which relief is sought on behalf of the ERISA Class occurred in or originated in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965, because most Defendants reside, are found, have an agent, or transact their affairs in this District, and the ends of justice require that any Defendant residing elsewhere be brought before this Court.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# IV.    FACTUAL ALLEGATIONS

**A.    Millions of patients use blood glucose test strips to avoid serious and even life threatening complications of diabetes.**

66.    "Diabetes is a condition in which the body does not properly process food for use as energy."[39] In a person who does not have diabetes, the pancreas secretes the hormone insulin, which controls the rate at which food is converted to glucose, or sugar, in the bloodstream so as to be effectively used by the body as energy.[40] People with diabetes are unable to make enough insulin or cannot use insulin as effectively as necessary, causing glucose, or sugar, to build up in the bloodstream. These consistently high levels of blood glucose, or blood sugar, pose a number of serious health risks including "heart disease, blindness, kidney failure, and lower-extremity amputations."[41] Though treatable, diabetes can be severely debilitating or fatal if left untreated. Diabetes-related complications are the "seventh leading cause of death in the United States."[42]

67.    As of 2014, 29.1 million people in the United States, or 9.3 percent of the population, had diabetes, and that number continues to grow.[43] The most common types of diabetes in the U.S. are type 1 and type 2, as well as gestational diabetes.[44] Patients with type 1 diabetes are unable to produce insulin at all because their immune system attacks and destroys the cells in the pancreas that make it.[45] Although people with type 2 diabetes are able to produce insulin, they are unable to use it effectively.[46] About 95 percent of cases of diabetes in adults are type 2.[47]

---

[39] CDC, *Diabetes*, https://www.cdc.gov/media/presskits/aahd/diabetes.pdf (last visited Mar. 16, 2017).
[40] *See* National Institute of Diabetes and Digestive and Kidney Diseases [hereinafter NIDDKD], *Low Blood Glucose (Hypoglycemia)*, NIDDKD, https://www.niddk.nih.gov/health-information/diabetes/overview/preventing-problems/low-blood-glucose-hypoglycemia (last visited May 19, 2017).
[41] CDC, *supra* note 39.
[42] *Id.*
[43] CDC, *supra* note 1.
[44] *What is Diabetes*, National Institute of Health (Nov. 2016), https://www.niddk.nih.gov/health-information/diabetes/overview/what-is-diabetes.
[45] *Id.*
[46] CDC, *supra* note 39.
[47] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 20

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

68. For diabetes patients who use insulin pumps or take multiple insulin injections per day, self-monitoring of blood glucose (SMBG) is a core component of managing the disease.[48] Patients who need to complete SMBG monitor their blood glucose several times per day, which helps them manage their diet, decide how much insulin to take, and avoid episodes of hypoglycemia. "Hypoglycemia is a true medical emergency which requires prompt recognition and treatment to prevent organ and brain damage."[49] Hypoglycemia can happen at any time, day or night, and most diabetes patients are affected at some point in their lives.[50] "Approximately 90% of all patients who receive insulin have experienced hypoglycemic episodes."[51] "The short and long term complications [of hypoglycemia] include neurologic damage, trauma, cardiovascular events and death."[52] Recent estimates indicate that six, seven, or even ten percent of people with type 1 diabetes die from hypoglycemia.[53] Hypoglycemia is the leading cause of sudden death in Type 1 patients and is the number one cause of ER visits.[54] Thus, the failure to monitor and control glucose levels, including via SMBG, can cause serious long-term complications and can even be fatal.

69. Patients can test their glucose level by placing a disposable test strip into an electrochemical glucose meter, poking their fingertip with a lancet to get a drop of blood, and holding the test strip against the drop of blood on their fingertip. Glucose meters are a type of biosensor, which consists of enzymes that recognize target molecules, a transducer that converts

---

[48] Yeaw, J., et al., *Cost of self-monitoring of blood glucose in the United States among patients on an insulin regimen for diabetes*, J MANAG. CARE PHARM. (Jan.-Feb. 2012), https://www.ncbi.nlm.nih.gov/pubmed/22235952.
[49] Shafiee, *supra* note 4.
[50] *Id.* at 2.
[51] *Id.*
[52] *Id.* (footnote omitted).
[53] Philip E. Cryer, *Death During Intensive Glycemic Therapy of Diabetes: Mechanisms and Implications*, 124 AM. J. MED. 993, 993 (2011), http://www.amjmed.com/article/S0002-9343(11)00687-5/pdf.
[54] Presentation, *The Future of Diabetes Control*, BIODEL (Aug. 13, 2013), 2013 Life Sciences Management Access Conference, slide 34. These statistics translate into between 2,800 and 9,300 deaths and approximately 282,000 visits to the emergency room. *Allergy v. Hypoglycemia*: *GlucaPen*$^{TM}$ *Potential in the US*, EJECT, INC. (Jul. 2010), http://www.healthline.com/hlcmsresource/images/diabetesmine/wp-content/uploads/2010/07/Allergy_vs._Hypoglycemia_and_GlucaPen.pdf; CDC, *supra* note 1, at 5.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that recognition of a molecule into a measurable signal, and a processor that converts the signal into a form that a patient can read.[55]

70.    The first electrochemical monitor for SMBG was launched in 1987.[56] The current operation of most commercial glucose monitors has not changed significantly from that of the 1987 monitor over the past 30 years.[57] At this point, innovation has reduced and companies are focusing less on development of the chemistry and more on "the extraction of profit from the investment already made,"[58] and it is working. In 2000, the world market for SMBG testing supplies was $3.8 billion, and just eight years later, in 2008, the "worldwide sale of these products climbed to an astonishing $8.8 billion."[59] The market continues to grow; in 2015, the global glucose monitoring and diabetes management market was valued at over $10 billion.[60]

71.    For many diabetes patients, glucose strips are not optional—they must test their blood sugar levels regularly and adjust their glucose levels by using insulin or making dietary changes. Patients with insulin-dependent type 2 diabetes may be instructed to test their blood sugar two or more times per day, while people with type 1 diabetes may need to test their blood sugar four to eight times per day, if not more.[61] If patients begin to develop hypoglycemia, they must eat carbohydrates and test their blood sugar every ten to fifteen minutes until it has returned to a normal range, which can significantly increase the number of blood glucose strips used.[62] If patients do not have insurance or have already exceeded their allotted number of strips and

---

[55] Eun-Hyung Yoo & Soo-Youn Lee, *Glucose Biosensors: An Overview of Use in Clinical Practice*, SENSORS 2010, 10, 4559–60.

[56] *Id.* at 4562.

[57] *Id.*

[58] Anthony P.F. Turner, *Biosensors: sense and sensibility*, 42 CHEM. SOC. REV. 3184, 3188 (2013), http://pubs.rsc.org/en/content/articlehtml/2013/cs/c3cs35528d.

[59] Mark D. Hughes, *The Business of Self-Monitoring of Blood Glucose: A Market Profile*, 3 J. OF DIABETES SCI. AND TECH. 1219, 1219 (2009).

[60] Kalorama Information, *Report: Glucose Monitoring Market tops $10 Billion*, PR NEWSWIRE (Sep. 30, 2015, 11:12), http://www.prnewswire.com/news-releases/report-glucose-monitoring-market-tops-10-billion-300151264.html.

[61] *See Blood sugar testing: Why, when and how*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/diabetes/in-depth/blood-sugar/art-20046628 (last visited May 23, 2017).

[62] *See Hypoglycemia: Treatment and drugs*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/hypoglycemia/basics/treatment/con-20021103 (last visited May 22, 2017).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

cannot afford to buy more at the list price set by defendants, they risk death from severe hypoglycemia.[63] Today, it is estimated that around 17 billion test strips are used each year.[64]

**B.    The diabetes care market is enormous.**

72.    Nearly 30 million Americans live with diabetes, and another 86 million Americans have prediabetes, a health condition that significantly increases a person's risk of type 2 diabetes.[65] The condition is a significant source of health care costs. One in five health care dollars nationwide is spent caring for people with diabetes.[66]

**Figure 2: Diabetes Costs in America[67]**



[63] *See* Shafiee, *supra* note 4, at 1.

[64] *Blood Glucose Monitoring*, UNIVERSAL BIOSENSORS, INC., http://www.universalbiosensors.com/Products/Verio-Product-Information.aspx (last visited May 22, 2017).

[65] CDC, *supra* note 1, at 1.

[66] American Diabetes Association, *Economic Costs of Diabetes in the U.S. in 2012*, 36 DIABETES CARE 1033, 1033 (2013), http://care.diabetesjournals.org/content/36/4/1033.full-text.pdf.

[67] *The Staggering Costs of Diabetes In America*, AMERICAN DIABETES ASSOC., http://main.diabetes.org/dorg/images/infographics/adv-cost-of-diabetes.gif (last visited Mar. 9, 2017).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 23

73.     Thus, millions of test strip purchasers whose health—or the health of their loved ones—depends on the products are captive to the market manipulation and other harmful aspects of Defendants' Test Strip Pricing Scheme, which has unlawfully hiked the price of test strips in the relevant product market for glucose test strips—which is, geographically, the United States and its territories.

**C.    The prescription medical product supply chain.**

74.     The supply chain for prescribed medical products in the United States consists of four major actors: Manufacturers, Wholesale Distributors, Pharmacies, and PBMs.

75.     Prescription medical products originate in manufacturing sites; are transferred to wholesale distributors; are stocked at retail, mail-order, and other types of pharmacies; are subject to price negotiations and processed through quality and utilization management screens by PBMs; are dispensed by pharmacies; and ultimately are delivered to and taken by patients.[68]

76.     The technical function of a PBM is to administer a health coverage provider's prescription benefit program. A PBM develops the coverage provider's formulary (the list of prescription benefits included in coverage at various pricing "tiers"), processes claims, creates a network of retail pharmacies that provide discounts in exchange for access to a provider's plan participants, and negotiates with manufacturers. Formularies include prescription drugs as well as some medical supplies, such as test strips.[69]

77.     Often, PBMs are also responsible for performing drug utilization reviews and operating their own mail-order and specialty pharmacies. PBMs also contract with a network of retail and community pharmacies. Pharmacies agree to dispense prescription products to covered patients. The contract provides for a payment rate for each prescription, plus a dispensing fee. Pharmacies are also responsible for collecting patient cost-sharing payments and sending those to

---

[68] Health Strategies Consultancy LLC, *Follow the Pill: Understanding the U.S. Commercial Pharmaceutical Supply Chain*, THE KAISER FAMILY FOUNDATION (Mar. 2005), https://kaiserfamilyfoundation.files.wordpress.com/2013/01/follow-the-pill-understanding-the-u-s-commercial-pharmaceutical-supply-chain-report.pdf.
[69] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 24

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the PBM or reducing the PBM's or plan's share owed by that amount. Many PBMs also own mail-order and specialty pharmacies, which directly supply medical products to patients, including test strips.

78.    In addition, and of particular significance here, PBMs have contractual relationships with medical product manufacturers. PBMs negotiate rebates, fees, and other concessions with the manufacturers. These relationships allow PBMs to exert tremendous influence and control over what products are made available to health plans and insureds.

79.    The following chart illustrates the prescription supply chain, and the PBMs' central role in it:

**Figure 3: Prescription Distribution Chain[70]**



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 25

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**D.    Consumer costs in the test strip supply chain.**

80.    Defendants' schemes to make increasing profits off of test strip sales have devastating effects on the lives of real people. Unlike the PBMs, insurers, pharmacies, and health plans, patients are directly subjected by the PBM Defendants to the list price artificially set by the Manufacturer Defendants. The manner and extent of this impact depends on how patients get their test strips.

81.    **Uninsured**. First, uninsured consumers who need to test their blood sugar— because they are completely outside of the PBMs' and manufacturers' web of PBM Kickback financing arrangements through health plans—must pay the full list price. This is not a small population. Although the coverage rates have increased significantly lately, by the end of 2015 there were still 28.5 million nonelderly Americans who lacked insurance.[71] In 2012, there were 2 million adults between the ages of 18-64 with diabetes without health insurance coverage, which has "considerable public health and economic impact."[72]

82.    **Deductibles**. Second, consumers who are in health plans suffer directly from inflated test strip prices when they pay their deductibles. The deductible is the amount that an insured must pay before insurance benefits will contribute to medical and pharmacy expenses. Thus, until the deductible is met, an insured must pay out-of-pocket. Depending on the plan, consumers may be required to pay the full list price of drugs and other medical needs.

83.    Moreover, deductibles are rising, meaning that insured consumers are having to pay more out-of-pocket for medical needs, including test strips. The Kaiser Family Foundation found that in 2016, deductibles rose 12% in the market group and four times faster than

---

[71] *Key Facts about the Uninsured Population*, THE KAISER FAMILY FOUNDATION (Sept. 29, 2016), http://kff.org/uninsured/fact-sheet/key-facts-about-the-uninsured-population/.

[72] Sarah Casagrande & Catherine Cowie, *Health Insurance Coverage Among People With and Without Diabetes in the U.S. Adult Population*, 35(11) DIABETES CARE 2243-2249 (Nov. 2012), http://care.diabetesjournals.org/content/35/11/2243.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 26

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

premiums increased.[73] The higher the deductible, the more consumers have to pay full price for their prescriptions until their coverage begins.

84.    Almost a quarter of all people obtaining insurance through employers are now enrolled in high-deductible-health plans ("HDHPs"), up from 4% in 2006. The average deductible amount has increased 67% since 2010. And almost half of workers are covered by insurance with annual deductibles of at least $1,000 for individual coverage.[74] With the surge in popularity among employer-sponsored health plans of "high-deductible" plans, deductible thresholds affect an ever-increasing number of patients:



*Estimate is statistically different from estimate for the previous year shown (p < .05).
NOTE: Covered Workers enrolled in an HDHP/SO are enrolled in either an HDHP/HRA or a HSA-Qualified HDHP. For more information, see the Survey Methods Section. The percentages of covered workers enrolled in an HDHP/SO may not equal the sum of HDHP/HRA and HSA-Qualified HDHP enrollment estimates due to rounding.
SOURCE: Kaiser/HRET Survey of Employer-Sponsored Health Benefits, 2006-2016.



**Figure 4: Percent Increase of High-Deductible Plans:** [75]

85.    High deductible plans require consumers to pay thousands of dollars before their coverage kicks in. Many individuals and families cannot afford to hit their high-deductible costs

---

[73] Drew Altman, *The Missing Debate Over Rising Health-Care Deductibles*, THE KAISER FAMILY FOUNDATION (Sept. 18, 2016), http://kff.org/health-costs/perspective/the-missing-debate-over-rising-health-care-deductibles/.
*Don't Be Fooled By Eli Lilly's & Express Scripts' New Insulin Program*, [74] National Prescription Coverage Association (2017), http://nationalprescriptioncoveragecoalition.com/dont-be-fooled-by-eli-lillys-express-scripts-new-insulin-program/.
[75] *Employer Health Benefits: 2016 Summary of Findings*, THE KAISER FAMILY FOUNDATION (2016), https://kaiserfamilyfoundation.files.wordpress.com/2016/09/employer-health-benefits-2016-summary-of-findings.pdf.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 27

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

year after year. As a result, rising list prices for drugs and other prescription products are particularly harmful to patients in high-deductible plans, not only because they hit their deductibles annually, but because they hit their deductibles over a *shorter period of time*, resulting in significant financial burden at the start of each calendar year. Individuals or families who do not have excess cash or access to credit to meet this annual burden may resort to testing their blood sugar less frequently to spread their out-of-pocket payments over a longer period of time.

86.    **Cost sharing**. Third, even after deductibles are paid, insured consumers' prescription costs still are affected by the PBMs' and manufacturers' pricing scheme through copayments and coinsurance requirements. Some plans require these payments during the deductible phase, while others require payment of the full list price with copayments and coinsurance requirements only after the deductible is met.

87.    Copayments are set amounts that an insured must pay for medical services, including prescriptions. Copayments vary by the prescribed product, with products in preferred formulary positions carrying a lower copay and products in a disfavored position costing the insured more. If the brand of test strips that corresponds to an insured patient's glucose meter is moved to a less preferred tier on her PBM's formulary, for example, the patient then must spend more because of that less favorable formulary placement, which is driven by Defendants' Test Strip Pricing Scheme.

88.    Coinsurance is a percentage of the cost of a medical service or prescription product that the insured must pay. In the case of prescription products, the coinsurance amount is based on the inflated list price, not an adjusted price based on the secret rebates and kickbacks that PBMs negotiate, and not the amount that manufacturers actually collect and that PBMs or their clients actually pay.

89.    To add insult to injury, the portion of prescription costs that an insured person's plan will pay is often not based on the full, inflated list price—it is based on a negotiated lower

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 28

price, which will take into account some rebates, discounts, or other concessions passed through to the plan by the PBM. Thus, plans with such arrangements do not simply pay the difference between the participant's payment and the list price—they instead pay something less—and for large insurers or those that own PBMs, something *much* less. The burden on participants and beneficiaries of such plans is disproportionate to whatever percentages they may think they are shouldering.

90.    **Additional strips**. Fourth, although some diabetes patients need to use eight or more test strips per day, many health plans limit coverage to only three or four strips per day.[76] If a diabetes patient buys additional strips on medical advice, she pays the full inflated list price.

**E.    The rise of the PBMs in the pharmaceutical supply chain.**

91.    When they first came into existence in the late 1960s, PBMs provided administrative services to health plans by processing claims and maintaining formularies. Over time, they played a larger role negotiating prices with manufacturers of prescription products. Since PBMs were independent, they generally were thought to pass savings back to health plans and consumers by using their leverage to negotiate lower reimbursement rates with pharmacies and discounts with manufacturers.[77]

92.    In the 1990s, manufacturers began acquiring PBMs, which caused an "egregious conflict[] of interest," prompting the Federal Trade Commission to undo those deals. The deals allowed prescription product manufacturers to coordinate pricing policies, see their competitors' sensitive pricing information, and favor their own products over those of their competitors.[78]

93.    In the early and late 2000s, PBMs started buying pharmacies, which has caused a similar conflict of interest that resulted from the merger of manufacturers and PBMs in the

---

[76] Kathryn Doyle, *Test strip supply linked to better diabetes care*, CHICAGO TRIBUNE (Feb. 07, 2013) http://articles.chicagotribune.com/2013-02-07/lifestyle/sns-rt-us-test-strip-supply-linked-to-better-diabetesbre9-20130207_1_sugar-levels-blood-sugar-a1c.

[77] Brian Feldman, *Big pharmacies are dismantling the industry that keeps US drug costs even sort-of under control*, QUARTZ (Mar. 17, 2016), https://qz.com/636823/big-pharmacies-are-dismantling-the-industry-that-keeps-us-drug-costs-even-sort-of-under-control/.

[78] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 29

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1990s.[79] When a PBM combines with a pharmacy, they "lose the incentive to police against pharmaceutical company schemes to steer patients to more expensive drugs. Indeed, they may collude in them."[80] The power of the largest PBMs has continued to grow, and has allowed them to distort the pharmaceutical supply chain to their own financial advantage.

94. For example, the PBM Defendants operate mail-order pharmacies, and Defendant CVS Health also owns retail pharmacies. When consumers purchase test strips from these pharmacies, they are dealing with the PBM entities that are conspiring to drive up the prices of test strips through their formulary placement leverage and rebate demands from the manufacturers, who then raise their prices to benefit themselves and the PBM Defendants.

95. PBMs make outsize profits by exploiting the complex prescription distribution system in the United States. While the role of PBMs in the supply chain is well known, the size of the rebates and other fees they extract from companies for formulary placement, and the portion of these payments they pocket (the "PBM Kickbacks") are carefully guarded secrets.[81]

96. Manufacturers well understand the power of PBMs.[82] Because of their size, and the many thousands of health plan clients they represent, PBMs can steer business from one manufacturer to another based on which one pays the larger PBM Kickback. These relationships also result in higher prices to those who are uninsured or otherwise have no direct relationship with the PBMs other than buying from the pharmacies the PBMs own.

97. PBMs depend on the lack of transparency to conduct their business and have vigorously resisted any requirement that they disclose the details of their agreements with

---

[79] *See id.*
[80] *Id.*
[81] *See, e.g.*, Lydia Ramsey, *One of the largest middlemen in the drug industry just released a video showing why it should be able to remain secretive*, BUSINESS INSIDER (Feb. 9, 2017, 5:22 PM), http://www.businessinsider.com/what-pharmacy-benefit-managers-are-doing-about-trump-and-drug-pricing-2017-2.
[82] Denise Roland & Peter Loftus, *Insulin Prices Soar While Drugmakers' Share Stays Flat*, WALL ST. J. (Oct. 7, 2016, 5:46 PM), https://www.wsj.com/articles/insulin-prices-soar-while-drugmakers-share-stays-flat-1475876764.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 30

1  manufacturers, and the PBM Kickbacks they receive from manufacturers—as well as their

2  agreements with the insurers and pharmacies.[83]

3      98.    Although consumers are led to believe that the list price is the actual price for a

4  prescribed product, including test strips, the list price is inflated to account for PBM Kickbacks,

5  which are "rebated" back to the PBMs, as shown in the following diagram. Note that the diagram

6  is only illustrative and that insurers do not necessarily receive a large proportion of the "rebates"

7  back from PBMs, which may keep all or most of the PBM Kickbacks in some instances.

8  "Overall, nearly one-third of the total expenditures on branded pharmaceuticals were, in some

9  way, rebated back to PBMs and payers in 2015."[84]

10     **Figure 5: Who Pays for Your Medication**[85]



[83] *Id.*
[84] Way... Rese...
[85] Lyd... *drug*... scrip...

CLASS...
- 31

99.     Even though PBMs tell their clients that they reduce prescription prices, the "rebates" that PBMs negotiate actually comprise a significant portion of the gross sales of manufacturers. The following figure depicts the percentage of gross drug sales that is accounted for by both "rebates" and selling, general, and administrative (SG&A) spending.

**Figure 6: SG&A and Rebates as a Percentage of U.S. Gross Drug Sales Per Company in 2016**[86]



100.    "Rebates" continue to rise. In 2016, rebates climbed to 37.3% from 35.7% in 2015.[87]

101.    According to the Pharmaceutical Care Management Association, the trade group that represents the PBM industry, PBMs manage pharmacy benefits for over 266 million Americans.[88] Three large companies dominate the PBM market: Express Scripts, CVS Health, and OptumRx. Together, these companies cover roughly 78% of insured Americans.[89]

---

[86] *Global Pharma and Biotech Sector Review*, CREDIT SUISSE (Apr. 18, 2017).
[87] *Id.* at 5.
[88] *Our Mission*, PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION, https://www.pcmanet.org/our-industry/ (last visited Feb. 26, 2017).
[89] Patricia M. Danzon, PhD, *2014 ERISA Advisory Council PBM Compensation and Fee Disclosure* (2014), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/about-us/erisa-advisory-council/ACDanzon061914.pdf.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 32

102.    Express Scripts is the largest PBM in the United States.[90] In 2016, annual revenue for Express Scripts was approximately $102.287 billion.[91] As of December 31, 2016, more than 69,000 retail pharmacies, representing over 98% of all retail pharmacies in the nation, participated in one or more of Express Scripts' networks.[92]

103.    CVS Health Corporation, including its subsidiary CVS Caremark filled or managed approximately 1.2 billion prescriptions during the year ended December 31, 2016, equaling approximately 1.6 billion prescriptions when counting 90-day prescriptions as three separate prescriptions.[93]

104.    In 2015, CVS Health Corporation's pharmacy services segment, which includes the corporation's PBM activities but not its retail/long-term care segment, brought in $100.363 billion in net revenues.[94] CVS Health, through its subsidiary PBM, provides pharmacy benefit administration for a network of more than 68,000 retail pharmacies, including approximately 41,000 chain pharmacies and 27,000 independent pharmacies.[95]

105.    The third largest PBM, OptumRx, owned by UnitedHealth, provides pharmacy care services to more than 65 million people in the nation through a network of more than 67,000 retail pharmacies and multiple delivery facilities.[96] In 2016, OptumRx managed more than $80 billion in pharmaceutical spending.[97] OptumRx's 2016 revenue was $60.44 billion.[98]

106.    Business for the PBM Defendants is booming. For example, from 2014 to 2015, Express Scripts' net income increased by $468.8 million, or 23.4 percent.[99] In 2016, gross profit for CVS Health's pharmacy services segment, which includes the PBM CVS Caremark,

---

[90] Anne Steele, *Express Scripts Revenue Falls*, WALL ST. J. (Feb. 14, 2017, 4:49 PM), https://www.wsj.com/articles/express-scripts-revenue-falls-1487108990.
[91] Express Scripts Holding Co., *supra* note 25.
[92] *Id.*
[93] CVS Health Corp., *supra* note 27.
[94] CVS Health, 2015 ANNUAL REPORT (2016).
[95] *Id.*
[96] UnitedHealth Group, *supra* note 26.
[97] *Id.*
[98] *Id.*
[99] Express Scripts Holding Co., *supra* note 25.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 33

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

increased 12.9 percent.[100] And OptumRx's earnings from operations increased 53 percent from 2015 to 2016.[101]

107.    The PBM Defendants' earnings increased further in 2016. Express Scripts' net income increased 37.5 percent from 2015 to 2016.[102] CVS Health's gross profits from its pharmacy services segment increased by an additional 9.6 percent.[103] And OptumRx reported a 53 percent increase in earnings from operations.[104]

**F.    The Test Strip Pricing Scheme.**

108.    PBMs make a profit in three primary ways: first, their health insurer clients pay service fees for processing prescriptions and running mail-order pharmacies; second, insurers pay transaction fees on the different operations required to manage the complex cash flows between insurers, pharmacists and manufacturers; and third, PBMs take a cut of the "rebates" and other fees they negotiate with manufacturers.

109.    This rebate arrangement, if operated ethically and honestly, would encourage PBMs to negotiate *lower net prices* for medical products. If PBMs could purchase products more cheaply from the manufacturers, they could place those products more favorably on their formularies, meaning that the patient would pay less for that product. PBMs would increase their margins when they sold the products to their clients.

110.    Obtaining a favorable formulary placement is a primary concern of test strip manufacturers. As was explained in a market profile about the SMBG industry, "[t]he key to maintaining market share is keeping 'favored' status on these formulary programs where the patient must purchase the formulary product to get the lowest price or choose a nonformulary product at a higher price."[105] And PBMs have greater leverage to negotiate lower prices when multiple companies make interchangeable products—*i.e.*, medical supplies that serve the same

---

[100]CVS Health Corp., *supra* note 27.
[101] UnitedHealth Group, *supra* note 26.
[102] Express Scripts Holding Co., *supra* note 25.
[103] CVS Health Corp., *supra* note 27.
[104] UnitedHealth Group, *supra* note 26.
[105] Hughes, *supra* note 59, at 1221.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 34

function. In such a scenario, the manufacturers should compete on price, as in normal competitive markets, for the PBMs' business.

111.    However, the arrangement is not operated ethically and honestly. The Manufacturer Defendants and PBM Defendants are gaming the system. They have realized that they both benefit if, instead of the PBM Defendants forcing the Manufacturer Defendants to sell test strips to them and their clients for less money, they induce the Manufacturer Defendants to raise their publicly reported list price, but largely maintain the net prices. This creates what is, in effect, a massive slush fund derived from the difference between the net and list prices that can be used by the Manufacturer Defendants to pay the larger and larger rebates demanded by the PBM Defendants for formulary placement.[106]

112.    Although Defendants keep the details of the Test Strip Pricing Scheme a secret, in a pending lawsuit, Abbott admitted that the list price for test strips is inflated to account for "rebates." Abbott filed a lawsuit against test strip wholesalers and pharmacies, alleging that they wrongfully imported, distributed, and sold Abbott's FreeStyle glucose test strips that were labeled for sale in other countries, not in the United States.[107] Acknowledging that the international FreeStyle strips were "functionally the same" as the strips sold in the United States, Abbott explained why strips labeled for sale in this country nevertheless are *much* more expensive.[108] "Due to the differences between U.S. and international insurance, reimbursement, and rebate practices, Abbott sells FreeStyle test strips outside the United States at markedly lower list prices."[109] Indeed, the "rebates" account for essentially *all* of the difference between the price for Abbott's test strips in other countries and in the United States, as Abbott admits in its own complaint: [110]

---

[106] Roland & Loftus, *supra* note 80.
[107] Amended Complaint, *Abbott Laboratories v. Adelphia Supply USA*, No. 15-cv-05826 (E.D.N.Y. Mar. 28, 2016), ECF No. 307.
[108] *Id.* ¶ 11.
[109] *Id.* ¶ 7.
[110] *Id.* ¶ 381.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 35

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In many foreign countries, the list price for FreeStyle test strips is lower than the United States. This is because the insurance systems in those countries differ from that in the United states. In particular, they involve little or no reimbursements or rebates. After all reimbursements and rebates are considered, the net price for U.S. and foreign FreeStyle test strips is similar throughout the developed world.

113.     Roche similarly revealed in a complaint that it filed that its test strip list prices are artificially inflated to accommodate "rebates." The test strip manufacturer sued a number of pharmacies and test strip distributors, claiming that the defendants had lied to fraudulently obtain "rebates" from Roche.[111] Allegedly, the defendants conspired to buy test strips from Roche that were intended for resale only to persons covered by insurance plans that provide benefits for test strips as durable medical equipment ("DME"), rather than plans that cover test strips as a pharmacy benefit.[112]

114.     Unlike when test strips are covered as a pharmacy benefit, Roche explained that test strips that are designated for sale only to DME beneficiaries (including Medicare beneficiaries) involve no rebates.[113] "Retail strips," on the other hand, which are designated for sale to anyone, including patients who have insurance that covers test strips as a pharmacy benefit, carry inflated list prices to account for "rebates."[114] Therefore, even though the list price for "DME strips" is much lower, the net price that Roche receives is comparable for both groups of test strips.[115]

115.     In its complaint, Roche alleges that the defendants ordered test strips labeled for beneficiaries of insurance plans that cover test strips as DME, but instead ultimately sold them to beneficiaries of health plans that categorize test strips as a pharmacy benefit.[116] This resulted, according to Roche, in Roche paying "rebates" for test strips that were not artificially inflated to

---

[111] Amended Complaint, *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 17-cv-00949-LJM-DML, (S.D. Ind. Apr. 5, 2017), ECF No. 12.
[112] *Id.* ¶ 2.
[113] *Id.* ¶ 40.
[114] *See id.* ¶¶ 38, 39.
[115] *Id.* ¶ 4.
[116] *Id.* ¶ 2.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 36

account for rebates.[117] Roche in effect acknowledged that the high list price of test strips for pharmacy plan beneficiaries (and the uninsured) has nothing to do with the products themselves.

116.    Roche provided an example: Roche sells "DME strips" to mail-order distributors for under $20 per vial of 50 strips.[118] In contrast, Roche sells the same vial of 50 strips to wholesalers for approximately $71.[119] The cause of the stark difference between these prices is the Test Strip Pricing Scheme—Roche artificially raises the price for its test strips to offer PBMs a greater "spread."

117.    Roche incorrectly alleged, however, that consumers are not hurt by this pricing scheme because most are covered by insurance. Although Roche claims that over 90% of purchasers of its "retail strips" have insurance that covers the test strips as a pharmacy benefit, that means that 10% of purchasers pay the full price out-of-pocket—without receiving any of the "rebates" that drive the inflated list price.[120] Moreover, as described above, even diabetes patients who have insurance coverage for test strips as a pharmacy benefit must nevertheless pay a portion of the inflated list price—in the form of out-of-pocket payments before their annual deductible has been satisfied, copayments that are inflated based on the inflated list price, and coinsurance rates.

118.    Like with other prescription products, the PBM Defendants' business model includes taking a portion of these rebates for themselves after they negotiate them.

119.    The scheme allows the Manufacturer Defendants to maintain or increase their profit margins on test strips sold in the United States and ensure their access to the millions of Americans whose drugs and other medical products are made available via the PBM formularies. And the scheme allows the PBM Defendants to leverage their control over formularies to obtain PBM Kickbacks. With net prices staying the same, and list prices going up, the rebates get bigger, and so does the PBM Defendants' cut. The scheme artificially drives up list prices

---

[117] *Id.* ¶ 4.
[118] *Id.* ¶ 40.
[119] *See id.* ¶ 39.
[120] *See id.* ¶ 38.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

specifically so that the PBM Defendants can earn more profit from the rebates that the Manufacturer Defendants pay to the PBM Defendants behind the scenes. And the Manufacturer Defendants can pay the PBM Defendants what they demand while increasing the Manufacturer Defendants' profits and sales.

120.    As alleged in another complaint filed by a producer of generic test strips, Johnson & Johnson has taken advantage of the test strip market to prevent generic manufacturers from competing—essentially forcing consumers who used the OneTouch Ultra glucose meters to continue paying inflated prices for Johnson & Johnson's brand strips. UniStrip Technologies, LLC received FDA approval to market and sell a cost-effective alternative test strip that would work with Johnson & Johnson's four most popular meters.[121] Johnson & Johnson held virtually 100% of the market for FDA-approved test strips that were compatible with the OneTouch Ultra family of glucose monitors.[122] UniStrip alleged that to thwart competition, Johnson & Johnson engaged in anticompetitive and exclusionary tactics including coercively inducing resellers to boycott or refuse to sell UniStrip's lower-priced test strips for fear of incurring price increases and penalties on an array of products.[123] Johnson & Johnson also sued UniStrip for patent infringement, and the parties settled both matters.[124]

121.    Thus, the Manufacturer Defendants have demonstrated their commitment to maintaining inflated list prices, and far from using their prodigious bargaining power to lower test strip prices, the PBM Defendants abuse their position in order to benefit both themselves and the Manufacturer Defendants. It is a profitable enterprise, though deeply unethical and damaging to consumers, who shoulder the burden of the higher list prices through increased out-of-pocket payments. This dynamic lies at the heart of the rising cost of test strips, and the resulting public health disaster.

---

[121] Second Amended Complaint, *UniStrip Tech., LLC, v. LifeScan, Inc.*, No. 14-CV-04518-JHS, 2015 WL 5521803 ¶ 7 (E.D. Pa. Mar. 30, 2015).
[122] *Id.* ¶ 6.
[123] *Id.* ¶ 2.
[124] *See* Stipulation of Dismissal, *LifeScan, Inc., v. UniStrip Tech., LLC*, No. 14-CV-00247-RJC-DSC (W.D.N.C. Mar. 28, 2017), ECF No. 43.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**G.    The Manufacturer Defendants' test strips are drastically overpriced.**

    **1.    Even though test strips cost pennies to produce, the Manufacturer Defendants charge more than a dollar per strip.**

122.    Test strips are marketed like printers or razors—glucose meters are sold for a small amount or even given away for free, but test strips can cost one dollar or more per strip.[125] And test strips are unique to each manufacturer or meter model. In other words, after a diabetes patient obtains a glucose meter, he is locked into buying strips from that same manufacturer.

123.    The high price of test strips is not due to the expense of production or significant product innovation. A typical strip has been documented to cost as little as 11 cents to manufacture, and administrative and marketing expenses may add only another 10 cents.[126] Some sources report that manufacturing test strips cost even less, such as 2 to 6 cents per strip, when produced by the millions.[127] This means that about *eighty percent* of the price of test strips, if not more, is profit—much of which is captured by the PBM Defendants, as well as the Manufacturer Defendants.

124.    The amount that manufacturers and middlemen such as PBMs can earn from the one-time-use test strips is astronomical—a 2012 study found that the annual cost of test strips for insulin-dependent diabetes patients was over $750.[128]

    **2.    Identical strips sold in other markets are much cheaper.**

125.    The extremely high profit margin for test strips also is demonstrated by Abbott's allegations in its lawsuit against wholesalers and pharmacies. After accounting for "rebates" and "reimbursements," "the net price for U.S. and foreign FreeStyle test strips is similar throughout the developed world."[129] That is because a cut of the huge difference between net and list prices for the Manufacturer Defendants' test strips sold in the United States goes to gatekeepers—the PBM Defendants—who may in turn share some of the PBM Kickbacks with their insurer clients.

---

[125] Avril, *supra* note 29.
[126] *Id.*
[127] Turner, *supra* note 58, at 3188.
[128] Yeaw, *supra* note 48.
[129] Amended Complaint, *Abbott Laboratories v. Adelphia Supply USA*, ECF No. 307 ¶ 381.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 39

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

126.    Similarly, in the lawsuit that Roche filed, the manufacturer acknowledged that even though the list price for test strips designated for sale to patients who have coverage for test strips as DME is much lower than the list price for other diabetes patients, Roche receives comparable net revenues for test strips with either designation.[130] Again, this is because PBMs profit from the list price for test strips that are artificially inflated to the benefit of the PBM Defendants. Meanwhile, the Manufacturer Defendants profit off of the same inflated list price borne by uninsured patients, as well as by keeping their sales up through participation in the Test Strip Pricing Scheme with the PBM Defendants.

127.    Despite the inflated price of their test strips, the Manufacturer Defendants dominate the market for self-monitoring of blood glucose. A 2009 report concluded that the Manufacturer Defendants controlled approximately 90% of the market.[131]

**3.    List prices for the Manufacturer Defendants' test strips continue to rise.**

128.    Not only are the Manufacturer Defendants' test strips much more expensive than alternatives, but they *continue* to increase in price. In the last ten years, for example, the average wholesale price of some of the test strips from each Manufacturer Defendant has steadily risen:

---

[130] Amended Complaint, *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, ECF No. 12 ¶ 4.
[131] Hughes, *supra* note 59, at 1221.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 40

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Figure 7: Test Strip Average Wholesale Price[132]**



#### H.    PBMs collude with the Manufacturer Defendants to inflate test strip prices.

129.    In a normal market, companies offering comparable products would compete by offering consumers lower prices to win business. But the market for glucose test strips is far from normal. Test strips are considered a prescription benefit, like insulin and other drugs. Thus, whether and to what extent health plan enrollees will have coverage for a manufacturer's test strips depends on how the PBM Defendants structure their formularies.

130.    Moreover, if a health plan enrollee wants the out-of-pocket expense of test strips to contribute to paying down her annual deductible, then she has no choice but to pay the inflated price for the brand that is on her PBM's formulary—otherwise the purchase doesn't count.

131.    As explained above in regard to the PBM Defendants' grip on the pharmacy benefit market, they wield extraordinary control over the access that manufacturers of pharmacy products have to insured diabetes patients. Just last year, for example, two of the PBM Defendants, CVS Health and Express Scripts, made headlines for removing dozens of

---

[132] Compiled from Medi-Span historical and current average wholesale price data.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

medications from their standard formularies.[133] Both PBMs removed a number of test strip brands from their formularies, preferring Johnson & Johnson's OneTouch instead.[134] CVS Health went so far as to remove "All other test strips that are not ONETOUCH brand."[135]

132.    To gain or maintain a preferable placement on a PBM's formulary and secure sales volume, the Manufacturer Defendants artificially inflate the list price for their test strips—allowing the PBM Defendants to cash in on the spread between the list and net prices without decreasing the Manufacturer Defendants' own profits. This is how the Manufacturer Defendants remain on top of an industry where, despite the presence of multiple competitors, they continue to increase the list prices for comparable products.

133.    The Manufacturer Defendants also have revealed that published list prices are artificially inflated in recent statements regarding market performance—although the average wholesale prices for test strips have been climbing, net prices for diabetes products have not. For example, although the wholesale price for OneTouch Ultra test strips *rose by 40.5 percent* between 2007 and 2016,[136] Johnson & Johnson stated in 2017 that "[t]he diabetes market is very price sensitive, and [net] prices have been declining for some time . . . ."[137] A Johnson & Johnson executive acknowledged the role that "rebates" play in increasing prescription prices during an earnings call. The company's Executive Vice President and Chief Financial Officer explained that "rebates continue to be an increasing part of the business and the overall realization of gross price to net price, that delta is expanding, I would say, over time."[138]

---

[133] Alison Kodjak, *Will Your Prescription Meds Be Covered Next Year? Better Check!*, NATIONAL PUBLIC RADIO (Aug. 15, 2016, 4:32 AM), http://www.npr.org/sections/health-shots/2016/08/15/489790412/will-your-prescription-meds-be-covered-next-year-better-check.

[134] CVS Caremark Formulary Drug Removals, April 2017, http://www.caremark.com/portal/asset/Formulary_Exclusion_Drug_List.pdf (last visited May 22, 2017).

[135] *Id.*

[136] From Medi-Span average wholesale price data.

[137] Linda A. Johnson, *Johnson & Johnson 1Q profit dips amid drug cost pressure*, ARKANSAS DEMOCRAT-GAZETTE (Apr. 19, 2017, 2:17 AM), http://www.arkansasonline.com/news/2017/apr/19/johnson-amp-johnson-1q-profit-dips-amid/?f=business (alteration in article).

[138] Johnson & Johnson Q2 2016 Earnings Call, July 19, 2016, recording available at: https://earningscast.com/JNJ/20160719.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 42

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

134.    Roche similarly reported "a decline in Diabetes Care business, which faced continued pricing pressure [,]"[139] despite the steady *increase* in average wholesale price for its Accu-Chek Compact Plus test strips. Indeed, a diabetes market commentator noted broadly that "prices for test strips continue to contract."[140] That is because the increases in list prices are, in large part, going to the *PBM Defendants*.

135.    This is consistent with Abbott's admissions in its own lawsuit. "After all reimbursements and rebates are considered, the net price for U.S. and foreign FreeStyle test strips is similar throughout the developed world."[141]

136.    Thus, the PBMs' presence in and influence on the U.S. market for test strips is driving the price gouging that hurts U.S. consumers. The Manufacturer Defendants are critical players that make this scheme work for both themselves and the PBM Defendants.

**I.    The Defendants profit at the financial and physical expense of consumers.**

137.    While the Defendants have profited from the Test Strip Pricing Scheme, diabetes patients have borne the cost of the wrongfully inflated list prices for the Manufacturer Defendants' test strips. Some diabetes patients are advised to test their blood four, ten, or even more times per day, meaning that the monthly expense of strips can add up quickly. Uninsured people with diabetes must pay the entire, inflated, list price for the Manufacturer Defendants' test strips. Even diabetes patients who have insurance do not escape the effects of Defendants' Test Strip Pricing Scheme—they must pay the list price until they meet their deductible, and even after that is met, many insureds must pay copayments or coinsurance rates that are raised because of the inflated list price of the Manufacturer Defendants' test strips.

138.    The Commissioner of the FDA, Dr. Scott Gottlieb, explained how this harms consumers:

---

[139] Media Release, Roche, *Roche reports good results in 2016* (Feb. 1, 2017), http://www.roche.com/media/store/releases/med-cor-2017-02-01.htm.

[140] David Kliff, *How Will CGM's Success Impact Conventional Glucose Monitors?*, DIABETES IN CONTROL (July 23, 2016), http://www.diabetesincontrol.com/how-will-cgms-success-impact-conventional-glucose-monitors/.

[141] Amended Complaint, *Abbott Laboratories v. Adelphia Supply USA*, ECF No. 307 ¶ 381.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 43

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

[The rebates] don't necessarily help offset the costs paid by those who need a particular drug. . . . [I]f a patient needs a particular drug, they will increasingly find that they are paying the full, negotiated price at the pharmacy counter. They never see the real "net" price, after the rebate is applied much later.[142]

139.    Among constraints on the SMBG market, a report noted the "[g]eneral unwillingness of diabetes patients (many of whom are low income or on fixed incomes) to pay more 'out-of-pocket' expense. With copays generally rising, some patients are seeking lower-cost alternatives or testing less frequently."[143]

140.    Because of the high cost of test strips, a "gray market" for test strips exists— businesses pay diabetes patients for unused test strips, which the businesses then sell to other diabetes patients for less than the store price. The reliability of strips purchased through the "gray market," however, is questionable. Glucose strips contain enzymes and must be stored within certain temperatures. It is doubtful that test strip resellers are cautious about preserving the efficacy of the strips that they purchase.[144] Thus, diabetes patients who seek lower prices through the "gray market" unfortunately risk purchasing strips that will not measure their glucose levels accurately.

141.    The artificially inflated list prices for test strips has endangered the health of diabetes patients. To reduce the expense of test strips, some diabetes patients do not test their glucose levels as frequently as they should—or at all—risking their health or even their lives.[145]

## V.    ERISA ALLEGATIONS

### A.    The PBM Defendants are fiduciaries and parties in interest.

142.    The ERISA Plaintiffs and the members of the ERISA Class (as defined below) are participants in employee welfare benefit plans, as that term is defined in 29 U.S.C. § 1002(1)(A), whose pharmacy benefits covering prescription medications are administered by the PBM Defendants ("ERISA Plans").

---

[142] Winegarden, *supra* note 83, at 6.
[143] Hughes, *supra* note 59, at 1220.
[144] NATIONAL PUBLIC RADIO, *supra* note 12.
[145] Avril, *supra* note 29.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 44

143.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

144.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

145.    The PBM Defendants are fiduciaries of all of the ERISA Class members' ERISA Plans for which they administered prescription benefits in that they exercised discretionary authority or control respecting the following plan management activities, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and in that they had discretionary authority or discretionary responsibility in the administration of the ERISA Plans of participants and beneficiaries in the ERISA Class, ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii), because, by way of example, they did and/or could do one or more of the following *with respect to the ERISA Plans*:

    a.    negotiate with the Manufacturer Defendants for the inclusion of the prescription products that they manufacture on the PBM Defendants' formularies that govern prescription coverage through the ERISA Plans;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b.  negotiate with the Manufacturer Defendants the prices that patients and the ERISA Plans will pay, including through placement of specific test strips on tiered formularies;

c.  dictate whether a particular brand of test strip was covered, and if so, in which tier it was categorized;

d.  dictate the prices of test strips to patients and ERISA Plans;

e.  negotiate with the Manufacturer Defendants the amount of rebates, discounts, fees, or other financial incentive payments (*i.e.*, PBM Kickbacks, as defined above) that the PBM Defendants will receive from the Manufacturer Defendants upon the purchase of specific test strips by patients and health plans;

f.  induce the Manufacturer Defendants to artificially inflate the list prices so that there is room enough in the test strip pricing regime for the PBM Kickbacks, while the Manufacturer Defendants' net profits and sales volumes are buoyed by their test strip's inclusion on PBM formularies;

g.  dictate the portion, *if any*, of the PBM Kickbacks that are shared with or passed through to other entities, such as health insurers, plan administrators, plan sponsors, or patients;

h.  dictate the amount ultimately paid to pharmacies for test strips;

i.  dictate the amount pharmacies charge patients for test strips;

j.  manage the prescription benefit program, including processing and paying test strip claims received from pharmacies;

k.  choose whether to fill a prescription from a participant for test strips, reject the prescription, or shift the participant to a different brand of test strip or require the use of the PBM Defendants' exclusive mail order pharmacies;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

l.  determine the amount of and require the collection of additional profits and compensation for services provided by the PBM Defendants pursuant to the ERISA Plans;

m.  set their own margin/compensation for services performed as fiduciaries by dictating the amount of PBM Kickbacks they will collect from the Manufacturer Defendants and the amount of such PBM Kickbacks they will ultimately keep for themselves in connection with test strip purchases;

n.  unilaterally collect their own compensation for services performed as fiduciaries by collecting PBM Kickbacks;

o.  set and change the compensation of themselves with respect to the ERISA Plans by allocating the proceeds of PBM Kickbacks;

p.  misrepresent, conceal, and/or fail to disclose to patients and fiduciaries other than the PBM Defendants the manner in which the PBM Defendants charged for prescription products as alleged above;

q.  misrepresent, conceal, and/or fail to disclose to patients and to fiduciaries other than the PBM Defendants the amounts and components of PBM Kickbacks that the PBM Defendants collect from the Manufacturer Defendants;

r.  misrepresent, conceal, and/or fail to disclose to patients and to fiduciaries other than the PBM Defendants the PBM Defendants' compensation and profit collected in connection with prescription product transactions;

s.  improperly trade off the interests of ERISA Plan participants and beneficiaries for the benefit of themselves in charging inflated prices in order to obtain excessive profits at the expense of participants and others paying amounts that are captured by the PBM Defendants as PBM Kickbacks;

t.  improperly trade off the interests of plan participants and beneficiaries for the benefit of third parties, including the Manufacturer Defendants, who are able to sell more of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 47

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the test strips they produce as a result of their participation in the pricing scheme described herein;

u.  improperly trade off the interests of plan participants and beneficiaries for the benefit of third parties, including the Manufacturer Defendants, who are able to sell the test strips they produce at a higher price as a result of their participation in the pricing scheme described herein; and

v.  leverage their contractual relationships with ERISA Plans, their insurers and plan administrators, and the pharmacies from which the ERISA Plans and their participants and beneficiaries purchase prescription products to exert control over billions of dollars that flow from test strips purchases by ERISA Plans and their participants and beneficiaries, as well as leverage the ERISA Plan instruments that govern these transactions, as described further below, causing Plan participants to pay inflated prices for test strips.

146.    The PBM Kickbacks are possible because of the PBMs' discretion and power to do the foregoing, which makes them fiduciaries to the ERISA Plans. The PBM Defendants' *relationships with* and *access to* the ERISA Plans and related test strip purchases are the source of this discretion and power. They have and use discretion and authority to set their own fees and compensation by virtue of their role with respect to the administration and/or management of the ERISA Plans—a central part of which is and was negotiating test strip prices from which the PBM Defendants extract a significant cut of rebates and other payments from the Manufacturer Defendants while increasing, rather than decreasing, costs to ERISA Plan participants. Thus the PBM Defendants' fiduciary power is, in part, the power over their own fees and compensation, because their fees and compensation flow from the test strip price negotiations *only they* have the power to conduct on behalf of the ERISA Plans. The fees and compensation the PBM Defendants extract from these negotiations performed on behalf of the ERISA Plans or by improperly leveraging their relationships with the ERISA Plans are achieved at the substantial

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 48

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

expense of the ERISA Plans' participants and beneficiaries, who must pay purchase prices that result from the inflated list prices that are central to and caused by Defendants' Test Strip Pricing Scheme.

147.   Further, the PBM Kickbacks were additional compensation for the administration of test strip coverage that was collected by the PBM Defendants that was neither disclosed to nor agreed to by the participants and beneficiaries or others that were required to make these additional payments so that participants and beneficiaries could receive their covered prescription products. The PBM Defendants had and exercised discretion to determine the amount of and require the payment of this additional undisclosed compensation, as well as whether to disclose it—or require its concealment. ERISA § 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii).

148.   The PBM Kickbacks are additional "premium" within the meaning of ERISA § 702, for the provision of test strip coverage that was collected by the PBM Defendants that was neither disclosed to nor agreed to by the participants and beneficiaries that were required to make these additional contributions to receive their covered test strips. The PBM Defendants had and exercised discretion to determine the amount of and require the payment of this additional undisclosed premium payment, as well as whether to disclose it—or require its concealment. ERISA § 3(21)(A)(i), (iii), 29 U.S.C. § 1002(21)(A)(i), (iii).

149.   In addition to their fiduciary status under the foregoing discretion-based provisions, the PBM Defendants are fiduciaries of all of the ERISA Class members' ERISA Plans in that they exercised authority or control respecting management or disposition of *plan assets*, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because:

   a.   The copayments, coinsurance, and deductible payments the PBM Defendants required pharmacies to collect from participants and beneficiaries are "plan assets" within the meaning of ERISA;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b. The contracts (*e.g.*, insurance policies and administrative-services-only ("ASO") contracts) underpinning the plans are "plan assets" within the meaning of ERISA; and

c. Through the pricing scheme, as described above, the PBM Defendants exercised control over both (i) test strip payments from participants and beneficiaries and (ii) the management of the contracts underpinning the ERISA Plans.

150. Specifically, the PBM Defendants successfully and improperly leveraged their relationships with and authority over the ERISA Class members' ERISA Plans and plan assets to benefit themselves and third parties, and without their authority or control over significant plan assets and relationships with the ERISA Plans they would not have been able to do so. Through the Test Strip Pricing Scheme, the PBM Defendants caused participants to pay inflated prices for test strips.

151. Further, any plan-paid amounts that were contributed to participant test strip transactions were "plan assets" within the meaning of ERISA. Incident to their pricing scheme, the PBM Defendants also exercised control over these plan assets, part of which became PBM Kickbacks, making the PBM Defendants fiduciaries for purposes of these transactions.

152. Thus, the PBM Defendants are able to pervert their ostensible role as the entity that will drive test strip prices *down*—and they instead induce the Manufacturer Defendants to *raise* prices on test strips to allow for PBM Kickbacks—because they *have* and *exercise* control over both ERISA Plans and ERISA plan assets. The PBM Defendants' access to the ERISA Plans and their ERISA plan assets is used as leverage in the PBM Defendants' negotiations with the Manufacturer Defendants. But for the PBM Defendants' access to millions of insureds' test strip transactions and the funds used to purchase test strips for plan participants, and their central role in *managing plan assets—i.e.*, the insurance policies and ASO contracts underpinning Plaintiffs' ERISA Plans under which prescription benefits are provided—the PBM Defendants would not be able to negotiate and extract the PBM Kickbacks. Thus, the PBM Defendants leveraged their unique and powerful access to one of the most exploitable (and lucrative) plan

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

assets that exists today—health insurance policies and ASO contracts—as well as their key relationships with and access to thousands of ERISA Plans. The direct result of the PBMs' power and abuse of that power is that *participants and beneficiaries* of the ERISA Plans must pay more for test strips than they would absent the scheme.

153.   In addition to the conduct described herein, the PBM Defendants are fiduciaries because they exercise discretion to set the prices that the members of the ERISA Class were and are required to pay for test strips. PBMs are required to act in the best interests of the members of the ERISA Class, but by allowing participants and beneficiaries of ERISA Plans to be subject to the pricing scheme described herein and participating in this scheme with the Manufacturer Defendants, the PBM Defendants have also breached their fiduciary duties to the ERISA Class, as described more below.

154.   The PBM Defendants are aware of the effect the pricing scheme is having on the ERISA Class. Nevertheless, they have maximized and continue to maximize their revenues and the revenues of the Manufacturer Defendants at the expense of the ERISA Class by engaging in the illegal conduct described herein.

155.   In summary, to the extent the PBM Defendants have negotiated agreements subject to or collected funds in connection with the Test Strip Pricing Scheme described herein, they have exercised both discretionary and non-discretionary authority and control over the ERISA Plans, their management and administration, and ERISA plan assets by setting their own margins and compensation for managing the sale of prescription medications, through rebate and other payment negotiations with the Manufacturer Defendants. As discussed further below, this same conduct breached their fiduciary duties under ERISA and constituted prohibited transactions. For example, in negotiating and entering into a contract on behalf of an ERISA plan, a fiduciary must act prudently and negotiate terms that are reasonable and in the best interests of *plan participants and beneficiaries*. In these negotiations and in the contract, agreement, or arrangement that is ultimately agreed upon, a fiduciary cannot place its interests

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

over the interests of the plan participants and beneficiaries, including with respect to the fiduciary's own compensation.

156.    In addition to being fiduciaries for the foregoing reasons, the PBM Defendants are also parties in interest under ERISA because (a) they are fiduciaries, ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and/or (b) they provided plan administration and pharmacy benefit management services to the ERISA Plaintiffs' and the ERISA Class members' health plans, ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

157.    As further described below, the PBM Defendants—fiduciaries and parties in interest—also received and used for their own and third parties' benefit "plan assets," including patients' and certain ERISA Plans' contributions to test strip purchases and ERISA Plan contracts under which and through the management of which they had access to the ERISA Plans and ERISA plan assets, and were able to impose their pricing scheme on the ERISA Class.

158.    Notably, the foregoing powers and activities confer fiduciary status on the PBM Defendants *for all types of ERISA Plans* for which they provide pharmacy benefit services— including both insured plans and self-insured or union funded (Taft-Hartley) plans for which a health insurance company provides administrative-services-only (ASO) plan administration— because these plans all utilize PBMs in the same manner. Thus, *all participants and beneficiaries* in ERISA Plans of whatever type are owed fiduciary duties by the PBM Defendants, and these participants and beneficiaries may bring claims for *their own personal losses* caused by the PBM Defendants' breaches and prohibited transactions, as set forth below.

159.    As a result of the PBM Defendants' misuse of their fiduciary power, ERISA Plan participants and beneficiaries are forced to finance the PBM Kickbacks, from which the PBM Defendants and others profit. The PBM Kickbacks do not just enrich the PBM Defendants, they do so to the detriment of Plan participants, who pay inflated prices for test strips as a result of the scheme.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 52

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.    The PBM Defendants' ERISA duties.**

160.    **The Statutory Requirements**: ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

161.    **The duty of loyalty**. ERISA imposes on a plan fiduciary the duty of loyalty—that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

162.    **The duty of prudence**. Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence—that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

163.    **The duty to inform**. The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

164.    **Prohibited transactions**. ERISA's prohibited transaction rules bar fiduciaries from certain acts because they are self-interested or conflicted and therefore become *per se* violations of ERISA § 406(b)—or because they are improper "party in interest" transactions under ERISA § 406(a). As noted above, under ERISA, a "party in interest" includes a fiduciary as well as entities providing any "services" to a plan, among others. *See* ERISA § 3(14), 29 U.S.C. § 1002(14). ERISA's prohibited transaction rules are closely related to ERISA's duties of loyalty, which are discussed above.

165.    ERISA § 406(a) provides that transactions between a plan and a party in interest are prohibited transactions unless they are exempted under ERISA § 408:

(a) Transactions between plan and party in interest

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a).

166.    ERISA § 406(b), provides:

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

167.    **Co-fiduciary liability**. A fiduciary is liable not only for fiduciary breaches within the sphere of its own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

168.    **The duty to monitor**. In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA participants and beneficiaries. As noted above, the power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.

169.    **The duty not to discriminate**. A health insurer may not discriminate against insureds by charging excessive premiums. ERISA § 702, 29 U.S.C. § 1182, states in pertinent part:

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Prohibiting discrimination against individual participants and beneficiaries based on health status.

(a) In eligibility to enroll.

(1)    In general. Subject to paragraph (2), a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual:

(A)    Health status.

(B)    Medical condition (including both physical and mental illnesses).

(C)    Claims experience.

(D)    Receipt of health care.

(E)    Medical history.

(F)    Genetic information.

(G)    Evidence of insurability (including conditions arising out of acts of domestic violence).

(H)    Disability.

(2)    No application to benefits or exclusions. To the extent consistent with section 701, paragraph (1) shall not be construed—

(A)    to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage, or

(B)    to prevent such a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage.

(3)    Construction. For purposes of paragraph (1), rules for eligibility to enroll under a plan include rules defining any applicable waiting periods for such enrollment.

(b)    In premium contributions.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5

(1)    In general. A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

6
7
8
9
10
11
12
13
14
15

170.    **Non-fiduciary liability**. Under ERISA, non-fiduciaries—regardless of whether they are parties in interest—who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Accordingly, as to the ERISA claims, even for Defendants who have no fiduciary or party-in-interest status themselves, they must nevertheless restore unjust profits or fees and are subject to other appropriate equitable relief with regard to the transactions at issue in this action, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and well established case law. Thus, even though the Manufacturer Defendants are not fiduciaries to the ERISA Plans with regard to any transaction at issue in this action, they are nevertheless subject to equitable relief under ERISA based on their actual or constructive knowledge of the wrongdoing at issue.

16
17
18
19
20
21
22
23
24
25
26

171.    **Rights of action under the plans, for fiduciary breach, prohibited transactions, and related claims.** ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The remedies available pursuant to § 502(a)(3) include remedies for breaches of the fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and for violation of the prohibited transaction rules set forth in ERISA § 406, 29 U.S.C. § 1106. The ERISA Plaintiffs bring their ERISA claims pursuant to ERISA § 502(a)(3), as further set forth below.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**C.    The PBM Defendants breached their duties.**

172.    The PBM Defendants committed breaches of fiduciary duty and prohibited transactions, and harmed the ERISA Plaintiffs and ERISA Class members in the following ways:

a.    The ERISA Plaintiffs and ERISA Class members were charged excessive "copayments" or "coinsurance" contributions for test strips as a result of the Test Strip Pricing Scheme, which caused the list price of test strips to be artificially inflated;

b.    Through the Test Strip Pricing Scheme, the ERISA Plaintiffs and ERISA Class members were charged unlawful fees and additional premiums for test strips;

c.    The ERISA Plaintiffs and ERISA Class members were overcharged for copayment and coinsurance contributions in that rather than paying a percentage of an uninflated price for test strips or a flat fee based on an uninflated price for test strips, these cost-sharing payments were based on substantially inflated amounts;

d.    The ERISA Plaintiffs and ERISA Class members were overcharged when making payments toward their deductibles or out-of-pocket maximums in that rather than paying an uninflated price for test strips, they were charged inflated amounts as a result of the Test Strip Pricing Scheme;

e.    The PBM Defendants improperly leveraged their relationships with and access to the ERISA Plans and their plan assets to extract the PBM Kickbacks from the Manufacturer Defendants;

f.    The PBM Defendants discriminated against patients who have diabetes as compared to those who do not;

g.    The PBM Defendants misrepresented and failed to disclose to ERISA Plan participants and beneficiaries the manner in which they charged for test strips as alleged above;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 58

h.  The PBM Defendants set their own compensation for services performed as fiduciaries by inducing the Manufacturer Defendants to inflate test strip list prices to facilitate the PBM Defendants' collection of PBM Kickbacks;

i.  The PBM Defendants unilaterally collected their own compensation for services performed as fiduciaries by collecting the PBM Kickbacks;

j.  The PBM Defendants set and changed the compensation of third parties with respect to the ERISA Class members' ERISA Plans by allocating the proceeds of the PBM Kickbacks without heeding the best interests of participants and beneficiaries;

k.  The PBM Defendants maximized their own profits and profits to third parties, at the expense of the ERISA Plaintiffs and ERISA Class members;

l.  The PBM Defendants received improper compensation from entities doing business with the ERISA Plans whose pharmacy benefits the PBM Defendants administered and managed;

m.  The PBM Defendants knew or reasonably should have known that their actions would injure plan participants and beneficiaries of *all* ERISA Plans whose test strip prices they manipulated;

n.  The PBM Defendants negotiated test strip prices and PBM Kickbacks based on disloyal and self-interested factors and made such decisions without putting the interests of participants and beneficiaries first;

o.  The PBM Defendants drove up test strip prices instead of driving them down, in order to increase their and the Manufacturer Defendants' profits at the expense of participants and beneficiaries of the ERISA Plans; and

p.  The Manufacturer Defendants knowingly participated in and profited from the fiduciary breaches and prohibited transactions committed by the PBM Defendants.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

173.    The ERISA Plaintiffs and ERISA Class members were overcharged for and/or paid unauthorized and excessive copayments, coinsurance, and deductible payments in connection with the purchase of the Manufacturer Defendants' test strips.

174.    The ERISA Plaintiffs and ERISA Class members were harmed by an abuse of the fiduciary power that the PBM Defendants possess—a substantial part of which gives the PBM Defendants discretion and authority over the administration and management of the ERISA plans with respect to prescription benefits and costs and their own fees and compensation, as well as nondiscretionary power over the management and disposition of plan assets. The PBM Defendants' ability to wield their fiduciary power to extract from the Manufacturer Defendants kickbacks and other benefits for themselves directly and financially harmed participants and beneficiaries of the ERISA Plans. The ERISA Plaintiffs and ERISA Class members were forced to pay purchase prices for test strips that were based on the very same inflated list prices that facilitated the PBM Defendants' profits from rebates and other payments that the Manufacturer Defendants paid in exchange for formulary placement and access to the test strip purchases of ERISA Plan participants and beneficiaries whose ERISA Plans the PBM Defendants managed and administered. Had the PBM Defendants required the Manufacturer Defendants to compete on price, participants' cost sharing amounts would have been based on lower list prices. Thus, the PBM Defendants' profits derived from the Test Strip Pricing Scheme directly harm participants and beneficiaries who must purchase test strips.

## VI.    EQUITABLE TOLLING AND THE DISCOVERY RULE

175.    By its nature, Defendants' Test Strip Pricing Scheme has hidden Defendants' unlawful conduct from consumers and injured parties. Plaintiffs and Class members did not know about the Test Strip Pricing Scheme, nor could they have reasonably discovered its existence until shortly before filing this action.

176.    Through the exercise of reasonable diligence, Plaintiffs and members of the proposed Classes could not have discovered within the time period of applicable statutes of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 60

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

limitation that Defendants were engaged in the conduct described in this Complaint and were misrepresenting the actual cost of test strips, the net price collected by the Manufacturer Defendants, and the amount of PBM Kickbacks that resulted from the scheme. Indeed, these are figures that Plaintiffs still do not know due to Defendants' secretive scheme.

177.    Nor did Plaintiffs and other Class members know of facts that would have caused a reasonable person to suspect that Defendants were engaged in the Test Strip Pricing Scheme. A reasonable and diligent investigation would not have disclosed these facts.

178.    Even today, lack of transparency in test strip pricing and the arrangements, relationships, and agreements between and among the Manufacturer Defendants and the PBM Defendants that result in the PBM Kickbacks continue to hide Defendants' unlawful conduct from members of the Classes.

179.    Thus, the discovery rule has tolled the statutes of limitation with respect to claims as to the Manufacturer Defendants' test strips.

180.    Defendants' deceptive and fraudulent practices and the denial of the misconduct alleged in this action also have tolled all relevant statutes of limitation. For example, ERISA's statute of limitation for fiduciary breach claims, ERISA § 413, 29 U.S.C. § 1113, provides that "in the case of fraud or concealment, [an] action may be commenced not later than six years after the date of discovery of such breach or violation." And while the RICO statute does not contain an express limitation period, the United States Supreme Court has held that civil RICO claims must be brought within four years from the discovery of an injury, which limitation is subject to equitable tolling due to defendants' fraudulent concealment of their unlawful conduct. *Rotella v. Wood*, 528 U.S. 549 (2000).

181.    The Test Strip Pricing Scheme—by its nature a secret endeavor by Defendants— remains hidden from most members of the Classes. The precise amount of PBM Kickbacks remains information in Defendants' possession and largely a mystery to the Classes. Moreover, during the Class Period, as defined below, each Defendant actively and effectively concealed its

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 61

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

participation in the Test Strip Pricing Scheme from Plaintiffs and other members of the Classes through opaque practices and secrecy policies. There is no question that Plaintiffs' claims are timely.

182.     Defendants are estopped from relying on any statutes of limitations. Despite their ongoing obligation to reveal to Plaintiffs and Class members the real price that they should have been charged for test strips, the Defendants instead disclosed only the artificially inflated list price that resulted from the Test Strip Pricing Scheme. The net price paid by the PBM Defendants for test strips, the existence of the Test Strip Pricing Scheme, and the impact that it had on Plaintiffs' and Class members' payment obligations for test strips all were hidden in an attempt to continue to profit at the expense of Plaintiffs and Class members. This deception cannot be rewarded by allowing the Defendants to hide behind the defense of statutes of limitation.

## VII.     CLASS ACTION ALLEGATIONS

183.     Plaintiffs repeat and re-allege every allegation above as if set forth in full herein.

184.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), (b)(2), and (b)(1), Plaintiffs bring this suit on their own behalf and on behalf of three proposed classes of other similarly situated persons, consisting of:

> **The Non-ERISA Employee/Exchange Plan Class**. All individuals residing in the United States and its territories who are or were enrolled in a non-ERISA employer-sponsored, ACA exchange, or state exchange health benefit plan or health insurance plan for which one or more of the PBM Defendants administers pharmacy benefits, who purchased the Manufacturer Defendants' test strips pursuant to such plans or policies and were required to pay all or a portion of the purchase price.

> **The ERISA Class**. All individuals residing in the United States and its territories who are or were enrolled in an ERISA-covered health benefit plan or health insurance plan for which one or more of the PBM Defendants administers pharmacy benefits, who purchased the Manufacturer Defendants' test strips pursuant to such plans or policies and were required to pay all or a portion of the purchase price.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**The Uninsured Class**. All individuals residing in the United States and its territories who are or were not enrolled in a health benefit plan or health insurance plan, who purchased the Manufacturer Defendants' test strips and who paid any portion of the purchase price.

Plaintiffs reserve the right to redefine the Classes prior to certification.

185.     **Class Period**. Plaintiffs will seek Class certification, damages, losses, and other available relief for fiduciary breaches and prohibited transactions occurring within the entire period allowable under ERISA § 413, 29 U.S.C. § 1113, including its fraud or concealment tolling provisions under RICO, 18 U.S.C. 1961, *et seq.* and the doctrine of equitable tolling, as well as under all state statutory and common law claims at issue here. Further, Plaintiffs reserve the right to refine the Class Period after they have learned the extent of Defendants' fraud and the length of its concealment.

186.     Excluded from the Classes are: (a) the named Defendants and any entity in which they have a controlling interest, their subsidiaries and affiliates, and their legal representatives, officers, directors, assignees, and successors and (b) any co-conspirators, and their officers, directors, management, employees, subsidiaries, and affiliates.

187.     Diabetes patients must pay a portion of the inflated list price under a number of different guises, including insurance deductibles, coinsurance, fixed copayments that are based on the inflated list price, and, of course, uninsured diabetes patients must pay the entire list price.

188.     And, for patients who pay any of these types of charges for test strips, the price that a person pays out-of-pocket for the test strips is calculated based on the inflated list prices. Therefore, each person who pays such charges meets one of the Class definitions and each incurred damages that are directly related to the inflated list prices driven by Defendants' Test Strip Pricing Scheme.

189.     This action is brought, and may properly be maintained, as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 63

190.     **Numerosity**. Upon information and belief, each Class consists of millions of purchasers residing throughout the United States. Accordingly, it would be impracticable to join all Class Members before the Court.

191.     **Typicality**. Plaintiffs' claims are typical of the members of the Classes, in that they share facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting Class Members, and Plaintiffs do not have interests that are adverse to those of other Class Members.

192.     **Adequacy**. Plaintiffs will fairly and adequately protect the interests of Class Members and have retained competent counsel that have experience prosecuting complex class actions, including complex questions that arise in consumer protection litigation. Counsel have specific experience litigating pharmaceutical class actions and cases involving Pharmacy Benefit Managers.

193.     **Commonality**. Numerous and substantial questions of law and fact are common to all members of the Classes—all of whom were affected by the Test Strip Pricing Scheme. Some of the common questions of law and fact are:

> i.      Whether the Manufacturer Defendants inflated the list prices for their test strips;

> ii.      What the real or net prices for the Manufacturer Defendants' test strips are;

> iii.      Whether the list prices are deceptive;

> iv.      Whether members of the Classes must pay a portion (or all) of the inflated list price for test strips;

> v.      Whether the reason why the Manufacturer Defendants artificially increased the list price for test strips was to gain better placement on the PBM Defendants' formularies;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1              vi.      Whether the PBM Defendants profit from the discrepancy between

2  the net prices and the inflated list prices for the Manufacturer Defendants' test

3  strips;

4              vii.     Whether each PBM Defendant and each Manufacturer Defendant

5  participated in the Test Strip Pricing Scheme;

6              viii.    Whether each Manufacturer Defendant conspired with each PBM

7  Defendant to complete pricing and rebate fraud;

8              ix.      Whether Defendants engaged in deceptive conduct;

9              x.       Whether Defendants' marketing materials and other

10  communications distributed by Defendants were false or misleading;

11              xi.      Whether Defendants intended to defraud or harm Plaintiffs and

12  Class members;

13              xii.     Whether Defendants violated RICO;

14              xiii.    Whether Defendants violated state consumer protection laws;

15              xiv.    Whether Defendants utilized or formed enterprises for the purpose

16  of carrying out a scheme intended to defraud Plaintiffs and the Classes;

17              xv.      Whether Defendants used the U.S. mails and interstate wire

18  facilities to carry out a scheme intended to defraud Plaintiffs and the Classes;

19              xvi.    Whether Defendants used the U.S. mails and interstate wire

20  facilities to carry out their conspiracy and agreement;

21              xvii.   Whether Defendants are liable to Plaintiffs and the Class members

22  for damages;

23              xviii.  Whether the PBM Defendants are fiduciaries under ERISA;

24              xix.    Whether the PBM Defendants are parties in interest under ERISA;

25               xx.     Whether the PBM Defendants breached their fiduciary duties in

26  failing to comply with ERISA as set forth above;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

xxi.    Whether the PBM Defendants' acts as alleged above breached ERISA's prohibited transaction rules;

xxii.    Whether the PBM Defendants breached ERISA § 702;

xxiii.    Whether the Manufacturer Defendants knowingly participated in and/or knew or had constructive knowledge of violations of ERISA, including breaches of fiduciary duty or prohibited transactions;

xxiv.    Whether the ERISA Class is entitled to restitution, surcharge, an injunction, and/or other appropriate equitable relief;

xxv.    Whether Defendants violated the common law standards that exist in each state and nationwide;

xxvi.    Whether Defendants have been unjustly enriched at the expense of Plaintiffs and the Classes;

xxvii.    Whether Plaintiffs and the Classes are entitled to compensatory damages and, if so, the nature of such damages;

xxviii.    Whether Plaintiffs and the Classes are entitled to exemplary or punitive damages and, if so, the nature of such damages; and

xxix.    Whether Plaintiffs and the Classes are entitled to injunctive or equitable relief and, if so, the nature of that relief.

194.    A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted in this Complaint is more efficient and manageable for at least the following reasons:

a.    The liability claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1     b.      Absent a Class, the Class Members will continue to suffer damage

2     and Defendants' unlawful conduct will continue without remedy while

3     Defendants profit from and enjoy their ill-gotten gains;

4     c.      Given the size of individual Class Members' claims, few, if any,

5     Class Members could afford to or would seek legal redress individually for the

6     wrongs Defendants committed against them, and absent Class Members have no

7     substantial interest in individually controlling the prosecution of individual

8     actions;

9     d.      When the liability of Defendants has been adjudicated, claims of

10    all Class Members can be administered efficiently and/or determined uniformly

11    by the Court; and

12    e.      This action presents no difficulty that would impede its

13    management by the Court as a class action, which is the best available means by

14    which Plaintiff and members of the Classes can seek redress for the harm caused

15    to them by Defendant.

16    195.    This action is also maintainable as a class action under Federal Rule of Civil

17    Procedure 23(b)(2) because Defendants have acted, or refused to act, on grounds generally

18    applicable to the Classes, thereby making appropriate final injunctive relief respecting the

19    Classes as a whole.

20    196.    With respect to Federal Rule of Civil Procedure 23(b)(1)(B), the prosecution of

21    separate actions by each plaintiff in the Classes would create a risk of adjudications with respect

22    to individual members of each Class which would, as a practical matter, be dispositive of the

23    interests of the other members not parties to the actions, or substantially impair or impede their

24    ability to protect their interests.

25

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 67

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

197.    Finally, Class action status is also warranted under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants.

## VIII.   CLAIMS FOR RELIEF

### COUNT ONE — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, *ET SEQ.*

(By Plaintiffs on Behalf of All Members of the Classes, Against Defendants CVS Health, Roche, Johnson & Johnson, Bayer, and Abbott)

198.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

199.    Plaintiffs bring this Count on behalf of themselves and the Classes against Defendants CVS Health, Roche, Johnson & Johnson, Bayer, and Abbott (inclusively, for purposes of this Count, the "CVS Health RICO Defendants").

200.    At all relevant times, the CVS Health RICO Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

201.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

202.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

203.    As explained in detail below, Defendant CVS Health sought to infiltrate the business arrangement established between four manufacturers of test strips—Roche, Johnson & Johnson, Bayer, and Abbott—health plans, and insurance companies across the country through a fraudulent scheme designed to secure greater profits and market share, increase the cost of test

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 68

strips, secure a favorable formulary position for Roche, Johnson & Johnson, Bayer, and Abbott's test strips, and extract millions of dollars of revenue from Plaintiffs and the Classes. As explained in detail below, the CVS Health RICO Defendants' years-long misconduct violated sections 1962(c) and (d).

**A.    Description of the CVS Health RICO Enterprise.**

204.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

205.    For years, CVS Health and other pharmacy benefits managers played a small but meaningful role in the prescription product and insurance business: providing administrative services on behalf of health plans that offer prescription benefits and negotiating with manufacturers on their behalf.

206.    In the past decade, however, CVS Health and other PBMs began to exert influence in their role as insurance-industry middle-men to dictate the success or failure of certain drugs and other medical products in the marketplace by offering to include or threatening to exclude certain products from some or all of their formularies and, in the process, extracting hundreds of millions of dollars in the form of "discounts" or "rebate" payments from manufacturers in exchange.

207.    Negotiations between PBMs and manufacturers regarding those discounts, however, take place in complex, closed-door meetings, during which PBMs sell access to their formularies in exchange for large rebates or discounts, a substantial portion of which they pocket as pure profit.

208.    In order to facilitate the payment of "rebates" to PBMs, and ensure their position on certain formularies without impacting their bottom line, test strip manufacturers, including the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 69

Manufacturer Defendants, participate in a scheme with CVS Health, and other PBMs, to increase the list price of their test strips instead of competing on cost with other test strip manufacturers.

209. This scheme to increase the profits of PBMs through artificially increasing the list price of test strips benefits everyone in the industry's supply chain except Plaintiffs and the Classes, who are left paying fraudulently obtained, exorbitant, and ever-increasing prices for their test strips.

210. At all relevant times, each of the Manufacturer Defendants and CVS Health constitute a two-entity associated-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4), through which the members of that enterprise conducted a pattern of racketeering activity described below.

211. Alternatively, each of the CVS Health RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the CVS Health RICO Defendants conducted a pattern of racketeering activity. The CVS Health RICO Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the CVS Health RICO Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "CVS Health RICO Enterprise."

212. At all relevant times, the CVS Health RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the CVS Health RICO Defendants' profit-making scheme.

213. For all of the above alternatives, the association-in-fact CVS Health RICO Enterprise consisted of the following entities and individuals: (a) CVS Health, its subsidiaries, executives, employees, and agents; (b) Roche, its subsidiaries, executives, employees, and agents; (c) Johnson & Johnson, its subsidiaries, executives, employees, and agents; (d) Bayer, its

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

subsidiaries, executives, employees, and agents; and (e) Abbott, its subsidiaries, executives, employees, and agents.

214.    While each of the CVS Health RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the CVS Health RICO Enterprise's affairs, at all relevant times, the CVS Health RICO Enterprise: (a) had an existence separate and distinct from each CVS Health RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the CVS Health RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CVS Health RICO Defendants, along with other individuals and entities, including unknown third parties.

215.    The CVS Health RICO Defendants and their co-conspirators, through their illegal CVS Health RICO Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CVS Health RICO Defendants and the other entities and individuals associated-in-fact with the CVS Health RICO Enterprise's activities by selling test strips at an inflated and artificial price ("the CVS Health RICO Scheme").

216.    CVS Health orchestrated the CVS Health RICO Scheme, whereby CVS Health, as a PBM, leveraged its dominant position in the insurance market to demand that test strip manufacturers, like Roche, Johnson & Johnson, Bayer, and Abbott, pay substantial kickbacks in order to have their products included or be given priority on CVS Health's formularies.

217.    The Manufacturer Defendants facilitated the CVS Health RICO Scheme by agreeing to provide ever-larger "discounts" or "rebates" to CVS Health in order to gain or maintain access to its formularies and funding those discounts by artificially increasing the list price of their test strips.

218.    In furtherance of the scheme, the CVS Health RICO Defendants each affirmatively misrepresented or concealed the existence of the inflated and fraudulent nature of these list price increases as well as the existence, amount, and purpose of the discounts given to CVS Health to Plaintiffs, the Classes, consumers, health care payers, and the general public.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 71

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Specifically, the CVS Health RICO Defendants claimed that the rebates paid to CVS Health were for the purpose of lowering costs when, in fact, they were *quid pro quo* payments for formulary access that had the opposite effect for Plaintiffs and the members of the Classes.

**B.     The CVS Health RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

219.    Each CVS Health RICO Defendant benefited financially from the CVS Health RICO Enterprise. CVS Health received direct rebate payments from the Manufacturer Defendants, a large portion of which it pocketed as pure profit, as well as other fees.

220.    In exchange, one or more of the Manufacturer Defendants' products received a favorable position on one, or a number of CVS Health's formularies, translating into higher sales and profits for the Manufacturer Defendants. And because the Manufacturer Defendants financed the payment of rebates by inflating the list prices for their test strips, they maintained and, in some cases, increased their profit margins.

221.    At all relevant times, the CVS Health RICO Enterprise: (a) had an existence separate and distinct from each CVS Health RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the CVS Health RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the CVS Health RICO Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' test strips were included on CVS Health's formularies and increasing CVS Health's profits by fraudulently and artificially increasing the list price of those test strips at the expense of Plaintiffs and the Classes, and paying rebates from the inflated list price.

222.    The CVS Health RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the CVS Health RICO Defendants and the other entities and individuals

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

associated-in-fact with the Enterprise's activities through the illegal scheme to sell test strips at an inflated and artificial price.

223.    The CVS Health RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of test strips throughout the country, and the receipt of monies from the sale of the same.

224.    Within the CVS Health RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The CVS Health RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding test strips, their pricing, and placement or position on CVS Health's formularies and for furthering the CVS Health RICO Scheme.

225.    Each participant in the CVS Health RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the CVS Health RICO Enterprise, the CVS Health RICO Defendants functioned as a continuing unit with the purpose of furthering the CVS Health RICO Scheme.

226.    The CVS Health RICO Defendants participated in the operation and management of the CVS Health RICO Enterprise by directing its affairs, as described herein. While the CVS Health RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

227.    The CVS Health RICO Defendants exerted substantial control over the CVS Health RICO Enterprise, and participated in the affairs of the enterprise by: (a) negotiating and/or offering discounts for test strips; (b) misrepresenting and/or concealing the existence, amount, or purpose of the discounts negotiated for test strips; (c) misrepresenting and/or

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

concealing the effect that the negotiated discounts had on the price of test strips for the end payer; (d) negotiating and/or setting the list price for test strips; (e) misrepresenting and/or concealing the true cost of test strips; (f) publishing, reproducing, and/or distributing documents containing the list price for test strips; (g) negotiating and/or offering preferred formulary placement for test strips; (h) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the enterprise and its effect on the pricing of test strips; (i) otherwise misrepresenting and/or concealing the inflated and fraudulent nature of the pricing of test strips; (j) collecting discounts, revenues, and/or profits from the sale of test strips; and (k) ensuring that the other CVS Health RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

228.    Without each CVS Health RICO Defendant's willing participation, the CVS Health RICO Scheme and common course of conduct would not have been successful.

229.    The CVS Health RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because such information lies in the Defendants' and others' hands.

**C.    Predicate Acts: Mail and Wire Fraud.**

230.    To carry out, or attempt to carry out, the scheme to defraud, the CVS Health RICO Defendants, each of whom is a person associated-in-fact with the CVS Health RICO Enterprise, did knowingly conduct or participate, directly or indirectly, in the affairs of the CVS Health RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

231.    Specifically, the CVS Health RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 74

232.    The multiple acts of racketeering activity which the CVS Health RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the CVS Health RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the CVS Health RICO Enterprise. The CVS Health RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailings and wires in interstate or foreign commerce.

233.    The CVS Health RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

234.    In devising and executing the illegal scheme, the CVS Health RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Classes or to obtain money from Plaintiffs and the Classes by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, the CVS Health RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

235.    The CVS Health RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

(a)    Mail Fraud: The CVS Health RICO Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to design, manufacture, market, price, and/or sell test strips by means of false pretenses, misrepresentations, promises, and omissions.

(b)    Wire Fraud: The CVS Health RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 75

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

236.    The CVS Health RICO Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of marketing or other materials indicating, setting, or negotiating the price of test strips; (b) the transmission of marketing or other materials indicating or advertising that any of the CVS Health RICO Defendants reduce the price of test strips; (c) written, telephone, or electronic communications regarding and/or negotiating the price of test strips; (d) written, telephone, or electronic communications regarding and/or negotiating discounts and/or rebates for test strips; (e) written, telephone, or electronic communications regarding the existence, amount, or purpose of discounts and/or rebates for test strips; (f) the transmission and/or distribution of test strips through the mails; and (g) the use of the mails or wires to bill for or collect discounts, revenues, and/or profits from the sale of such test strips.

237.    The CVS Health RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

238.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the cost of test strips and fraudulently extract hundreds of millions of dollars of revenue from Plaintiffs and the Classes.

239.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of predicate acts of mail and/or wire fraud. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

240.    The CVS Health RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the CVS Health RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 76

and individuals not named as defendants in this Complaint, have participated as co-conspirators with the CVS Health RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

241.    The CVS Health RICO Defendants aided and abetted others in the violations of the above laws.

242.    To achieve their common goals, the CVS Health RICO Defendants hid from Plaintiffs, the Classes, insurers, health plans, and the general public the true net price of test strips, the inflated and fraudulent nature of the list price of test strips, the relationship between the CVS Health RICO Defendants and their impact upon the price of test strips, and the existence, amount, and purpose of rebates and discounts given for test strips, and the portion of the rebates and discounts pocketed by CVS Health.

243.    The CVS Health RICO Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the CVS Health RICO Defendants and their co-conspirators had to agree to conceal their fraudulent negotiations and pricing tactics.

244.    The CVS Health RICO Defendants knew, and intended that, Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them and incur increased costs as a result. Indeed, if Plaintiffs and the Classes did not make inflated payments for test strips, the CVS Health RICO scheme could not succeed.

245.    As described herein, the CVS Health RICO Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiffs and the Classes based on their misrepresentations and omissions,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

while providing test strips that were worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

246.    During the CVS Health RICO Defendants' determination of discounts and/or rebates for test strips, the true purpose of the discounts, the true cost of test strips, and the inflated and fraudulent nature of their pricing was revealed to each of the CVS Health RICO Defendants. Nevertheless, the CVS Health RICO Defendants continued to disseminate misrepresentations regarding the true cost of test strips as well as the existence, amount, and purpose of the discounts on those products, in furtherance of the scheme.

247.    By reason of, and as a result of the conduct of the CVS Health RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiffs and the Classes have been injured in their business and/or property in multiple ways, including but not limited to paying excessive and inflated prices for test strips.

248.    The CVS Health RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Classes who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**COUNT TWO — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, ET SEQ.**

(By Plaintiffs on Behalf of All Members of the Classes, Against Defendants Express Scripts, Roche, Johnson & Johnson, Bayer, and Abbott)

249.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

250.    Plaintiffs bring this Count on behalf of themselves and the Classes against Defendants Express Scripts, Roche, Johnson & Johnson, Bayer, and Abbott (inclusively, for purposes of this Count, the "Express Scripts RICO Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 78

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

251.    At all relevant times, the Express Scripts RICO Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

252.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

253.    Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

254.    As explained in detail below, Defendant Express Scripts sought to infiltrate the business arrangement established between four manufacturers of test strips—Roche, Johnson & Johnson, Bayer, and Abbott—health plans, and insurance companies across the country through a fraudulent scheme designed to secure greater profits and market share, increase the cost of test strips, secure a favorable formulary position for Roche, Johnson & Johnson, Bayer, and Abbott's test strips, and extract millions of dollars of revenue from Plaintiffs and the Classes. As explained in detail below, the Express Scripts RICO Defendants' years-long misconduct violated sections 1962(c) and (d).

A.    **Description of the Express Scripts RICO Enterprise.**

255.    RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

256.    For years, Express Scripts and other pharmacy benefits managers played a small but meaningful role in the prescription product and insurance business: providing administrative

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

services on behalf of health plans that offer prescription benefits and negotiating with manufacturers on their behalf.

257.    In the past decade, however, Express Scripts and other PBMs began to exert influence in their role as insurance-industry middle-men to dictate the success or failure of certain drugs and other medical products in the marketplace by offering to include or threatening to exclude certain medications from some or all of their formularies and, in the process, extracting hundreds of millions of dollars in the form of "discounts" or "rebate" payments from manufacturers in exchange.

258.    Negotiations between PBMs and manufacturers regarding those discounts, however, take place in complex, closed-door meetings, during which PBMs sell access to their formularies in exchange for large rebates or discounts, a substantial portion of which they pocket as pure profit.

259.    In order to facilitate the payment of 'rebates' to PBMs, and ensure their position on certain formularies without impacting their bottom line, diabetes test strip manufacturers, including the Manufacturer Defendants, participate in a scheme with Express Scripts, and other PBMs, to increase the list price of their test strips instead of competing on cost with other diabetes test strip manufacturers.

260.    This scheme to increase the profits of PBMs through artificially increasing the list price of test strips benefits everyone in the industry's supply chain except Plaintiffs and the Classes, who are left paying fraudulently obtained, exorbitant, and ever-increasing prices for their test strips.

261.    At all relevant times, each of the Manufacturer Defendants and Express Scripts constitute a two-entity associated-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4), through which the members of that enterprise conducted a pattern of racketeering activity described below.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 80

262.    Alternatively, each of the Express Scripts RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the Express Scripts RICO Defendants conducted a pattern of racketeering activity. The Express Scripts RICO Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the Express Scripts RICO Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "Express Scripts RICO Enterprise."

263.    At all relevant times, the Express Scripts RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the Express Scripts RICO Defendants' profit-making scheme.

264.    For all of the above alternatives, the association-in-fact Express Scripts RICO Enterprise consisted of the following entities and individuals: (a) Express Scripts, its subsidiaries, executives, employees, and agents; (b) Roche, its subsidiaries, executives, employees, and agents; (c) Johnson & Johnson, its subsidiaries, executives, employees, and agents; (d) Bayer, its subsidiaries, executives, employees, and agents; and (e) Abbott, its subsidiaries, executives, employees, and agents.

265.    While each of the Express Scripts RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the Express Scripts RICO Enterprise's affairs, at all relevant times, the Express Scripts RICO Enterprise: (a) had an existence separate and distinct from each Express Scripts RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the Express Scripts RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the Express Scripts RICO Defendants, along with other individuals and entities, including unknown third parties.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

266.    The Express Scripts RICO Defendants and their co-conspirators, through their illegal Express Scripts RICO Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the Express Scripts RICO Defendants and the other entities and individuals associated-in-fact with the Express Scripts RICO Enterprise's activities by selling test strips at an inflated and artificial price ("the Express Scripts RICO Scheme").

267.    Express Scripts orchestrated the Express Scripts RICO Scheme, whereby Express Scripts, as a PBM, leveraged its dominant position in the insurance market to demand that diabetes test strip manufacturers, like Roche, Johnson & Johnson, Bayer, and Abbott, pay substantial kickbacks in order to have their products included or be given priority on Express Scripts' formularies.

268.    The Manufacturer Defendants facilitated the Express Scripts RICO Scheme by agreeing to provide ever-larger "discounts" or "rebates" to Express Scripts in order to gain or maintain access to its formularies and funding those discounts by artificially increasing the list price of their test strip products.

269.    In furtherance of the scheme, the Express Scripts RICO Defendants each affirmatively misrepresented or concealed the existence of the inflated and fraudulent nature of these list price increases as well as the existence, amount, and purpose of the discounts given to Express Scripts to Plaintiffs, the Classes, consumers, health care payers, and the general public. Specifically, the Express Scripts RICO Defendants claimed that the rebates paid to Express Scripts were for the purpose of lowering costs when, in fact, they were *quid pro quo* payments for formulary access that had the opposite effect for Plaintiffs and the members of the Classes.

B.    **The Express Scripts RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

270.    Each Express Scripts RICO Defendant benefited financially from the Express Scripts RICO Enterprise. Express Scripts received direct rebate payments from the Manufacturer Defendants, a large portion of which it pocketed as pure profit, as well as other fees.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 82

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

271.    In exchange, one or more of the Manufacturer Defendants' products received a favorable position on one, or a number of Express Scripts' formularies, translating into higher sales and profits for each of these manufacturers. And because the Manufacturer Defendants financed the payment of rebates by inflating the list prices for their test strips, they maintained and, in some cases, increased their profit margins.

272.    At all relevant times, the Express Scripts RICO Enterprise: (a) had an existence separate and distinct from each Express Scripts RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the Express Scripts RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the Express Scripts RICO Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' test strips were included on Express Scripts' formularies and increasing Express Scripts' profits by fraudulently and artificially increasing the list price of those test strip products at the expense of Plaintiffs and the Classes, and paying rebates from the inflated list price.

273.    The Express Scripts RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the Express Scripts RICO Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell test strips at an inflated and artificial price.

274.    The Express Scripts RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of test strips throughout the country, and the receipt of monies from the sale of the same.

275.    Within the Express Scripts RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Express Scripts

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 83

RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding test strips, their pricing, and placement or position on Express Scripts' formularies and for furthering the Express Scripts RICO Scheme.

276.    Each participant in the Express Scripts RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the Express Scripts RICO Enterprise, the Express Scripts RICO Defendants functioned as a continuing unit with the purpose of furthering the Express Scripts RICO Scheme.

277.    The Express Scripts RICO Defendants participated in the operation and management of the Express Scripts RICO Enterprise by directing its affairs, as described herein. While the Express Scripts RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

278.    The Express Scripts RICO Defendants exerted substantial control over the Express Scripts RICO Enterprise, and participated in the affairs of the enterprise by: (a) negotiating and/or offering discounts for test strips; (b) misrepresenting and/or concealing the existence, amount, or purpose of the discounts negotiated for test strips; (c) misrepresenting and/or concealing the effect that the negotiated discounts had on the price of test strips for the end payer; (d) negotiating and/or setting the list price for test strips; (e) misrepresenting and/or concealing the true cost of test strips; (f) publishing, reproducing, and/or distributing documents containing the list price for test strips; (g) negotiating and/or offering preferred formulary placement for test strips; (h) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the enterprise and its effect on the pricing of test strips; (i) otherwise misrepresenting and/or concealing the inflated and fraudulent nature of the pricing of test strips; (j) collecting discounts, revenues, and/or profits from the sale of test strips; and (k)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

ensuring that the other Express Scripts RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

279.    Without each Express Scripts RICO Defendant's willing participation, the Express Scripts RICO Scheme and common course of conduct would not have been successful.

280.    The Express Scripts RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because such information lies in the Defendants' and others' hands.

## C.    Predicate Acts: Mail and Wire Fraud.

281.    To carry out, or attempt to carry out, the scheme to defraud, the Express Scripts RICO Defendants, each of whom is a person associated-in-fact with the Express Scripts RICO Enterprise, did knowingly conduct or participate, directly or indirectly, in the affairs of the Express Scripts RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

282.    Specifically, the Express Scripts RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

283.    The multiple acts of racketeering activity which the Express Scripts RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the Express Scripts RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the Express Scripts RICO Enterprise. The Express Scripts RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailings and wires in interstate or foreign commerce.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

284.    The Express Scripts RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

285.    In devising and executing the illegal scheme, the Express Scripts RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Classes or to obtain money from Plaintiffs and the Classes by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, the Express Scripts RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

286.    The Express Scripts RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

(a)    Mail Fraud: The Express Scripts RICO Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the unlawful scheme to design, manufacture, market, price, and/or sell test strips by means of false pretenses, misrepresentations, promises, and omissions.

(b)    Wire Fraud: The Express Scripts RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

287.    The Express Scripts RICO Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of marketing or other materials indicating, setting, or negotiating the price of test strips; (b) the transmission of marketing or other materials indicating or advertising that any of the Express Scripts RICO Defendants reduce the price of test strips; (c) written, telephone, or electronic communications regarding and/or negotiating the price of test strips; (d) written, telephone, or electronic communications regarding and/or negotiating discounts and/or rebates for test strips; (e) written, telephone, or electronic communications

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

regarding the existence, amount, or purpose of discounts and/or rebates for test strips; (f) the transmission and/or distribution of test strips through the mails; and (g) the use of the mails or wires to bill for or collect discounts, revenues, and/or profits from the sale of such test strips.

288.    The Express Scripts RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

289.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the cost of test strips and fraudulently extract hundreds of millions of dollars of revenue from Plaintiffs and the Classes.

290.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of predicate acts of mail and/or wire fraud. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

291.    The Express Scripts RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the Express Scripts RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the Express Scripts RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

292.    The Express Scripts RICO Defendants aided and abetted others in the violations of the above laws.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 87

293.    To achieve their common goals, the Express Scripts RICO Defendants hid from Plaintiffs, the Classes, insurers, health plans, and the general public the true net price of test strips, the inflated and fraudulent nature of the list price of test strips, the relationship between the Express Scripts RICO Defendants and their impact upon the price of test strips, and the existence, amount, and purpose of rebates and discounts given for test strips, and the portion of the rebates and discounts pocketed by Express Scripts.

294.    The Express Scripts RICO Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the Express Scripts RICO Defendants and their co-conspirators had to agree to conceal their fraudulent negotiations and pricing tactics.

295.    The Express Scripts RICO Defendants knew, and intended that, Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them and incur increased costs as a result. Indeed, if Plaintiffs and the Classes did not make inflated payments for test strips, the Express Scripts RICO scheme could not succeed.

296.    As described herein, the Express Scripts RICO Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiffs and the Classes based on their misrepresentations and omissions, while providing test strips that were worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

297.    During the Express Scripts RICO Defendants' determination of discounts and/or rebates for test strips, the true purpose of the discounts, the true cost of test strips, and the inflated and fraudulent nature of their pricing was revealed to each of the Express Scripts RICO Defendants. Nevertheless, the Express Scripts RICO Defendants continued to disseminate

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

misrepresentations regarding the true cost of test strips as well as the existence, amount, and purpose of the discounts on those products, in furtherance of the scheme.

298.     By reason of, and as a result of the conduct of the Express Scripts RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiffs and the Classes have been injured in their business and/or property in multiple ways, including but not limited to paying excessive and inflated prices for test strips.

299.     The Express Scripts RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Classes who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### COUNT THREE — VIOLATIONS OF 18 U.S.C. § 1962(C)-(D) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1961, *ET SEQ.*

(By Plaintiffs on Behalf of All Members of the Classes, Against Defendants OptumRx, Roche, Johnson & Johnson, Bayer, and Abbott)

300.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

301.     Plaintiffs bring this Count on behalf of themselves and the Classes against Defendants OptumRx, Roche, Johnson & Johnson, Bayer, and Abbott (inclusively, for purposes of this Count, the "OptumRx RICO Defendants").

302.     At all relevant times, the OptumRx RICO Defendants have been "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

303.     Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 89

304.     Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

305.     As explained in detail below, Defendant OptumRx sought to infiltrate the business arrangement established between four manufacturers of test strips—Roche, Johnson & Johnson, Bayer, and Abbott—health plans, and insurance companies across the country through a fraudulent scheme designed to secure greater profits and market share, increase the cost of test strips, secure a favorable formulary position for Roche, Johnson & Johnson, Bayer, and Abbott's test strips, and extract millions of dollars of revenue from Plaintiffs and the Classes. As explained in detail below, the OptumRx RICO Defendants' years-long misconduct violated sections 1962(c) and (d).

## A.     Description of the OptumRx RICO Enterprise.

306.     RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise requires three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose.

307.     For years, OptumRx and other pharmacy benefits managers played a small but meaningful role in the prescription product and insurance business: providing administrative services on behalf of health plans that offer prescription benefits and negotiating with manufacturers on their behalf.

308.     In the past decade, however, OptumRx and other PBMs began to exert influence in their role as insurance-industry middle-men to dictate the success or failure of certain drugs and other medical products in the marketplace by offering to include or threatening to exclude certain medications from some or all of their formularies and, in the process, extracting hundreds of millions of dollars in the form of "discounts" or "rebate" payments from manufacturers in exchange.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 90

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

309.    Negotiations between PBMs and manufacturers regarding those discounts, however, take place in complex, closed-door meetings, during which PBMs sell access to their formularies in exchange for large rebates or discounts, a substantial portion of which they pocket as pure profit.

310.    In order to facilitate the payment of 'rebates' to PBMs, and ensure their position on certain formularies without impacting their bottom line, diabetes test strip manufacturers, including the Manufacturer Defendants, participated in a scheme with OptumRx, and other PBMs, to increase the list price of their test strips instead of competing on cost with other diabetes test strip manufacturers.

311.    This scheme to increase the profits of PBMs through artificially increasing the list price of test strips benefits everyone in the industry's supply chain except Plaintiffs and the Classes, who are left paying fraudulently obtained, exorbitant, and ever-increasing prices for their test strips.

312.    At all relevant times, each of the Manufacturer Defendants and OptumRx constitute a two-entity associated-in-fact RICO enterprise within the meaning of 18 U.S.C. § 1961(4), through which the members of that enterprise conducted a pattern of racketeering activity described below.

313.    Alternatively, each of the OptumRx RICO Defendants constitutes a single legal entity "enterprise" within the meaning of 18 U.S.C. § 1961(4), through which the OptumRx RICO Defendants conducted a pattern of racketeering activity. The OptumRx RICO Defendants' separate legal statuses facilitated the fraudulent scheme and provided a hoped-for shield from liability for the OptumRx RICO Defendants and their co-conspirators. The enterprises, alleged in this and the previous paragraph, are referred to collectively as the "OptumRx RICO Enterprise."

314.    At all relevant times, the OptumRx RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities,

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

as well as individuals and legal entities associated-in-fact for the common purpose of engaging in the OptumRx RICO Defendants' profit-making scheme.

315.    For all of the above alternatives, the OptumRx RICO Defendants include the following entities and individuals: (a) OptumRx, its subsidiaries, executives, employees, and agents; (b) Roche, its subsidiaries, executives, employees, and agents; (c) Johnson & Johnson, its subsidiaries, executives, employees, and agents; (d) Bayer, its subsidiaries, executives, employees, and agents; and (e) Abbott, its subsidiaries, executives, employees, and agents.

316.    While each of the OptumRx RICO Defendants acquired, maintained control of, were associated with, and conducted or participated in the conduct of the OptumRx RICO Enterprise's affairs, at all relevant times, the OptumRx RICO Enterprise: (a) had an existence separate and distinct from each OptumRx RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the OptumRx RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the OptumRx RICO Defendants, along with other individuals and entities, including unknown third parties.

317.    The OptumRx RICO Defendants and their co-conspirators, through their illegal OptumRx RICO Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the OptumRx RICO Defendants and the other entities and individuals associated-in-fact with the OptumRx RICO Enterprise's activities by selling test strips at an inflated and artificial price ("the OptumRx RICO Scheme").

318.    OptumRx orchestrated the OptumRx RICO Scheme, whereby OptumRx, as a PBM, leveraged its dominant position in the insurance market to demand that diabetes test strip manufacturers, like Roche, Johnson & Johnson, Bayer, and Abbott, pay substantial kickbacks in order to have their products included or be given priority on OptumRx's formularies.

319.    The Manufacturer Defendants facilitated the OptumRx RICO Scheme by agreeing to provide ever-larger "discounts" or "rebates" to OptumRx in order to gain or maintain access to

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

its formularies and funding those discounts by artificially increasing the list price of their test strip products.

320.    In furtherance of the scheme, the OptumRx RICO Defendants each affirmatively misrepresented or concealed the existence of the inflated and fraudulent nature of these list price increases as well as the existence, amount, and purpose of the discounts given to OptumRx to Plaintiffs, the Classes, consumers, health care payers, and the general public. Specifically, the OptumRx RICO Defendants claimed that the rebates paid to OptumRx were for the purpose of lowering costs when, in fact, they were *quid pro quo* payments for formulary access that had the opposite effect for Plaintiffs and the members of the Classes.

**B.    The OptumRx RICO Enterprise Sought to Fraudulently Increase Defendants' Profits and Revenues.**

321.    Each OptumRx RICO Defendant benefited financially from the OptumRx RICO Enterprise. OptumRx received direct rebate payments from the Manufacturer Defendants, a large portion of which it pocketed as pure profit, as well as other fees.

322.    In exchange, one or more of the Manufacturer Defendants' products received a favorable position on one, or a number of OptumRx's formularies, translating into higher sales and profits for each of these manufacturers. And because the Manufacturer Defendants financed the payment of rebates by inflating the list prices for their test strips, they maintained and, in some cases, increased their profit margins.

323.    At all relevant times, the OptumRx RICO Enterprise: (a) had an existence separate and distinct from each OptumRx RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the OptumRx RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including the OptumRx RICO Defendants, along with other individuals and entities, including unknown third parties that operated an association-in-fact enterprise, which was formed for the purpose of ensuring that one or more of the Manufacturer Defendants' test strips were included on OptumRx's formularies and increasing OptumRx's profits by fraudulently and artificially increasing the list price of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 93

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

those test strip products at the expense of Plaintiffs and the Classes, and paying rebates from the inflated list price.

324.    The OptumRx RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involved a fraudulent scheme to increase revenue for the OptumRx RICO Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell test strips at an inflated and artificial price.

325.    The OptumRx RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement, distribution, and sale of test strips throughout the country, and the receipt of monies from the sale of the same.

326.    Within the OptumRx RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The OptumRx RICO Enterprise used this common communication network for purposes of marketing, pricing, and engaging in negotiations regarding test strips, their pricing, and placement or position on OptumRx's formularies and for furthering the OptumRx RICO Scheme.

327.    Each participant in the OptumRx RICO Enterprise had systematic linkages to each other through corporate ties, contractual relationships, financial ties, and a continuing coordination of activities. Through the OptumRx RICO Enterprise, the OptumRx RICO Defendants functioned as a continuing unit with the purpose of furthering the OptumRx RICO Scheme.

328.    The OptumRx RICO Defendants participated in the operation and management of the OptumRx RICO Enterprise by directing its affairs, as described herein. While the OptumRx RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

329.     The OptumRx RICO Defendants exerted substantial control over the OptumRx RICO Enterprise, and participated in the affairs of the enterprise by: (a) negotiating and/or offering discounts for test strips; (b) misrepresenting and/or concealing the existence, amount, or purpose of the discounts negotiated for test strips; (c) misrepresenting and/or concealing the effect that the negotiated discounts had on the price of test strips for the end payer; (d) negotiating and/or setting the list price for test strips; (e) misrepresenting and/or concealing the true cost of test strips; (f) publishing, reproducing, and/or distributing documents containing the list price for test strips; (g) negotiating and/or offering preferred formulary placement for test strips; (h) misrepresenting and/or concealing the true nature of the relationship and agreements between the members of the enterprise and its effect on the pricing of test strips; (i) otherwise misrepresenting and/or concealing the inflated and fraudulent nature of the pricing of test strips; (j) collecting discounts, revenues, and/or profits from the sale of test strips; and (k) ensuring that the other OptumRx RICO Defendants and unnamed co-conspirators complied with and concealed the fraudulent scheme.

330.     Without each OptumRx RICO Defendant's willing participation, the OptumRx RICO Scheme and common course of conduct would not have been successful.

331.     The OptumRx RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiffs cannot fully know at present, because such information lies in the Defendants' and others' hands.

**C.     Predicate Acts: Mail and Wire Fraud.**

332.     To carry out, or attempt to carry out, the scheme to defraud, the OptumRx RICO Defendants, each of whom is a person associated-in-fact with the OptumRx RICO Enterprise, did knowingly conduct or participate, directly or indirectly, in the affairs of the OptumRx RICO Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1),

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1961(5) and 1962(c), and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

333. Specifically, the OptumRx RICO Defendants have committed, conspired to commit, and/or aided and abetted in the commission of, at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C. §§ 1341 and 1343), within the past ten years.

334. The multiple acts of racketeering activity which the OptumRx RICO Defendants committed, or aided or abetted in the commission of, were related to each other, posed a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was made possible by the OptumRx RICO Defendants' regular use of the facilities, services, distribution channels, and employees of the OptumRx RICO Enterprise. The OptumRx RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit mailings and wires in interstate or foreign commerce.

335. The OptumRx RICO Defendants used, directed the use of, and/or caused to be used, thousands of interstate mail and wire communications in service of their scheme through virtually uniform misrepresentations, concealments, and material omissions.

336. In devising and executing the illegal scheme, the OptumRx RICO Defendants devised and knowingly carried out a material scheme and/or artifice to defraud Plaintiffs and the Classes or to obtain money from Plaintiffs and the Classes by means of materially false or fraudulent pretenses, representations, promises, or omissions of material facts. For the purpose of executing the illegal scheme, the OptumRx RICO Defendants committed these racketeering acts, which number in the thousands, intentionally and knowingly with the specific intent to advance the illegal scheme.

337. The OptumRx RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1)) include, but are not limited to:

(a) <u>Mail Fraud</u>: The OptumRx RICO Defendants violated 18 U.S.C. § 1341 by sending or receiving, or by causing to be sent and/or received, materials via U.S. mail or commercial interstate carriers for the purpose of executing the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 96

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

unlawful scheme to design, manufacture, market, price, and/or sell test strips by means of false pretenses, misrepresentations, promises, and omissions.

(b)    Wire Fraud: The OptumRx RICO Defendants violated 18 U.S.C. § 1343 by transmitting and/or receiving, or by causing to be transmitted and/or received, materials by wire for the purpose of executing the unlawful scheme to defraud and obtain money on false pretenses, misrepresentations, promises, and omissions.

338.    The OptumRx RICO Defendants' use of the mails and wires include, but are not limited to: (a) the transmission of marketing or other materials indicating, setting, or negotiating the price of test strips; (b) the transmission of marketing or other materials indicating or advertising that any of the OptumRx RICO Defendants reduce the price of test strips; (c) written, telephone, or electronic communications regarding and/or negotiating the price of test strips; (d) written, telephone, or electronic communications regarding and/or negotiating discounts and/or rebates for test strips; (e) written, telephone, or electronic communications regarding the existence, amount, or purpose of discounts and/or rebates for test strips; (f) the transmission and/or distribution of test strips through the mails; and (g) the use of the mails or wires to bill for or collect discounts, revenues, and/or profits from the sale of such test strips.

339.    The OptumRx RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships, and other third-party entities in furtherance of the scheme.

340.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct designed to increase the cost of test strips and fraudulently extract hundreds of millions of dollars of revenue from Plaintiffs and the Classes.

341.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of predicate acts of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 97

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

mail and/or wire fraud. They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described above.

342.    The OptumRx RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the OptumRx RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms, and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the OptumRx RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

343.    The OptumRx RICO Defendants aided and abetted others in the violations of the above laws.

344.    To achieve their common goals, the OptumRx RICO Defendants hid from Plaintiffs, the Classes, insurers, health plans, and the general public the true net price of test strips, the inflated and fraudulent nature of the list price of test strips, the relationship between the OptumRx RICO Defendants and their impact upon the price of test strips, and the existence, amount, and purpose of rebates and discounts given for test strips, and the portion of the rebates and discounts pocketed by OptumRx.

345.    The OptumRx RICO Defendants and each member of the conspiracy, with knowledge and intent, agreed to the overall objectives of the conspiracy and participated in the common course of conduct. Indeed, for the conspiracy to succeed, each of the OptumRx RICO Defendants and their co-conspirators had to agree to conceal their fraudulent negotiations and pricing tactics.

346.    The OptumRx RICO Defendants knew, and intended that, Plaintiffs and Class members would rely on the material misrepresentations and omissions made by them and incur

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 98

increased costs as a result. Indeed, if Plaintiffs and the Classes did not make inflated payments for test strips, the OptumRx RICO Scheme could not succeed.

347.    As described herein, the OptumRx RICO Defendants engaged in a pattern of related and continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of obtaining significant monies and revenues from Plaintiffs and the Classes based on their misrepresentations and omissions, while providing test strips that were worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

348.    During the OptumRx RICO Defendants' determination of discounts and/or rebates for test strips, the true purpose of the discounts, the true cost of test strips, and the inflated and fraudulent nature of their pricing was revealed to each of the OptumRx RICO Defendants. Nevertheless, the OptumRx RICO Defendants continued to disseminate misrepresentations regarding the true cost of test strips as well as the existence, amount, and purpose of the discounts on those products, in furtherance of the scheme.

349.    By reason of, and as a result of the conduct of the OptumRx RICO Defendants, and in particular, their pattern of racketeering activity, Plaintiffs and the Classes have been injured in their business and/or property in multiple ways, including but not limited to paying excessive and inflated prices for test strips.

350.    The OptumRx RICO Defendants' violations of 18 U.S.C. §1962(c) and (d) have directly and proximately caused injuries and damages to Plaintiffs and the Classes who are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT FOUR — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 406(b), 29 U.S.C. § 1106(b)**

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class, Against Defendants CVS Health, Express Scripts, and OptumRx)

351.    The ERISA Plaintiffs incorporate by reference all paragraphs as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

352.    ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a fiduciary shall not (1) deal with plan assets in its own interest or for its own account, (2) act in any transaction involving the plan on behalf of a party whose interests are adverse to participants or beneficiaries, or (3) receive any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

353.    As alleged above, the PBM Defendants are fiduciaries to Plaintiffs' ERISA Plans and those of the ERISA Class members. They violated all three subsections of ERISA § 406(b).

354.    As alleged above, both (i) payments from participants and beneficiaries and (ii) the contracts underpinning the ERISA Class members' ERISA Plans are plan assets under ERISA.

355.    First, by setting their own compensation from test strips prescription payments from participants and beneficiaries, as well as from ERISA Plan contributions, collecting their own compensation from those same sources, and managing pharmacy benefits in their own interest or for their own account, the PBM Defendants violated ERISA § 406(b)(1). Specifically, in setting the amount of and taking undisclosed kickbacks, often in the form of "rebates" or "discounts" (for the purposes of this and the following ERISA counts, "PBM Kickbacks"), the PBM Defendants dealt with Plaintiffs' ERISA Plans and with the ERISA Plans' plan assets in their own interest and received plan assets and consideration for their personal accounts. Further, by inducing the Manufacturer Defendants to inflate list prices for test strips to accommodate the PBM Defendants' demands for kickbacks, the PBM Defendants dealt with Plaintiffs' ERISA

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 100

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plans and the plan assets of those ERISA Plans in their own self-interest, rather than in the interest of ERISA Plan participants and beneficiaries.

356.    Second, by acting on behalf of the Manufacturer Defendants, who also stood to profit from inflated diabetes test strip prices at the expense of the ERISA Plaintiffs and members of the ERISA Class—and thus had interests adverse to the affected participants and beneficiaries—the PBM Defendants engaged in conflicted transactions each time they facilitated, required, or allowed diabetes test strip price inflation and/or the payment of PBM Kickbacks, in violation of ERISA § 406(b)(2). Under this subsection of ERISA § 406(b), plan assets need not be involved—dealing with an ERISA Plan is enough.

357.    Third, the PBM Defendants received consideration for their own personal accounts from other parties—including the Manufacturer Defendants, third parties, and the members of the ERISA Class—that were dealing with ERISA Plans in connection with transactions involving the assets of ERISA Plans.

358.    The PBM Defendants' prohibited transactions described herein not only profited the PBM Defendants, but also injured the ERISA Plaintiffs and members of the ERISA Class, who have suffered losses through the PBM Kickbacks that the PBM Defendants took through these prohibited transactions.

359.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." The ERISA Plaintiffs' § 502(a)(3) claims are on behalf of all participants and beneficiaries of ERISA Plans whose pharmacy benefits are managed and administered by the PBM Defendants, regardless of the type of ERISA Plan it is and whether or not it is underwritten by an insurance contract with a health insurer, to recover the portions of their copayments, coinsurance, and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

deductible amounts paid for test strips at an inflated price due to the PBM Kickbacks described herein.

360.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

a.    an accounting;

b.    a surcharge;

c.    correction of the transactions;

d.    disgorgement of profits;

e.    an equitable lien;

f.    a constructive trust;

g.    restitution;

h.    full disclosure of the foregoing acts and practices;

i.    an injunction against further violations; and/or

j.    any other remedy the Court deems proper.

## COUNT FIVE — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 404, 29 U.S.C. § 1104

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class, Against Defendants CVS Health, Express Scripts, and OptumRx)

361.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

362.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

363.    In leveraging their access to millions of dollars in diabetes test strip purchases through ERISA Plans to which they had access and over whose plan assets they had or exercised control for their own benefit or the benefit of third parties, and to the detriment of participants and beneficiaries, the PBM Defendants have breached their fiduciary duties of loyalty and prudence.

364.    Further, in failing to put the interests of participants and beneficiaries first in managing and administering pharmacy benefits, the PBM Defendants have breached their fiduciary duty of loyalty. And in acting in their own self-interest and in the interest of their own corporate affiliates, the PBM Defendants have violated the "exclusive purpose" standard.

365.    The duty to disclose is part of the duty of loyalty. In concealing and failing to disclose to the ERISA Class the fact or amount of the PBM Kickbacks, the inflation of list prices, or the net price of test strips for which they were being charged, and in concealing and failing to disclose to the ERISA Plaintiffs and the ERISA Class that plan participants were paying inflated amounts for copayments and coinsurance, as well as deductible payments, the PBM Defendants breached this duty. Further, both omissions and misrepresentations are actionable under ERISA's disclosure obligations, and the type that occurred here are not subject to individualized reliance requirements.

366.    Finally, it is never prudent to require or allow excessive compensation in the context of an ERISA-covered plan. In so doing, Defendants violated their duty of prudence.

367.    The ERISA Plaintiffs and the ERISA Class have been damaged and suffered losses in the amount of the PBM Kickbacks the PBM Defendants took.

368.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

369.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

      a.    an accounting;

      b.    a surcharge;

      c.    correction of the transactions;

      d.    disgorgement of profits;

      e.    an equitable lien;

      f.    a constructive trust;

      g.    restitution;

      h.    full disclosure of the foregoing acts and practices;

      i.    an injunction against further violations; and/or

      j.    any other remedy the Court deems proper.

## COUNT SIX — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR VIOLATIONS OF ERISA § 702, 29 U.S.C. § 1182

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class, Against CVS Health, Express Scripts, and OptumRx)

370.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

371.    ERISA § 702, 29 U.S.C. § 1182, states in pertinent part:

Prohibiting discrimination against individual participants and beneficiaries based on health status.

(a) In eligibility to enroll.

(1) In general. Subject to paragraph (2), a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual:

      a.    Health status.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 104

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b.  Medical condition (including both physical and mental illnesses).

c.  Claims experience.

d.  Receipt of health care.

e.  Medical history.

f.  Genetic information.

g.  Evidence of insurability (including conditions arising out of acts of domestic violence).

h.  Disability.

(2) No application to benefits or exclusions. To the extent consistent with section 701, paragraph (1) shall not be construed—

(A) to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage, or

(B) to prevent such a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or nature of the benefits or coverage for similarly situated individuals enrolled in the plan or coverage.

(3) Construction. For purposes of paragraph (1), rules for eligibility to enroll under a plan include rules defining any applicable waiting periods for such enrollment.

(b) In premium contributions.

(1) In general. A group health plan, and a health insurance issuer offering health insurance coverage in connection with a group health plan, may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual.

372.  In setting the price for test strips and taking excessive and undisclosed rebate payments, Defendants have required plan participants and beneficiaries who have a protected disability condition and/or medical condition that requires test strips subject to Defendants'

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

artificially inflated prices and undisclosed and excessive PBM Kickbacks to pay greater premiums and contributions for their health plan benefits than those participants and beneficiaries who do not have a protected disability or who do not need prescription test strips subject to Defendants' artificially inflated prices and undisclosed and excessive rebate payments.

373.    Under Defendants' scheme, the ERISA Plaintiffs and members of the ERISA Class who needed prescription test strips subject to Defendants' artificially inflated prices and undisclosed and excessive PBM Kickbacks were required to pay hidden additional and/or higher premiums in order to be able to use their benefits as enrollees, thus making the artificially inflated prices and payment of PBM Kickbacks a condition of continued enrollment under their ERISA Plans. Without paying inflated copayments, coinsurance, or deductible payments, above and beyond the required participant contributions set forth in their plans, the ERISA Plaintiffs and members of the ERISA Class could not obtain covered prescription medications under the ERISA Plans, the effect of which is that they would not be enrolled in the Plans.

374.    The ERISA Plaintiffs and the ERISA Class have been damaged and suffered losses in the amount of the PBM Kickback the PBM Defendants took, which were financed by the inflated costs paid by the ERISA Plaintiffs and the ERISA Class for prescription test strips.

375.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

376.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

  a.    an accounting;

  b.    surcharge;

  c.    correction of the transactions;

  d.    disgorgement of profits;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

e.    an equitable lien;

f.    a constructive trust;

g.    restitution;

h.    full disclosure of the foregoing acts and practices;

i.    an injunction against further violations; and/or

j.    any other remedy the Court deems proper.

## COUNT SEVEN — PURSUANT TO ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) FOR KNOWING PARTICIPATION IN VIOLATIONS OF ERISA

(By the ERISA Plaintiffs on Behalf of all Members of the ERISA Class,
Against Defendants Roche, Johnson & Johnson, Bayer, and Abbott)

377.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

378.    As noted above, fiduciary status is not required for liability under ERISA where non-fiduciaries participate in and/or profit from a fiduciary's breach or prohibited transaction. Accordingly, the ERISA Plaintiffs and the ERISA Class make claims against the Manufacturer Defendants even though they do not have fiduciary status with respect to the ERISA Plans. As non-fiduciaries, they nevertheless must restore unjust profits or fees and are subject to other appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and pursuant to *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000).

379.    The Manufacturer Defendants had actual or constructive knowledge of and participated in and/or profited from the prohibited transactions and fiduciary breaches alleged above by the PBM Defendants, and these non-fiduciaries are liable to disgorge ill-gotten gains and/or plan assets and to provide other appropriate equitable relief, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and *Harris Trust*.

380.    As a direct and proximate result of the fiduciary breaches and prohibited transactions alleged above and the participation therein of the Manufacturer Defendants, the members of the ERISA Class directly or indirectly lost millions of dollars and/or plan assets both participant pharmacy payments and Plan contracts were improperly used to generate profits for

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 107

the PBM Defendants and the Manufacturer Defendants. The PBM Defendants collected and/or paid these amounts to themselves, their affiliates, or third parties from plan assets or generated them through improper leveraging of plan assets and/or their relationships with and access to ERISA Plans. The PBM Defendants' facilitation of profits to the Manufacturer Defendants due to inflated prices for test strips harmed the ERISA Class, and the Manufacturer Defendants are liable to restore their ill-gotten gains to the ERISA Plaintiffs.

381. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to the ERISA Plaintiffs and the ERISA Class, including but not limited to:

        a.      an accounting;

        b.      a surcharge;

        c.      correction of the transactions;

        d.      disgorgement of profits;

        e.      an equitable lien;

        f.      a constructive trust;

        g.      restitution;

        h.      full disclosure of the foregoing acts and practices;

        i.      an injunction against further violations; and/or

        j.      any other remedy the Court deems proper.

## COUNT EIGHT — VIOLATIONS OF ALABAMA DECEPTIVE TRADE PRACTICES ACT (Ala. Code § 8-19-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

382. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

383. Plaintiffs bring this action on themselves all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 108

State of Alabama during the relevant time period (the "Alabama members of the Classes")

against all Defendants (for the purposes of this section "Defendants").

384.    Plaintiffs and the Alabama members of the Classes are "consumers" within the

meaning of Ala. Code § 8-19-3(2).

385.    Plaintiffs, the Alabama members of the Classes, and Defendants are "persons"

within the meaning of Ala. Code § 8-19-3(5).

386.    The test strip products described herein are "goods" within the meaning of Ala.

Code § 8-19-3(3).

387.    The Defendants are and were engaged in "trade or commerce" within the meaning

of Ala. Code § 8-19-3(8) during all relevant periods by, at a minimum, advertising, offering for

sale, and selling the test strip products described herein in Alabama, to Alabama members of the

Classes, and throughout the United States.

388.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA"), Ala. Code § 8-

19-1, *et seq.*, declares several specific actions to be unlawful, including: "(2) Causing confusion

or misunderstanding as to the source sponsorship, approval, or certification of goods or

services," "(5) Representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or

services are of a particular standard, quality, or grade, or that goods are of a particular style or

model, if they are of another," "(11) Making a false or misleading statement of fact concerning

the reasons for, existence of, or amounts of, price reductions," and "(27) Engaging in any other

unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or

commerce." Ala. Code § 8-19-5.

389.    As detailed above, the Defendants engaged in misleading, false and deceptive acts

in violation of the above-noted provisions of the Alabama DTPA by, at a minimum: (1) making

misleading statements regarding the true cost of the price of test strips or causing reasonable

inferences about the cost that had the tendency to mislead consumers, including but not limited

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

390.    The Defendants owed and continue to owe Plaintiffs and the Alabama members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

391.    The Defendants knew or should have known that their conduct was in violation of the Alabama DTPA

392.    Despite knowing the true nature of their products and practices for years, the Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Alabama members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Alabama DTPA.

393.    The Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Alabama members of the Classes, and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Alabama members of the Classes.

394.    Plaintiffs and other Alabama members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products described herein, as set forth above. These material misrepresentations by the Defendants proximately caused Plaintiffs and the Alabama members of the Classes to overpay for the test strip products described herein. Because the Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein before this lawsuit was filed, the statute of limitation for filing claims against the Defendants under the Alabama DTPA did not begin to accrue until the filing of this lawsuit.  The Defendants either concealed or failed to reveal the facts until this filing.

395.    Plaintiffs and the Alabama members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of the Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

396.    The Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, the Defendants' unlawful acts and practices complained of herein affect the public interest.

397.    Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Alabama members of the Classes seek monetary relief against the Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama member of the Classes.

398.    Plaintiffs also seek an order enjoining the Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Ala. Code § 8-19-1, *et seq.*

399.    On or about the date of the filing of this action, certain Plaintiffs sent a letter complying with Ala. Code § 8-19-10(e).  If Defendants fail to remedy their unlawful conduct

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 111

within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Alabama members of the Classes.

**COUNT NINE — VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. § 45.50.471, *ET SEQ.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs and the
Uninsured Plaintiffs, Against All Defendants)

400.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

401.     Plaintiffs bring this action on behalf of themselves all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of Alaska during the relevant period ("the Alaska members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

402.     The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce…." Under the Alaska CPA, unfair competition and unfair or deceptive acts or practices include, but are not limited to, (10) "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," (11) "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services," and (12) "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471.

403.     Defendants violated the Alaska CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 112

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

404. The foregoing violations caused harm to Plaintiffs and the Alaska members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

405. Plaintiffs and the Alaska members of the Classes seek to recover against each Defendant the amount of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each plaintiff, whichever is greater. Alaska Stat. § 45.50.531

406. Plaintiffs additionally request the Court to enjoin each Defendant's unfair, unlawful, and/or deceptive practices. Alaska Stat. § 45.50.535(b)(1).

407. Also, Plaintiffs seek attorneys' fees and any other relief available under the Alaska CPA.

408. Certain Plaintiffs will send letters complying with Alaska Stat. § 45.50.535(b)(1) on or about the date of the filing of this Complaint. This Count is a placeholder only and will be

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 113

formally asserted thirty (30) days after demand letters are sent if Defendants fail to remedy their unlawful conduct.

### COUNT TEN — VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (Ariz. Rev. Stat. § 44-1521, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

409.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

410.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of Arizona during the relevant period ("the Arizona members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

411.    The Defendants, Plaintiffs, and the Arizona members of the Classes are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

412.    The test strip products described herein are "goods" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

413.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

414.    As detailed above, the Defendants employed deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in violation of the Arizona CFA by at a minimum: (1) making misleading statements regarding the true cost of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 114

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

415.    The Defendants owed and continue to owe Plaintiffs and the Arizona members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

416.    The Defendants knew or should have known that their conduct was in violation of the Arizona CFA.

417.    Despite knowing the true nature of their products and practices for years, the Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Arizona members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Arizona CFA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 115

418.     The Defendants' violations present a continuing risk to Plaintiffs and the Arizona members of the Classes as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, the Defendants' unlawful acts and practices complained of herein affect the public interest.

419.     The Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Arizona members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Arizona members of the Classes.

420.     Plaintiffs and Arizona members of the Classes relied upon the Defendants' material misrepresentations and omissions regarding the test strip products described herein, as set forth above. These material misrepresentations by the Defendants proximately caused Plaintiffs and the Arizona members of the Classes to overpay for test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme, as described herein, until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Arizona CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

421.     Plaintiffs and the Arizona members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

422.     Plaintiffs and the Arizona members of the Classes seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and the Arizona members of the Classes also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

423. Plaintiffs and the Arizona members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT ELEVEN — VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT (Ark. Code Ann. § 4-88-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

424. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

425. Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Arkansas during the relevant time period (the "Arkansas members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

426. Plaintiffs, the members of the Arkansas Classes, and Defendants are "persons" within the meaning of Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

427. The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "(1) [k]nowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model," and "(10) [e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(1),(10).

428. The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 117

material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

429.    In the course of their business, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Arkansas DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

430.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

431.    Defendants owed and continue to owe Plaintiffs and the Arkansas members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 118

432.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Arkansas members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Arkansas members of the Classes.

433.    Plaintiffs and other Arkansas members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Arkansas members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Arkansas DTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

434.    Defendants knew or should have known that their conduct was in violation of the Arkansas DTPA.

435.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and other Arkansas members, and continued to engage in unfair and deceptive practices in violation of the Arkansas DTPA.

436.    Plaintiffs and the Arkansas members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

437.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

438.    Plaintiffs and the Arkansas members of the Classes seek monetary relief against Defendants in an amount to be determined at trial.  Plaintiffs and the Arkansas members of the Classes also seek punitive damages because Defendants acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred.

439.    Plaintiffs and the Arkansas members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT TWELVE — VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code §§ 1750, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

440.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

441.    Plaintiffs bring this Count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of California at any relevant time ("California members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

442.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

443.    Defendants' test strip products are "goods" as defined in Cal. Civ. Code § 1761(a).

444.    Plaintiffs and the other California members of the Classes are "consumers" as defined in Cal. Civ. Code § 1761(d).

445.    Plaintiffs, the other California members of the Classes, and Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 120

446.    Defendants' conduct violates at least the following enumerated CLRA provisions:

a.    Cal. Civ. Code § 1770(a)(13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

b.    Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

c.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

447.    As alleged throughout this Complaint, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the CLRA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

448.    Defendants owed and continue to owe Plaintiffs and the California members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

449.    Defendants knew or should have known that their conduct was in violation of the CLRA.

450.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the California members of the Classes, and continued to engage in unfair and deceptive practices in violation of the CLRA.

451.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the California members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the California members of the Classes.

452.    Plaintiffs and other California members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the California members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the CLRA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

453.    Plaintiffs and the California members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

454. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

455. Under Cal. Civ. Code § 1780(a), Plaintiffs and the California members of the Classes seek monetary relief against Defendants in an amount to be determined at trial.

456. Under Cal. Civ. Code § 1780(b), Plaintiffs seek an additional award against Defendants of up to $5,000 for each California member of the Classes who qualifies as a "senior citizen" or "disabled person" under the CLRA. Defendants knew or should have known that their conduct was directed to one or more California members of the Classes who are senior citizens or disabled persons. Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more California members of the Classes who are senior citizens or disabled persons are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

457. Plaintiffs also seek punitive damages against Defendants because they carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the California members of the Classes to potential cruel and unjust hardship as a result. Defendants intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Defendants knew. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

458.     Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

459.     Certain Plaintiffs have sent a letter complying with Cal. Civ. Code § 1780(b) on or about the date of the filing of this Complaint.

## COUNT THIRTEEN — VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

460.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

461.     Plaintiffs bring this Count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of California at any relevant time ("California members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

462.     California Bus. & Prof. Code § 17500 provides:

It is unlawful for any corporation...with intent directly or indirectly to dispose of real or personal property...to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, ... or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

463.     As alleged throughout this Complaint, Defendants caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants to be untrue and misleading to consumers, including Plaintiffs and the other members of the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 124

464.    Defendants' misrepresentations with respect to the design, cost, and efficacy of Defendants' test strip products were material and likely to, and did in fact, deceive reasonable consumers.

465.    Plaintiffs and the California members of the Classes have suffered an injury in fact, as a result of Defendants' unfair, unlawful, and/or deceptive practices, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

466.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

467.    Plaintiffs, individually and on behalf of the other California members of the Classes, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Classes members any money Defendants acquired by their violations of California's False Advertising law, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT FOURTEEN — VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

468.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

469.    Plaintiffs bring this Count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of California at any relevant time ("California members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

470.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

471.    As alleged throughout this Complaint, Defendants engaged in unfair, deceptive, and/or unlawful practices in violation of California's Unfair Competition law by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

472.    Defendants' grossly excessive and unfair test strip pricing violates public policy and is, as such, unlawful within the meaning of California Business and Professions Code § 17200.

473.    California's Senate Joint Resolution No. 29 unequivocally condemns Defendants' course of conduct in marketing and pricing the test strip products. In particular, the California

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Senate and Assembly declared that "unnecessary and unexplained increases in pharmaceutical pricing is a harm to our health care system that will no longer be tolerated. . . ."

474.    California has a strong public policy favoring the fair and reasonable pricing of health care:

a.  Section 1374.21 of the California Health and Safety Code requires that individuals and small business owners be notified if regulators find that the premium for their health care plan is "unreasonable" or "unjustified."

b.  The California Health and Safety Code contains an entire chapter focused on fair pricing policies for hospitals and emergency physicians.  *See* Cal. Health & Safety Code, Division 107, Part 2, Chapter 2.5 "Fair Pricing Policies".

c.  In California Business & Professions Code § 657, the legislature declared that:

(i)    "Health Care should be affordable and accessible to all Californians," and

(ii)   "The public interest dictates that uninsured Californians have access to basic, preventative health care at affordable prices."

d.  Article 6.2 of the California Health and Safety Code provides for state review of rate increases for health care service plan contracts (with some exceptions).  *See* Cal. Health & Safety Code § 1385.02.

475.    The California Unfair Competition Law exhibits a public policy in favor of providing increased protection from unfair practices that harm persons who have a "physical . . . impairment that substantially limits one or more life activities." Cal. Bus. & Prof. Code § 17206.1.  There is no question that people with diabetes are deserving of that protection.

476.    Defendants' unfair, unlawful and/or deceptive activity alleged herein caused Plaintiffs and the California members of the Classes to purchase test strip products at inflated prices. Accordingly, Plaintiffs, and the California members of the Classes have suffered injury in fact including lost money or property as a result of Defendants' misrepresentations and omissions.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 127

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

477.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and California members of the Classes any money Defendants' acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

## COUNT FIFTEEN — VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (Col. Rev. Stat. § 6-1-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

478.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

479.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of Colorado during the relevant period (the "Colorado members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

480.    Plaintiffs and the Colorado members of the Classes purchased the test strip products primarily for personal, family or household purposes, as alleged herein.

481.    Defendants are "person[s]" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Col. Rev. Stat. § 6-1-101, *et seq.*

482.    The Colorado Consumer Protection Act, C.R.S. 6-1-101, *et seq.*, prohibits "deceptive trade practices," which include, but are not limited to, a list of enumerated items, including: "(b) Knowingly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; (c) Knowingly mak[ing] a false representation as to affiliation, connection, or association with or certification by another; . . . (l) Mak[ing] false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions; . . . (u) Fail[ing] to

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 128

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Col. Rev. Stat § 6-1-105.

483.    As detailed above, Defendants engaged deceptive trade practices in violation of the above-noted provisions of the Colorado Consumer Protection Act by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

484.    Defendants knowingly engaged in false, misleading, or deceptive acts or practices through the unlawful conduct alleged herein, in violation of C.R.S. 6-1-105(1)(b), (1)(e), (1)(g), (1)(l), (1)(u), (2), and (3).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

485.    Defendants owed and continue to owe Plaintiffs and the Colorado members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

486.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Colorado members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Colorado CPA.

487.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Colorado members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Colorado members of the Classes.

488.    Plaintiffs and the Colorado members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Colorado members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Colorado CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

489.    Plaintiffs and the Colorado members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

490. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

491. Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs, individually and on behalf of the Colorado members of the Classes, seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff and each Colorado Class member.

492. Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT SIXTEEN — VIOLATIONS OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT (Conn. Gen. Stat. § 42-110A, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

493. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

494. Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Connecticut during the relevant period (the "Connecticut members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

495. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

496. Defendants are "person[s]" within the meaning of Conn. Gen. Stat. § 42-110a(3).

497. Defendants are and were engaged in "trade or commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4) during all relevant periods by, at a minimum, advertising, offering

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

for sale, and selling the test strip products described herein in Connecticut, to Connecticut members of the Classes, and throughout the United States.

498.    Plaintiffs and Connecticut members of the Classes purchased goods or services primarily for personal, family or household purposes as alleged herein.

499.    The Connecticut Consumer Protection Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b.

500.    In the course of their business, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Connecticut UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

501.    Defendants owed and continue to owe Plaintiffs and the Connecticut members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

502.    Defendants knew or should have known that their conduct was in violation of the Connecticut UTPA.

503.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Connecticut members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Connecticut UTPA.

504.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Connecticut members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Connecticut members of the Classes.

505.    Plaintiffs and the Connecticut members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Connecticut members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Connecticut UTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

506.    Plaintiffs and the Connecticut members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 133

507.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

508.    Defendants acted with a reckless indifference to another's rights or otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

509.    Plaintiffs and the Connecticut members of the Classes are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

## COUNT SEVENTEEN — VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT (6 Del. Code § 2513, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

510.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

511.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residing in the State of Delaware (the "Delaware members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

512.    Defendants are "person[s]" within the meaning of 6 Del. Code § 2511(7).

513.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."  6 Del. Code § 2513(a).

514.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Delaware CFA by, at a minimum: (1) making

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 134

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

515. Defendants owed and continue to owe Plaintiffs and the Delaware members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

516. Defendants knew or should have known that their conduct was in violation of the Delaware CFA.

517. Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Delaware members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Delaware CFA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 135

518.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Delaware members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Delaware members of the Classes.

519.    Plaintiffs and the Delaware members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Delaware members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Delaware CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

520.    Plaintiffs and the Delaware members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

521.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

522.    Plaintiffs and the Delaware members of the Classes seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendants' unlawful conduct.  *See, e.g., Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). Plaintiffs and the Delaware members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 136

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

523. Defendants engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

**COUNT EIGHTEEN — VIOLATIONS OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

524. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

525. Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Florida at any relevant time (the "Florida members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

526. Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8) during all relevant periods by, at a minimum, advertising, offering for sale, and selling the test strip products described herein in Florida, to Florida members of the Classes, and throughout the United States.

527. FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

528. As detailed above, in the course of their business, Defendants engaged in unfair, unconscionable and deceptive acts or practices in violation of the above-noted provisions of the FUDTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 137

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

529.    Defendants owed and continue to owe Plaintiffs and the Florida members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

530.    Defendants knew or should have known that their conduct was in violation of the FUTPA.

531.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Florida members of the Classes, and continued to engage in unfair and deceptive practices in violation of the FUTPA.

532.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Florida members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Florida members of the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 138

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

533.     Plaintiffs and the Florida members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Florida members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the FUTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

534.     Plaintiffs and the Florida members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

535.     Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

536.     Plaintiffs and the Florida members of the Classes are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

537.     Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**COUNT NINETEEN — VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (Ga. Code Ann. § 10-1-390, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

538.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

539.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Georgia at any relevant time ("the Georgia members of Classes") against all Defendants (for the purposes of this section, "Defendants").

540.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "(2) Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causing actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another"; "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade … if they are of another," "(9) Advertising goods or services with intent not to sell them as advertised," and "(11) Making false or misleading statements concerning the reasons for, existence of, or amounts of price reductions."

541.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of the above-noted provisions of the Georgia FBPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 140

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

542.    Defendants owed and continue to owe Plaintiffs and the Georgia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the Test strip products described herein.

543.    Defendants knew or should have known that their conduct was in violation of the Georgia FBPA.

544.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the Test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Georgia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Georgia FBPA.

545.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Georgia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Georgia members of the Classes.

546.    Plaintiffs and the Georgia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Georgia members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 141

the statute of limitation for filing claims against Defendants under the Georgia FBPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

547.    Plaintiffs and the Georgia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

548.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

549.    Plaintiffs and the Georgia members of the Classes are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann. § 10-1-399(a).

550.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann. § 10-1-399.

551.    On or about the date of this filing, certain Plaintiffs sent a letter complying with Ga. Code. Ann. § 10-1-399(b). If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiffs and the Georgia members of the Classes are entitled.

## COUNT TWENTY — VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (Ga. Code Ann. § 10-1-370, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

552.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

553.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 142

residents of Georgia at any relevant time ("the Georgia members of Classes") against all Defendants (for the purposes of this section, "Defendants").

554.    Defendants, Plaintiffs, and the Georgia members of the Classes are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

555.    The Georgia UDTPA prohibits "deceptive trade practices," which include "(2) Caus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Caus[ing] [a] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;" "(5) Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(11) Mak[ing] false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; [and] (12) Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

556.    As detailed above, Defendants engaged in deceptive trade practices in violation of the above-noted provisions of the Georgia UDTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 143

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

557.    Defendants owed and continue to owe Plaintiffs, and the Georgia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

558.    Defendants knew or should have known that their conduct was in violation of the Georgia UDTPA.

559.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs, and the Georgia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Georgia UDTPA.

560.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Georgia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including, Plaintiffs, and the Georgia members of the Classes.

561.    Plaintiffs and the Georgia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Georgia members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 144

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Georgia UDTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

562.    Plaintiffs and the Georgia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

563.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

564.    Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code. Ann § 10-1-373.

## COUNT TWENTY-ONE — UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW (Haw. Rev. Stat. § 480, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

565.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

566.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Hawaii at any relevant time (the "Hawaii members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

567.    Defendants are "person[s]" under Haw. Rev. Stat. § 480-1.

568.    Plaintiffs and the Hawaii members of the Classes are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 145

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

569.    Defendants' acts or practices as set forth above occurred in the conduct of trade or commerce.

570.    Haw. Rev. Stat. § 480-1 *et seq.* (the "HUPUCA"), prohibits the use of any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

571.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of the HUPUCA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

572.    Defendants owed and continue to owe Plaintiffs and the Hawaii members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 146

573. Defendants knew or should have known that their conduct was in violation of the HUPUCA.

574. Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Hawaii members of the Classes, and continued to engage in unfair and deceptive practices in violation of the HUPUCA.

575. Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Hawaii members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Hawaii members of the Classes.

576. Plaintiffs and the Hawaii members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Hawaii members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the HUPUCA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

577. Plaintiffs and the Hawaii members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

578. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

579.    Pursuant to Haw. Rev. Stat. § 480-13, Plaintiffs and the Hawaii members of the Classes seek monetary relief against Defendants measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

580.    Under Haw. Rev. Stat. § 480-13.5, Plaintiffs seek an additional award against Defendants of up to $10,000 for each violation directed at a Hawaiian elder.  Defendants knew or should have known that its conduct was directed to one or more Class members who are elders. Defendants' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  One or more Hawaii members of the Classes who are elders are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial economic damage resulting from Defendants' conduct.

### COUNT TWENTY-TWO — VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (Idaho Code § 48-601, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

581.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

582.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Idaho at any relevant time (the "Idaho members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

583.    Defendants are "person[s]" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

584.    Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

585.     The Idaho CPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," which include "(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have;" "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "(17) Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." Idaho Code § 48-603.

586.     As detailed above, Defendants engaged in unfair and deceptive acts in violation of the above-noted provisions of the Idaho CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 149

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

587.    Defendants owed and continue to owe Plaintiffs and the Idaho members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

588.    Defendants knew or should have known that their conduct was in violation of the Idaho CPA.

589.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Idaho members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Idaho CPA.

590.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Idaho members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Idaho members of the Classes.

591.    Plaintiffs and the Idaho members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Idaho members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Idaho CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

592.    Plaintiffs and the Idaho members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

593.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

594.    Pursuant to Idaho Code § 48-608, Plaintiffs and the Idaho members of the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff and each Idaho member of the Classes.

595.    Plaintiffs and the Idaho members of the Classes also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

596.    Plaintiffs and the Idaho members of the Classes also seek punitive damages against Defendants because Defendants' conduct evidences an extreme deviation from reasonable standards.

## COUNT TWENTY-THREE — VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

597.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

598.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 151

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

residents of Illinois at any relevant time (the "Illinois members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

599.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

600.    Plaintiffs and the Illinois members of the Classes are "consumers" as that term is defined in 815 ILCS 505/1(e).

601.    The Illinois Consumer Fraud ("ICFDPA"), 815 ILCS 505/1 *et seq.*, prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact[.]"

602.    In addition, the Illinois Deceptive Business Practices Act ("IUDTPA"), 815 ILCS 510/2 *et seq.*, prohibits the use of various deceptive trade practices, including: "(2) caus[ing] a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;  (3) caus[ing] a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;" "(5) represent[ing] that goods or services have  sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;" "(11) mak[ing] false or misleading statements of fact  concerning the reasons for, existence of, or amounts of price reductions;  (12) engag[ing] in any other conduct which similarly  creates a likelihood of confusion or misunderstanding."

603.    As detailed above, Defendants engaged in unfair and deceptive acts in violation of the ICFDPA and the IUDTPA by, at a minimum:  (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 152

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

604.    Defendants owed and continue to owe Plaintiffs and the Illinois members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

605.    Defendants knew or should have known that their conduct was in violation of the ICFDPA and the IUDTPA.

606.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Illinois members of the Classes, and continued to engage in unfair and deceptive practices in violation of the ICFDPA and the IUDTPA.

607.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Illinois members of the Classes, and were

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Illinois members of the Classes

608.    Plaintiffs and the Illinois members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Illinois members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the ICFDPA and the IUDTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

609.    Plaintiffs and the Illinois members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

610.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

611.    Pursuant to 815 ILCS 505/10a(a), Plaintiff and the Illinois members of the Classes seek monetary relief against Defendants in the amount of their actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

612.    Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 154

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT TWENTY-FOUR — VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (Ind. Code § 24-5-0.5-3)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

613.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

614.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Indiana at any relevant time (the "Indiana members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

615.    Defendants are "person[s]" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier" within the meaning of Ind. Code § 24-5-.05-2a(3).

616.    Plaintiffs and Indiana members of the Classes' purchases of the test strip products described herein are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

617.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive act," which includes representing:  "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (c) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

writing that such representation is true if such other supplier shall know or have reason to know that such representation was false." Ind. Code § 24-5-0.5-3.

618.    As detailed above, Defendants engaged in deceptive acts in violation of the Indiana DCSA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

619.    Defendants owed and continue to owe Plaintiffs and the Indiana members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

620.    Defendants knew or should have known that their conduct was in violation of the Indiana DCSA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

621.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Indiana members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Indiana DCSA.

622.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Indiana members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Indiana members of the Classes.

623.    Plaintiffs and the Indiana members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Indiana members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Indiana DCSA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

624.    Plaintiffs and the Indiana members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

625.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

626.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and the Indiana members of the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 157

an amount to be determined at trial and (b) statutory damages in the amount of $500 for each

Plaintiff and each Indiana member of the Classes, including treble damages up to $1,000 for

Defendants' willfully deceptive acts.

627.    Plaintiff also seeks punitive damages based on the outrageousness and

recklessness of the Defendants' conduct and their high net worth.

628.    On or about the date of this filing, certain Plaintiffs sent notice letters to

Defendants pursuant to Ind. Code § 24-5-0.5-2 and § 24-5-0.5-5. If Defendants fail to remedy

their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to

which Plaintiffs and the Indiana members of the Classes are entitled.

### COUNT TWENTY-FIVE — VIOLATION OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE § 714H.1, *ET SEQ.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

629.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this complaint.

630.    Plaintiffs bring this action on behalf themselves and all members of the Non-

ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have

been residents of the State of Iowa during the relevant period ("the Iowa members of the

Classes") against all Defendants (for the purposes of this section, "Defendants").

631.    Iowa's Private Right of Action for Consumer Fraud Act ("Iowa CFA") provides

broadly that "[a] person shall not engage in a practice or act the person knows or reasonably

should know is an unfair practice, deception, fraud, false pretense, or false promise, or the

misrepresentation, concealment, suppression, or omission of a material fact, with the intent that

others rely upon the unfair practice, deception, fraud, false pretense, false promise,

misrepresentation, concealment, suppression, or omission in connection with the advertisement,

sale, or lease of consumer merchandise, or the solicitation of contributions for charitable

purposes." Iowa Code § 714H.3.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 158

632.    The Iowa members of the Classes are "consumers" under the Iowa CFA. Iowa Code § 714H.2.

633.    For purposes of the Iowa CFA, each Defendant is a "person." Iowa Code §§ 714H.2, 714.16.

634.    Defendants violated the Iowa CFA, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

635.    These violations harmed the Iowa members of the Classes and likely will continue to harm the Classes if Defendants' misconduct is not stopped.

636.    Under Iowa Code § 714H.5, Plaintiffs seek an injunction to protect the public from further violations of the Iowa CFA by Defendants. Furthermore, Plaintiffs request actual damages, costs of the action, and reasonable attorney's fees. Iowa Code § 714H.5.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

637. Because Defendants' conduct in violation of the Iowa CFA "constitutes willful and wanton disregard for the rights or safety of another," in addition to an award of actual damages, Plaintiffs seek statutory damages in the amount of three times actual damages. Iowa Code § 714H.5.

638. Plaintiffs further request any other "equitable relief as [the Court] deems necessary to protect the public from further violations…." Iowa Code § 714H.5.

### COUNT TWENTY-SIX — VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (Kan. Stat. Ann. § 50-623, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

639. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

640. Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Kansas at any relevant time (the "Kansas members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

641. Defendants are "suppliers" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

642. Plaintiffs and the Kansas members of the Classes are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b).

643. The sale of the test strip products described herein to the Plaintiffs and the Kansas members of the Classes were "consumer transactions" within the meaning of Kan. Stat. Ann. § 50-624(c).

644. The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 160

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are

2   of particular standard, quality, grade, style or model, if they are of another which differs

3   materially from the representation;" "(2) the willful use, in any oral or written representation, of

4   exaggeration, falsehood, innuendo or ambiguity as to a material fact;" "(3) the willful failure to

5   state a material fact, or the willful concealment, suppression or omission of a material fact," and

6   "(7) making false or misleading representations, knowingly or with reason to know, of fact

7   concerning the reason for, existence of or amounts of price reductions, or the price in comparison

8   to prices of competitors or one's own price at a past or future time." The Kansas CPA also

9   provides that "[n]o supplier shall engage in any unconscionable act or practice in connection

10  with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

11          645.    As detailed above, Defendants engaged in misleading, false and deceptive acts in

12  violation of the above-noted provisions of the Kansas CPA by, at a minimum: (1) making

13  misleading statements regarding the true cost of the price of test strips or causing reasonable

14  inferences about the cost that had the tendency to mislead consumers, including but not limited

15  to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising

16  concerning the role that Defendants played in setting the price paid for test strips, including but

17  not limited to marketing material averring that the PBM Defendants make efforts to decrease the

18  price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated

19  and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants

20  for test strips; (4) making material misrepresentations regarding or failing to disclose the

21  existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the

22  Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in

23  exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the

24  PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to

25  disclose the portion of discounts, rebates, and/or other payments from the Manufacturer

26  Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 161

and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

646.    Defendants owed and continue to owe Plaintiffs, and the Kansas members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

647.    Defendants knew or should have known that their conduct was in violation of the Kansas CPA.

648.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs, and the Kansas members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Kansas CPA.

649.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs, and the Kansas members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs, and the Kansas members of the Classes.

650.    Plaintiffs, and the Kansas members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Kansas members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Kansas CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

651.    Plaintiffs, and the Kansas members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 162

deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

652.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

653.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs and the Kansas members in the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each Plaintiff and each Kansas member of the Classes.

654.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann § 50-623, *et seq.*

## COUNT TWENTY-SEVEN — VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. § 367.110, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

655.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

656.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Kentucky at any relevant time (the "Kentucky members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

657.    Defendants, Plaintiffs, and the Kentucky members of the Classes are "persons" within the meaning of the Ky. Rev. Stat. § 367.110(1).

658.    Defendants engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

659.    The Kentucky Consumer Protection Act (the "Kentucky CPA") prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. Ann. 367.170.

660.    As detailed above, Defendants engaged in unfair, misleading, false and deceptive acts in violation of the above-noted provisions of the Kentucky CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

661.    Defendants owed and continue to owe Plaintiffs and the Kentucky members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

662.    Defendants knew or should have known that their conduct was in violation of the Kentucky CPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

663.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Kentucky members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Kentucky CPA.

664.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Kentucky members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Kentucky members of the Classes.

665.    Plaintiffs and the Kentucky members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Kentucky members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Kentucky CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

666.    Plaintiffs and the Kentucky members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

667.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest

668.    Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs and the Kentucky members of the Classes seek to recover actual damages in an amount to be determined at trial; an order

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

**COUNT TWENTY-EIGHT — VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (La. Rev. Stat. § 51:1401, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

669.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

670.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Louisiana at any relevant time (the "Louisiana members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

671.    Defendants, Plaintiffs, and the Louisiana members of the Classes are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8).

672.    Plaintiffs and the Louisiana members of the Classes are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

673.    Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

674.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A).

675.    In the course of their business, Defendants engaged in deceptive acts or practices in violation of the Louisiana CPL by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

676. Defendants owed and continue to owe Plaintiffs and the Louisiana members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

677. Defendants knew or should have known that their conduct was in violation of the Louisiana CPL.

678. Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Louisiana members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Louisiana CPL.

679. Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Louisiana members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Louisiana members of the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 167

680.    Plaintiffs and the Louisiana members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Louisiana members of the Classes to overpay for the test strip product described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Louisiana CPL did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

681.    Plaintiffs and the Louisiana members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

682.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

683.    Pursuant to La. Rev. Stat. § 51:1409, Plaintiffs and the Louisiana members of the Classes seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. § 51:1409.

**COUNT TWENTY-NINE — MAINE UNFAIR TRADE PRACTICES ACT (MUTPA) AND UNIFORM DECEPTIVE TRADE PRACTICES ACT (MUDTPA) (5 M.R.S.A. § 205-A *et seq.*, 5 M.R.S.A. § 1211 *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs and the Uninsured Plaintiffs, Against All Defendants)

684.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 168

685.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Maine at any relevant time (the "Maine members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

686.    Defendants, Plaintiffs, and the Maine members of the Classes are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

687.    Defendants are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

688.    The Maine Unfair Trade Practices Act (the "MUTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  Me. Rev. Stat. Ann. Tit. 5 § 207.

689.    In addition, the Maine Uniform Deceptive Trade Practices Act (the "MUDTPA"), 5 M.R.S.A. § 1211 *et seq.*, prohibits the use of various deceptive trade practices, including: "Caus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; Caus[ing] [a] likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" "Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "Mak[ing] false or misleading statements of fact concerning the reasons for, existence of or amounts of, price reductions;" and "Engag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

690.    As detailed above, Defendants engaged in deceptive acts in violation of the MUTPA and the MUDTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

691.    Defendants owed and continue to owe Plaintiffs and the Maine members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

692.    Defendants knew or should have known that their conduct was in violation of the MUTPA and the MUDTPA.

693.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Maine members of the Classes, and continued to engage in unfair and deceptive practices in violation of the MUTPA and the MUDTPA.

694.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Maine members of the Classes, and were

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Maine members of the Classes.

695.    Plaintiffs and the Maine members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Maine members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the MUTPA and the MUDTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

696.    Plaintiffs and the Maine members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

697.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

698.    Pursuant the MUTPA and the MUDTPA, Plaintiffs and the Maine members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the MUTPA and the MUDTPA.

699.    On or about the date of this filing, certain Plaintiffs sent a letter complying with Me. Rev. Stat. Ann. Tit. 5, § 213(1-A).  If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Maine members of the Classes are entitled.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

### COUNT THIRTY — VIOLATIONS OF THE MARYLAND
### CONSUMER PROTECTION ACT (Md. Code Com. Law § 13-101, *et seq.*)

3

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

4

700.    Plaintiffs incorporate by reference each preceding paragraph as though fully set

5

forth herein.

6

701.    Plaintiffs bring this action on behalf of themselves and all members of the Non-

7

ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been

8

residents of Maryland at any relevant time (the "Maryland members of the Classes") against all

9

Defendants (for the purposes of this section, "Defendants").

10

702.    Defendants, Plaintiffs, and the Maryland members of the Classes are "persons"

11

within the meaning of Md. Code Com. Law § 13-101(h).

12

703.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a

13

person may not engage in any unfair or deceptive trade practice in the sale of any consumer

14

good.  Md. Code Com. Law § 13-303.

15

704.    Md. Code Ann., Com. Law § 13-101 *et seq.*, prohibits the use of any "unfair or

16

deceptive trade practices" including any "(1) False, falsely disparaging, or misleading oral or

17

written statement, visual description, or other representation of any kind which has the capacity,

18

tendency, or effect of deceiving or misleading consumers;  (2) Representation that:  (i) Consumer

19

goods, consumer realty, or consumer services have a sponsorship, approval, accessory,

20

characteristic, ingredient, use, benefit, or quantity which they do not have;  (ii) A merchant has a

21

sponsorship, approval, status, affiliation, or connection which he does not have;" "(3) Failure to

22

state a material fact if the failure deceives or tends to deceive;" "(6) False or misleading

23

representation of fact which concerns  [t]he reason for or the existence or amount of a price

24

reduction;" and "(9) Deception, fraud, false pretense, false premise, misrepresentation, or

25

knowing concealment, suppression, or omission of any material fact with the intent that a

26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

consumer rely on the same in connection with [t]he promotion or sale of any consumer goods, consumer realty, or consumer service."

705.    In the course of their business, Defendants engaged in unfair and deceptive acts in violation of the Maryland CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

706.    Defendants owed and continue to owe Plaintiffs and the Maryland members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

707.    Defendants knew or should have known that their conduct was in violation of the Maryland CPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 173

708.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Maryland members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Maryland CPA.

709.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Maryland members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Maryland members of the Classes.

710.    Plaintiffs and the Maryland members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Maryland members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Maryland CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

711.    Plaintiffs and the Maryland members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

712.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

713.    Pursuant to Md. Code Com. Law § 13-408, Plaintiffs and the Maryland members of the Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT THIRTY-ONE — DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (Mass. Gen. Laws Ch. 93a, § 1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

714.    Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

715.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been Massachusetts residents at any relevant time (the "Massachusetts members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

716.    Defendants, Plaintiffs, and the Massachusetts members of the Classes are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

717.    Defendants engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

718.    Massachusetts law (the "Massachusetts CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

719.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Massachusetts CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated

and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

720.    As alleged throughout this Complaint, Defendants also engaged in unfair and unscrupulous practices by raising the price of life-saving medication without justification and limiting patient access to alternatives resulting in substantial harm.

721.    Defendants' conduct offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantial injurious to consumers.

722.    Additionally, Defendants' conduct was deceptive because it caused Plaintiffs and the Massachusetts members of the Classes to act differently from the way they would have otherwise acted.

723.    Defendants owed and continue to owe Plaintiffs, and the Massachusetts members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

724.    Defendants knew or should have known that their conduct was in violation of the Massachusetts CPA.

725.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

intent to mislead regulators, Plaintiffs, and the Massachusetts members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Massachusetts CPA.

726.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs, and the Massachusetts members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs, and the Massachusetts members of the Classes

727.    Plaintiffs, and the Massachusetts members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Massachusetts members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Massachusetts CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

728.    Plaintiffs, and the Massachusetts members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

729.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

730.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, Plaintiffs and the Massachusetts members of the Classes seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts member of the Classes.  Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Massachusetts member of the Classes, up to three times actual damages, but no less than two times actual damages.

731.    Plaintiffs and the Massachusetts members of the Classes also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts CPA.

**732.**    On or about the date of this filing, certain Plaintiffs sent a letter complying with Mass. Gen. Laws ch. 93A, § 9(3).  If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Massachusetts members of the Classes are entitled.

### COUNT THIRTY-TWO — VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT (Mich. Comp. Laws § 445.903, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

733.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

734.    Plaintiffs bring this count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Michigan at any relevant time (the "Michigan members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

735.    Plaintiffs, and the Michigan members of the Classes are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

736.    At all relevant times, Defendants were "persons" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

737.    The Michigan Consumer Protection Act ("Michigan CPA") specifically prohibits "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold." Mich. Comp. Laws § 445.903(z)

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 178

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

738.    Defendants acted in violation of § 445.903(z), as noted in detail above, by selling the test strip products at a price that is grossly in excess of competing branded test strip products sold both in the United States and internationally, competing generic test strip products, and even Defendants' own generic test strip products.

739.    The Michigan CPA also prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" including: "(a) Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," "(c) Representing that goods or services have … characteristics … that they do not have ….;" "(e) Representing that goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

740.    As detailed above, Defendants engaged in unfair, unconscionable, and deceptive acts in violation of the above-noted provisions of the Michigan CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

741.    Defendants owed and continue to owe Plaintiffs and the Michigan members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

742.    Defendants knew or should have known that their conduct was in violation of the Michigan CPA.

743.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Michigan members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Michigan CPA.

744.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs the Michigan members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Michigan members of the Classes.

745.    Plaintiffs and the Michigan members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Michigan

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 180

members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Michigan CPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

746.    Plaintiffs and the Michigan members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

747.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

748.    Plaintiffs and the Michigan members of the Classes seek injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan member of the Classes; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

749.    Plaintiffs and the Michigan members of the Classes also seek punitive damages against Defendants because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others.

### COUNT THIRTY-THREE — VIOLATIONS OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (Minn. Stat. § 325f.68, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

750.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

751.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or who have been residents of Minnesota at any relevant time (the "Minnesota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

752.    The test strip products described herein constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

753.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …."  Minn. Stat. § 325F.69(1).

754.    As detailed above, Defendants engaged in deceptive acts in violation of the Minnesota CFA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

755.   Defendants owed and continue to owe Plaintiffs and the Minnesota members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

756.   Defendants knew or should have known that their conduct was in violation of the Minnesota CFA.

757.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Minnesota members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Minnesota CFA.

758.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Minnesota members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Minnesota members of the Classes.

759.   Plaintiffs and the Minnesota members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Minnesota members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Minnesota CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

760.    Plaintiffs and the Minnesota members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

761.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

762.    Pursuant to Minn. Stat. § 8.31(3)(a), Plaintiffs and the Minnesota members of the Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

763.    Plaintiffs and the Minnesota members of the Classes also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

**COUNT THIRTY-FOUR — VIOLATIONS OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (Minn. Stat. § 325d.43-48, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

764.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

765.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or who have been residents of Minnesota at any relevant time (the "Minnesota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

766.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 184

association with, or certification by, another;" "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised;" "(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" or " (13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44.

767.   As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Minnesota DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

768.    Defendants owed and continue to owe Plaintiffs and the Minnesota members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

769.    Defendants knew or should have known that their conduct was in violation of the Minnesota DTPA.

770.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Minnesota members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Minnesota DTPA.

771.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Minnesota members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Minnesota members of the Classes.

772.    Plaintiffs and the Minnesota members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Minnesota members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Minnesota DTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

773.    Plaintiffs and the Minnesota members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 186

deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

774.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

775.    Pursuant to Minn. Stat. § 8.31(3a) and 325D.45, Plaintiffs and the Minnesota members of the Classes seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

776.    Plaintiffs and Minnesota Members of the Classes also seek punitive damages under Minn. Stat. § 549.20(1)(a) give the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

## COUNT THIRTY-FIVE — VIOLATIONS OF MISSISSIPPI CONSUMER PROTECTION ACT (Miss. Code. Ann. § 75-24-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

777.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

778.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Mississippi at any relevant time (the "Mississippi members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

779.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(b) Misrepresentation of the source, sponsorship, approval, or certification of goods or services; (c) Misrepresentation of affiliation, connection, or association with, or certification by another;" "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 187

they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(i) Advertising goods or services with intent not to sell them as advertised;" and "(k) Misrepresentations of fact concerning the reasons for, existence of, or amounts of price reductions." Miss. Code. Ann. § 75-24-5.

780.    As detailed above, Defendants engaged in misleading, false and deceptive acts in violation of the above-noted provisions of the Mississippi CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 188

781.     Defendants owed and continue to owe Plaintiffs and the Mississippi members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

782.     Defendants knew or should have known that their conduct was in violation of the Mississippi CPA.

783.     Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Mississippi members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Mississippi CPA.

784.     Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Mississippi members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Mississippi members of the Classes.

785.     Plaintiffs and the Mississippi members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Mississippi members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Mississippi CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

786.     Plaintiffs and the Mississippi members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

787.    On or about the date of this filing, certain Plaintiffs sent letters to Defendants pursuant to Miss. Code § 75-24-15(2) seeking to make a reasonable attempt to resolve this claim through informal means. If Defendants fail to respond to Plaintiffs' request to mediate within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Mississippi members of the Classes are entitled.

788.    Plaintiffs and the Mississippi members of the Classes seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

### COUNT THIRTY-SIX — VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT (Mo. Rev. Stat. § 407.010, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

789.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

790.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Missouri at any relevant time (the "Missouri members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

791.    Defendants, Plaintiffs and the Missouri members of the Classes are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

792.    Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

793.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

794.     As detailed above, Defendants engaged in unfair, false, and deceptive practices in violation of the above-noted provisions of the Missouri MPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

795.     Defendants conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers.  Such acts are unfair practices in violation of 15 Mo. Code of State Reg.  60-8.020.

796.     Defendants owed and continue to owe Plaintiffs and the Missouri members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

797.     Defendants knew or should have known that their conduct was in violation of the Missouri MPA

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 191

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

798.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Missouri members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Missouri MPA.

799.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Missouri members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Missouri members of the Classes.

800.    Plaintiffs and the Missouri members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Missouri members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Missouri MPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

801.    Plaintiffs and the Missouri members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

802.    As such Defendants are liable to Plaintiffs and the Missouri members of the Classes for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 192

**COUNT THIRTY-SEVEN — VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE § 30-14-101, *ET SEQ.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

803.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

804.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of Montana during the relevant period ("the Montana members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

805.    Montana's Unfair Trade Practices and Consumer Protection Act ("Montana CPA") provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code § 30-14-103.

806.    The Montana members of the Classes are "consumers" for purposes of the Montana CPA. Mont. Code § 30-14-102.

807.    For purposes of the Montana CPA, each Defendant is a "person." Mont. Code § 30-14-102.

808.    Defendants' activities in regard to test strips constitute "trade" and "commerce" under the Montana CPA. Mont. Code § 30-14-102.

809.    Defendants violated the Montana CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 193

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

810. These violations harmed the Montana members of the Classes and likely will continue to harm the Classes if Defendants' misconduct is not stopped.

811. Under Mont. Code § 30-14-133, Plaintiffs seek an injunction to protect the public from further violations of the Montana CPA by Defendants.

812. Furthermore, Plaintiffs request actual damages or $500 per Montana member of the Classes, whichever is greater. Mont. Code § 30-14-133. Plaintiffs also seek costs of the action and reasonable attorney's fees. Mont. Code § 30-14-133.

813. Plaintiffs and the Montana members of the Classes further request the Court to "provide any other equitable relief that it considers necessary or proper." Mont. Code § 30-14-133.

## COUNT THIRTY-EIGHT — VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB. REV. STAT. § 59-1601, *ET SEQ.*)

(By the Non-ERISA Employee/Exchange Plaintiffs and the Uninsured Plaintiffs, Against All Defendants)

814. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

815. Plaintiffs bring this action on behalf themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 194

been residents of the State of Nebraska during the relevant period ("the Nebraska members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

816.    Nebraska's Unfair Trade Practices and Consumer Protection Act ("Nebraska CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602.

817.    For purposes of the Nebraska CPA, each Defendant and each Nebraska member of the Classes is a "person." Neb. Rev. Stat. § 59-1601.

818.    Defendants' activities in regard to test strips constitute "trade" and "commerce" under the Nebraska CPA. Neb. Rev. Stat. § 59-1601.

819.    Defendants violated the Nebraska CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

820.     The foregoing violations caused harm to Plaintiffs and the Nebraska members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

821.     Under Neb. Rev. Stat. § 59-1609, Plaintiffs and the Nebraska members of the Classes seek an injunction to protect the public from further violations of the Nebraska CPA by Defendants.

822.     Furthermore, Plaintiffs and the Nebraska members of the Classes request actual damages together with costs, including reasonable attorney's fees. Neb. Rev. Stat. § 59-1609. Plaintiffs further seek the maximum discretionary award permitted under Neb. Rev. Stat. § 59-1609, and any other relief pursuant to the Nebraska CPA that the Court finds proper.

### COUNT THIRTY-NINE — VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (Nev. Rev. Stat. § 598.0903, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

823.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

824.     Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of Nevada at any relevant time (the "Nevada members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

825.     The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et seq.* prohibits deceptive trade practices.  Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "2. Knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease.; 3. Knowingly makes a false representation as to affiliation, connection, association with or certification by another person;" "5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 196

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; "13. Makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions." or "15. Knowingly makes any other false representation in a transaction."

826.    In the course of their business, Defendants engaged in deceptive trade practices in violation of the Nevada DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

827.    Defendants owed and continue to owe Plaintiffs and the Nevada members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing and legality of the test strip products described herein.

828.    Defendants knew or should have known that their conduct was in violation of the Nevada DTPA.

829.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Nevada members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Nevada DTPA.

830.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Nevada members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Nevada members of the Classes.

831.    Plaintiffs and the Nevada members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products described herein, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Nevada members of the Classes to overpay for the Test strip products described herein. Because Defendants did not reveal the true nature of the Test strip products described herein products and their pricing as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Nevada DTPA. did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

832.    Plaintiffs and the Nevada members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 198

833.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

834.    Accordingly, Plaintiffs and the Nevada members of the Classes seek their actual damages, punitive damages, an order enjoining Defendants' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available remedies under the Nevada Deceptive Trade Practices Act.  Nev. Rev. Stat. § 41.600.

## COUNT FORTY — VIOLATIONS OF N.H. CONSUMER PROTECTION ACT (N.H. Rev. Stat. Ann. § 358-a:1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

835.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

836.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of New Hampshire at any relevant time (the "New Hampshire members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

837.    Plaintiffs, the New Hampshire members of the Classes, and Defendants are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

838.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

839.    The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: (II) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;  (III) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 199

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

by, another; . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" "(IX) Advertising goods or services with intent not to sell them as advertised;" "(XI) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "XIV. Pricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition." N.H. Rev. Stat. § 358-A:2.

840. As detailed above, Defendants engaged in unfair and deceptive acts in violation of the New Hampshire CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

841.    Defendants owed and continue to owe Plaintiffs and the New Hampshire members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

842.    Defendants knew or should have known that their conduct was in violation of the New Hampshire CPA.

843.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the New Hampshire members of the Classes, and continued to engage in unfair and deceptive practices in violation of the New Hampshire CPA.

844.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New Hampshire members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New Hampshire members of the Classes.

845.    Plaintiffs and the New Hampshire members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New Hampshire members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the New Hampshire CPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

846.    Plaintiffs and the New Hampshire members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 201

847.    Because Defendants' willful conduct caused injury to the Plaintiffs and the New Hampshire members of the Classes' property through violations of the New Hampshire CPA, Plaintiffs and the New Hampshire members of the Classes seeks recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Defendants' unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

## COUNT FORTY-ONE — VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. Stat. Ann. §§ 56:8-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

848.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

849.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of New Jersey Classes at any relevant time (the "New Jersey members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

850.    Plaintiffs, the New Jersey members of the Classes, and Defendants are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

851.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. § 56:8-1(c), (e).

852.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce within the meaning of the New Jersey Consumer Fraud Act.

853.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 202

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J. Stat. § 56:8-2.

854.    In the course of their business, Defendants engaged in unfair and deceptive practices in violation of the New Jersey CFA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

855.    Defendants owed and continue to owe Plaintiffs and the New Jersey members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

856.    Defendants knew or should have known that their conduct was in violation of the New Jersey CFA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

857.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the New Jersey members of the Classes, and continued to engage in unfair and deceptive practices in violation of the New Jersey CFA.

858.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New Jersey members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New Jersey members of the Classes.

859.    Plaintiffs and the New Jersey members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New Jersey members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the New Jersey CFA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

860.    Plaintiffs and the New Jersey members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

861.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the New Jersey members of the Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, treble damages, an order enjoining Defendants' deceptive and unfair conduct, costs and reasonable attorneys' fees under N.J. Stat. § 56:8-19, and all other just and appropriate relief.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## COUNT FORTY-TWO — VIOLATIONS OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT (N.M. Stat. Ann. §§ 57-12-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

862.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

863.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or who have been residents of the State of New Mexico at any relevant time (the "New Mexico members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

864.    Defendants, Plaintiffs and the New Mexico members of the Classes are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-2.

865.    Defendants actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

866.    The New Mexico UTPA makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to: "(2) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (3) causing confusion or misunderstanding as to affiliation, connection or association with or certification by another; . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(11) making false or misleading statements of fact concerning the price of goods or services, the prices of competitors or one's own price at a past or future time or the reasons for, existence of or amounts of price reduction;"

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and "(14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive."

867.    In the course of their business, Defendants engaged in unfair and misleading acts in violation of the New Mexico UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

868.    Defendants owed and continue to owe Plaintiffs and the New Mexico members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

869.    Defendants knew or should have known that their conduct was in violation of the New Mexico UTPA.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

870.     Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the New Mexico members of the Classes, and continued to engage in unfair and deceptive practices in violation of the New Mexico UTPA.

871.     Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New Mexico members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New Mexico members of the Classes

872.     Plaintiffs and the New Mexico members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New Mexico members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the New Mexico UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

873.     Plaintiffs and the New Mexico members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

874.     Because Defendants' unconscionable, willful conduct caused actual harm to Plaintiffs and the New Mexico members of the Classes, they seek recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 207

## COUNT FORTY-THREE — VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. Gen. Bus. Law § 349)

### (By the Non-ERISA Employee/Exchange Plaintiffs and the Uninsured Plaintiffs, Against All Defendants)

875.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

876.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of New York at any relevant time ("New York members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

877.    Plaintiffs, the New York members of the Classes and all Defendants are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

878.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

879.    The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

880.    New York State General Business Law Section 349 (N.Y. Gen. Bus. § 349) broadly prohibits deceptive acts or practices in the state of New York toward consumers.

881.    As detailed above, Defendants engaged in deceptive acts toward consumers in violation of New York law in connection with the test strip products.

882.    In the course of their business, Defendants engaged in deceptive acts or practices in violation of the NY DAPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 208

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

883.    Defendants owed and continue to owe Plaintiffs and the New York members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

884.    Defendants knew or should have known that their conduct was in violation of the NY DAPA.

885.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs the New York members of the Classes, and continued to engage in unfair and deceptive practices in violation of the NY DAPA.

886.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the New York members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the New York members of the Classes.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

887.    Plaintiffs and the New York members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the New York members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the NY DAPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

888.    Plaintiffs and the New York members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

889.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendants, Plaintiffs and the New York members Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs,  an order enjoining Defendants' deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

## COUNT FORTY-FOUR — VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. §§ 75-1.1, et seq.)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

890.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

891.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 210

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

residents of North Carolina at any relevant time (the "North Carolina members of the Classes")

against all Defendants (for the purposes of this section, "Defendants").

892.    Plaintiffs and the North Carolina members of the Classes are persons under the

North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et seq.*

("NCUDTPA").

893.    Defendants' acts and practices complained of herein were performed in the course

of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C.

Gen. Stat. § 75-1.1(b).

894.    The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting

commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The

NCUDTPA provides a private right of action for any person injured "by reason of any act or

thing done by any other person, firm or corporation in violation of" the NCUDTPA.  N.C. Gen.

Stat. § 75-16.

895.    In the course of their business Defendants engaged in unfair and deceptive acts or

practices in violation of the NCUDTPA by, at a minimum: (1) making misleading statements

regarding the true cost of the price of test strips or causing reasonable inferences about the cost

that had the tendency to mislead consumers, including but not limited to publishing, setting, or

distributing the list price of test strips; (2) engaging in advertising concerning the role that

Defendants played in setting the price paid for test strips, including but not limited to marketing

material averring that the PBM Defendants make efforts to decrease the price of prescription

drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature

of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making

material misrepresentations regarding or failing to disclose the existence, amount, and/or

purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants

to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion

and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants'

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

896.    Defendants owed and continue to owe Plaintiffs and the North Carolina members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

897.    Defendants knew or should have known that their conduct was in violation of the NCUDTPA.

898.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the North Carolina members of the Classes, and continued to engage in unfair and deceptive practices in violation of the NCUDTPA.

899.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the North Carolina members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the North Carolina members of the Classes.

900.    Plaintiffs and the North Carolina members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the North Carolina members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the NCUDTPA did

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

901.    Plaintiffs and the North Carolina members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

902.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

903.    As a result of the foregoing wrongful conduct of Defendants, Plaintiffs and the North Carolina members of the Classes have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

## COUNT FORTY-FIVE — VIOLATION OF THE NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES LAW (N.D. CENT. CODE § 51-15-02)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

904.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

905.    Plaintiffs bring this action on behalf themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of North Dakota during the relevant period ("the North Dakota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

906.    North Dakota's Unlawful Sales or Advertising Practices Law ("North Dakota USAPL") prohibits "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 213

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby…." N.D. Cent. Code § 51-15-02.

907. For purposes of the North Dakota USAPL, each Defendant is a "person." N.D. Cent. Code § 51-15-01.

908. Test strips are "merchandise" under the North Dakota USAPL, for which Defendants conducted "advertisement" and which they offered for "sale," as those terms are defined in the law. N.D. Cent. Code § 51-15-01.

909. Defendants violated the North Dakota USAPL, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 214

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

910.    The foregoing violations caused harm to Plaintiffs and the North Dakota members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

911.    Plaintiffs and the North Dakota members of the Classes seek an injunction to protect the public from further violations of the North Dakota USAPL by Defendants.

912.    Furthermore, because Defendants knowingly committed this conduct, Plaintiffs and the North Dakota members of the Classes seek three times the actual damages as well as costs, disbursements, and actual reasonable attorney's fees incurred in the action. N.D. Cent. Code § 51-15-09.

## COUNT FORTY-SIX — VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (Ohio Rev. Code §§ 1345.01, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

913.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

914.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Ohio at any relevant time (the "Ohio members of the Class"), against all Defendants (for the purposes of this section, "Defendants").

915.    Defendants, Plaintiffs and the Ohio members of the Classes are "persons" within the meaning of Ohio Rev. Code § 1345.01(B).

916.    Defendants are "suppliers" as defined by Ohio Rev. Code § 1345.01(C).

917.    Plaintiffs and the Ohio members of the Classes are "consumers" as that term is defined in Ohio Rev.  Code § 1345.01(D), and their purchase of the test strip products described herein are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

918.    Ohio Rev. Code § 1345.02 (the "Ohio CSPA"), prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  The Ohio CSPA prohibits a supplier

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 215

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

919.    In the course of their business, Defendants engaged in unfair and deceptive practices in violation of the Ohio CSPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

920.    Defendants owed and continue to owe Plaintiffs and the Ohio members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

921.    Defendants knew or should have known that their conduct was in violation of the Ohio CSPA.

922.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Ohio members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Ohio CSPA.

923.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Ohio members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Ohio members of the Classes.

924.    Plaintiffs and Ohio members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Ohio members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Ohio CSPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

925.    Plaintiffs and the Ohio members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

926.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

927.    Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs and the Ohio members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

**COUNT FORTY-SEVEN — VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT (Ohio Rev. Code § 4165.01,** *et seq.***)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

928.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

929.    This claim is brought by Plaintiffs on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Ohio at any relevant time (the "Ohio members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

930.    Defendants, Plaintiffs and the Ohio members of the Classes are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

931.    Defendants took the actions complained of herein in "the course of [their] business" within the meaning of Ohio Rev. Code § 4165.02(A).

932.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; . . . (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (9) Represents that goods or services are of a

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 218

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; . . . (11) Advertises goods or services with intent not to sell them as advertised [or] (12) Makes false statements of fact concerning the reasons for, existence of, or amounts of price reductions."

933.    In the course of their business, Defendants engaged in deceptive trade practices in violation of the Ohio DPTA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

934.    Defendants owed and continue to owe Plaintiffs and the Ohio members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 219

935.    Defendants knew or should have known that their conduct was in violation of the Ohio DTPA.

936.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Ohio members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Ohio DTPA.

937.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Ohio members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Ohio members of the Classes.

938.    Plaintiffs and the Ohio members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Ohio members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Ohio DTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

939.    Plaintiffs and the Ohio members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

940.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

941.    Pursuant to Ohio Rev. Code § 4165.03, Plaintiffs and the Ohio members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

## COUNT FORTY-EIGHT — VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT (Okla. Stat. Tit. 15 § 751, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

942.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

943.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of Oklahoma during any relevant time period (the "Oklahoma members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

944.    Defendants, Plaintiffs and the Oklahoma members of the Classes are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

945.    Defendants engaged in the acts alleged herein in "the course of [their] business" within the meaning of Okla. Stat. Tit. 15 § 752.3.

946.    The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics . . . , uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 15 § 753.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

947.     Defendants engaged in unfair and deceptive trade practices in violation of the Oklahoma CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

948.     Defendants owed and continue to owe Plaintiffs and the Oklahoma members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

949.     Defendants knew or should have known that their conduct was in violation of the Oklahoma CPA.

950.     Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

intent to mislead regulators, Plaintiffs and the Oklahoma members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Oklahoma CPA.

951.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Oklahoma members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Oklahoma members of the Classes.

952.    Plaintiffs and the Oklahoma members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Oklahoma members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Oklahoma CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

953.    Plaintiffs and the Oklahoma members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

954.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

955.    Pursuant to Okla. Stat. Tit. 15 § 761.1, Plaintiffs and the Oklahoma members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 223

**COUNT FORTY-NINE — VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (Or. Rev. Stat. §§ 646.605, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

956.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

957.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or who have been residents of the State of Oregon during the relevant time period (the "Oregon members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

958.    Defendants, Plaintiffs and the Oregon members of the Classes are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

959.    Defendants are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

960.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce," including but not limited to "(b) Caus[ing] [a] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services; (c) Caus[ing] [a] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(j) Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;" and "(u) Mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." Or. Rev. Stat. § 646.608(1).

961.    Defendants engaged in unfair and deceptive conduct in violation of the Oregon UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 224

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

962.    Defendants owed and continue to owe Plaintiffs and the Oregon members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

963.    Defendants knew or should have known that their conduct was in violation of the Oregon UTPA.

964.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Oregon members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Oregon UTPA.

965.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Oregon members of the Classes, and were

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 225

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Oregon members of the Classes.

966.    Plaintiffs and the Oregon members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Oregon members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Oregon UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

967.    Plaintiffs and the Oregon members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

968.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

969.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs and the Oregon members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

### COUNT FIFTY — VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

970.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 226

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

971.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents of or who have been residents of the State of Pennsylvania during any relevant period (the "Pennsylvania members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

972.    Defendants, Plaintiffs and the Pennsylvania members of the Classes are "persons" within the meaning of 73 P.S. § 201-2(2).

973.    Defendants are engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3) with respect to the conduct alleged herein.

974.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce," including but not limited to: "(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services; (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" and "(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." 73 P.S. § 201-2(4).

975.    Defendants engaged in unfair and deceptive acts or practices in violation of the Pennsylvania UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

976.    Defendants owed and continue to owe Plaintiffs and the Pennsylvania members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

977.    Defendants knew or should have known that their conduct was in violation of the Pennsylvania UTPA.

978.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Pennsylvania members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Pennsylvania UTPA.

979.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Pennsylvania members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Pennsylvania members of the Classes.

980.    Plaintiffs and the Pennsylvania members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 228

These material misrepresentations by Defendants proximately caused Plaintiffs and the Pennsylvania members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Pennsylvania UTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

981. Plaintiffs and the Pennsylvania members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

982. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

983. Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs and the Pennsylvania members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**COUNT FIFTY-ONE — VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1, *ET SEQ.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

984. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

985. Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 229

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  been residents of the State of Rhode Island during the relevant period ("the Rhode Island

2  members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

3      986.    The Rhode Island Unfair Trade Practices and Consumer Protection Act ("Rhode

4  Island CPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or

5  practices in the conduct of any trade or commerce are declared unlawful." R.I. Gen. Laws § 6-

6  13.1-2. The Rhode Island CPA prohibits acts such as "[m]aking false or misleading statements of

7  fact concerning the reasons for, existence of, or amounts of price reductions;" "[e]ngaging in any

8  other conduct that similarly creates a likelihood of confusion or of misunderstanding;

9  "[e]ngaging in any act or practice that is unfair or deceptive to the consumer;" and "[u]sing any

10  other methods, acts, or practices that mislead or deceive members of the public in a material

11  respect…." R.I. Gen. Laws § 6-13.1-1.

12      987.    Defendants' activities in regard to test strips constitute "trade" and "commerce"

13  under the Rhode Island CPA. R.I. Gen. Laws § 6-13.1.

14      988.    Plaintiffs bought test strips "primarily for personal, family, or household

15  purposes…." R.I. Gen. Laws § 6-13.1-5.2.

16      989.    Defendants violated the Rhode Island CPA, at a minimum by: (1) making

17  misleading statements regarding the true cost of the price of test strips or causing reasonable

18  inferences about the cost that had the tendency to mislead consumers, including but not limited

19  to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising

20  concerning the role that Defendants played in setting the price paid for test strips, including but

21  not limited to marketing material averring that the PBM Defendants make efforts to decrease the

22  price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated

23  and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants

24  for test strips; (4) making material misrepresentations regarding or failing to disclose the

25  existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the

26  Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

990.    The foregoing violations caused harm to Plaintiffs and the Rhode Island members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

991.    Plaintiffs and the Rhode Island members of the Classes seek an injunction to protect the public from further violations of the Rhode Island CPA by Defendants. R.I. Gen. Laws § 6-13.1-5.2.

992.    Furthermore, Plaintiffs and the Rhode Island members of the Classes are entitled to actual damages or $200, whichever is greater. Plaintiffs and the Rhode Island members of the Classes also seek punitive damages, reasonable attorney's fees and costs, and other equitable relief that the Court deems necessary and proper. R.I. Gen. Laws § 6-13.1-5.2.

## COUNT FIFTY-TWO — VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. Code Ann. § 39-5-10, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

993.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

994.    Plaintiffs bring this count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents of or who have been residents of the State of South Carolina during any relevant time period (the "South Carolina members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 231

995.    Defendants, Plaintiffs and the South Carolina members of the Classes are "persons" within the meaning of S.C. Code § 39-5-10(a).

996.    Defendants are engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5-10(b) with respect to the conduct alleged herein.

997.    The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

998.    Defendants engaged in unfair and deceptive acts in violation of the South Carolina UTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 232

999.    Defendants owed and continue to owe Plaintiffs and the South Carolina members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1000.   Defendants knew or should have known that their conduct was in violation of the South Carolina UTPA.

1001.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the South Carolina members of the Classes, and continued to engage in unfair and deceptive practices in violation of the South Carolina UTPA.

1002.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the South Carolina members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the South Carolina members of the Classes.

1003.   Plaintiffs and the South Carolina members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the South Carolina members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the South Carolina UTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1004.   Plaintiffs and the South Carolina members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 233

1005.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1006.    Pursuant to S.C. Code § 39-5-140(a), Plaintiffs and the South Carolina members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the South Carolina UTPA.

**COUNT FIFTY-THREE — VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1007.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

1008.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of South Dakota during the relevant period ("the South Dakota members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1009.    South Dakota's Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") provides that, among other things, it is a deceptive act or practice to "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby…." S.D. Codified Laws § 37-24-6.

1010.    Defendants violated the South Dakota CPL, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 234

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1011.    The foregoing violations caused harm to Plaintiffs and the members of the Classes, and are likely to harm consumers in the future if Defendants' practices are not stopped.

1012.    The South Dakota CPL provides that "[a]ny person who claims to have been adversely affected by any act or a practice declared to be unlawful by § 37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered as a result of such act or practice." S.D. Codified Laws § 37-24-31. Plaintiffs and the South Dakota members of the Classes seek actual damages under the South Dakota CPL.

**COUNT FIFTY-FOUR — VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (Tenn. Code Ann. § 47-18-101, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1013.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 235

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1014.   Plaintiffs bring this count of behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Tennessee during any relevant time period (the "Tennessee members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1015.   Plaintiffs and the Tennessee members of the Classes are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2).

1016.   Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

1017.   Defendants engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9) with respect to the conduct alleged herein.

1018.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce" including but not limited to: "(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services."; "(3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another."; "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;" "(11) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;"  and "(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code § 47-18-104.

1019.   Defendants engaged in unfair and deceptive acts in violation of the Tennessee CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1020.   Defendants owed and continue to owe Plaintiffs and the Tennessee members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1021.   Defendants knew or should have known that their conduct was in violation of the Tennessee CPA.

1022.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Tennessee members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Tennessee CPA.

1023.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Tennessee members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Tennessee members of the Classes.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 237

1024.   Plaintiffs and the Tennessee members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Tennessee members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Tennessee CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1025.   Plaintiffs and the Tennessee members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

1026.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1027.   Pursuant to Tenn. Code § 47-18-109, Plaintiffs and the Tennessee members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

**COUNT FIFTY-FIVE — VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT (Tex. Bus. & Com. Code §§ 17.41, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1028.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 238

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1029.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Texas during any relevant period (the "Texas members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1030.   The TDTPA, Tex. Bus. & Com. Code Ann. § 17.41, et. seq., prohibits the use of any "deceptive" or "unfair" or "unconscionable" act or practice in connection with a consumer transaction.

1031.   Plaintiffs and the Texas members of the Classes are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).

1032.   Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

1033.   Defendants were and are engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a) with respect to the conduct alleged herein.

1034.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and "unconscionable action[s] or course of action[s]," which means "act[s] or practice[s] which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

1035.   Defendants engaged in false, misleading, deceptive, and unconscionable acts or practices in violation of the Texas DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1036.   Defendants owed and continue to owe Plaintiffs and the Texas members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1037.   Defendants knew or should have known that their conduct was in violation of the Texas DTPA.

1038.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Texas members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Texas DTPA.

1039.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Texas members of the Classes, and were

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 240

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Texas members of the Classes.

1040.   Plaintiffs and the Texas members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiff and the Texas members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Texas DTPA did not begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

1041.   Plaintiffs and the Texas members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

1042.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1043.   Pursuant to Tex. Bus. & Com. Code § 17.50, Plaintiffs and the Texas members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

1044.   On or about the date of this filing, certain Plaintiffs sent a letter complying with Tex. Bus. & Com. Code § 17.505(a). If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the Texas members of the Classes are entitled.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 241

## COUNT FIFTY-SIX — VIOLATIONS OF UTAH CONSUMER SALES PRACTICES ACT (Utah Code Ann. § 13-11-1, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1045.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1046.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Utah at any relevant time (the "Utah members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1047.    Plaintiffs and Utah members of the Classes are "persons" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5).

1048.    The purchases of the test strip products described herein are "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

1049.    Defendants are "suppliers" within the meaning of Utah Code § 13-11-3(6).

1050.    The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code § 13-11-5.

1051.    Defendants engaged in deceptive and unconscionable acts and practices in violation of the Utah CSPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 242

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1052.    Defendants owed and continue to owe Plaintiffs and the Utah members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1053.    Defendants knew or should have known that their conduct was in violation of the Utah CSPA.

1054.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Utah members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Utah CSPA.

1055.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Utah members of the Classes, and were

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 243

likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Utah members of the Classes.

1056.   Plaintiffs and the Utah members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Utah members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Utah CSPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1057.   Plaintiffs and the Utah members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

1058.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest

1059.   Plaintiffs and the Utah members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Utah CSPA.

**COUNT FIFTY-SEVEN — VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT (Vt. Stat. Ann. Tit. 9, § 2451 *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1060.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 244

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1061.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Vermont during any relevant time period (the "Vermont members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1062.   Plaintiffs and the Vermont Classes are "consumers" within the meaning of Vt. Stat. Tit. 9, § 2451a(a).

1063.   Defendants are "person[s]" within the meaning of Vt. Code R. § 100(3) (citing Vt. Stat. Tit. 9, § 2453).

1064.   Defendants are engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a), with respect to the acts and practices alleged herein.

1065.   The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Tit. 9, § 2453(a).

1066.   Defendants engaged in unfair and deceptive conduct in violation of the Vermont CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5)

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1067.    Defendants owed and continue to owe Plaintiffs and the Vermont members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1068.    Defendants knew or should have known that their conduct was in violation of the Vermont CPA.

1069.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Vermont members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Vermont CPA.

1070.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Vermont members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Vermont members of the Classes.

1071.    Plaintiffs and Vermont members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Vermont members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Vermont CPA did not

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

begin to accrue until the filing of this lawsuit. Defendants either concealed or failed to reveal the facts until this filing.

1072. Plaintiffs and the Vermont members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

1073. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1074. Pursuant to Vt. Stat. Tit. 9, § 2461(b), Plaintiffs and the Vermont members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, actual damages, damages up to three times the consideration provided, punitive damages, attorneys' fees, costs, and any other just and proper relief available under the Vermont CPA.

### COUNT FIFTY-EIGHT — VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (Va. Code Ann. §§ 59.1-196, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1075. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1076. Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents of or who have been residents of the State of Virginia during any relevant time period (the "Virginia members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1077. Defendants, Plaintiffs, and the Virginia members of the lass are "persons" within the meaning of Va. Code § 59.1-198.

1078. Defendants are "suppliers" within the meaning of Va. Code § 59.1-198.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1079.   The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

1080.   Defendants engaged in fraudulent acts or practices in violation of the Virginia CPA, at a minimum by: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1081.   Defendants owed and continue to owe Plaintiffs and the Virginia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1082.   Defendants knew or should have known that their conduct was in violation of the Virginia CPA.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1083.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Virginia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Virginia CPA.

1084.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Virginia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Virginia members of the Classes.

1085.   Plaintiffs and other Virginia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Virginia members of the Classes to overpay for the test strip products. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Virginia CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1086.   Plaintiffs and the Virginia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

1087.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1088.   Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiffs and the Virginia members of the Classes are entitled to the greater of actual damages or $500 for each Virginia member of the

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Classes, attorneys' fees, and costs. Because Defendants' actions were willful, Plaintiffs and the Virginia members of the Classes should each receive the greater of treble damages or $1,000. *Id.*

### COUNT FIFTY-NINE — VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1089.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1090.    Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or who have been residents of the State of Washington (the "Washington members of the Classes") against all Defendants (for the purposes of this section, "Defendants").

1091.    Defendants, Plaintiffs, and the Washington members of the Classes are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

1092.    Defendants are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

1093.    The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

1094.    The Washington CPA also renders it unlawful "for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce." Wash. Rev. Code § 19.86.040.

1095.    Defendants engaged in unfair, deceptive, and monopolistic acts and practices in violation of the Washington CPA by, at a minimum:  (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 250

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1096.    Defendants owed and continue to owe Plaintiffs and the Washington members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1097.    Defendants knew or should have known that their conduct was in violation of the Washington CPA.

1098.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Washington members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Washington CPA.

1099.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Washington members of the Classes, and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    were likely to and/or did, in fact, deceive regulators and reasonable consumers, including

2    Plaintiffs and the Washington members of the Classes.

3        1100.    Plaintiffs and other Washington members of the Classes relied upon Defendants'

4    material misrepresentations and omissions regarding the test strip products, as set forth above.

5    These material misrepresentations by Defendants proximately caused Plaintiffs and the

6    Washington members of the Classes to overpay for the test strip products. Because Defendants

7    did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this

8    lawsuit was filed, the statute of limitation for filing claims against Defendants under the

9    Washington CPA did not begin to accrue until the filing of this lawsuit.  Defendants either

10   concealed or failed to reveal the facts until this filing.

11       1101.    Plaintiffs and the Washington members of the Classes suffered injury-in-fact,

12   ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and

13   deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of

14   increased and unfair prices paid for the test strip products described herein.

15       1102.    Defendants' violations present a continuing risk to Plaintiffs as well as to the

16   general public, who in many cases are unable to afford or gain access to test strip products. As

17   such, Defendants' unlawful acts and practices complained of herein affect the public interest.

18       1103.    Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs and the Washington

19   members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or

20   practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper

21   relief available under the Washington CPA. Because Defendants' actions were willful and

22   knowing, Plaintiffs and the Washington members of the Classes' damages should be trebled.  *Id.*

23

24

25

26

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
- 252

**COUNT SIXTY — VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT (W. Va. Code § 46A-1-101, *et seq.*)**

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1104.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1105.   Plaintiffs bring this count on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of West Virginia (the "West Virginia members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1106.   Defendants, Plaintiffs, and the West Virginia members of the Classes are "persons" within the meaning of W. Va. Code § 46A-1-102(31).

1107.   Plaintiffs and the West Virginia members of the Classes members are "consumers" within the meaning of W. Va. Code §§ 46A-1-102(2) and 46A-1-102(12).

1108.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  W. Va. Code § 46A-6-104.

1109.   Defendants engaged in unfair and deceptive practices in violation of the West Virginia CCPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 253

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1110.    Defendants owed and continue to owe Plaintiffs and the West Virginia members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1111.    Defendants knew or should have known that their conduct was in violation of the West Virginia CCPA.

1112.    Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the West Virginia members of the Classes, and continued to engage in unfair and deceptive practices in violation of the West Virginia CCPA.

1113.    Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the West Virginia members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the West Virginia members of the Classes.

1114.    Plaintiffs and the West Virginia members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the West Virginia members of the Classes to overpay for the test strip products. Because Defendants did

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 254

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the West Virginia CCPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1115.   Plaintiffs and the West Virginia members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

1116.   Pursuant to W. Va. Code § 46A-6-106(a), Plaintiffs and the West Virginia members of the Classes seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the West Virginia CCPA.

1117.   On or about the date of this filing, certain Plaintiffs sent a letter complying with W. Va. Code § 46A-6-106(c).  If Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs and the West Virginia members of the Classes are entitled.

## COUNT SIXTY-ONE — VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (Wis. Stat. § 100.18)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1118.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1119.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are or have been residents of the State of Wisconsin (the "Wisconsin members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 255

1120.   Plaintiffs and the Wisconsin members of the Classes are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

1121.   Plaintiffs and Wisconsin members of the Classes are "persons" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1).

1122.   Each Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

1123.   The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

1124.   Defendants acted in violation of the Wisconsin DTPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 256

1125.   Defendants owed and continue to owe Plaintiffs and the Wisconsin members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

1126.   Defendants knew or should have known that their conduct was in violation of the Wisconsin DTPA.

1127.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Wisconsin members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Wisconsin DTPA.

1128.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Wisconsin members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Wisconsin members of the Classes.

1129.   Plaintiffs and the Wisconsin members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strip products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Wisconsin members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Wisconsin DTPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1130.   Plaintiff and the Wisconsin members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strip products described herein.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1131.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

1132.   Plaintiffs and the Wisconsin members of the Classes seek damages, court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2), and any other just and proper relief available under the Wisconsin DTPA.

### COUNT SIXTY-TWO — VIOLATIONS OF THE WYOMING CONSUMER PROTECTION ACT (Wyo. Stat. §§ 40-12-101, *et seq.*)

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1133.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1134.   Plaintiffs bring this action on behalf of themselves and all members of the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class who are residents or have been residents of the State of Wyoming (the "Wyoming members of the Classes"), against all Defendants (for the purposes of this section, "Defendants").

1135.   Plaintiffs, the Wyoming members of the Classes and Defendants are "persons" within the meaning of Wyo. Stat. § 40-12-102(a)(i).

1136.   The test strips products described herein constitute "merchandise" pursuant to Wyo. Stat. § 40-12-102(a)(vi).

1137.   Each sale of a test strip product constitutes a "consumer transaction" as defined by Wyo. Stat. § 40-12-102(a)(ii).  These consumer transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a).

1138.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits unlawful deceptive trade practices, including when a seller: "(i) Represents that merchandise has a source, origin, sponsorship, approval, accessories, or uses it does not have; (ii) Represents that he has a sponsorship, approval or affiliation he does not have; (iii) Represents that merchandise is of a

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 258

particular standard, grade, style or model, if it is not;" "(vii) Makes false or misleading statements of fact concerning the price of merchandise or the reason for, existence of, or amounts of a price reduction;" "(x) Advertises merchandise with intent not to sell it as advertised;" "(xv) Engages in unfair or deceptive acts or practices." Wyo. Stat. §§ 40-12-105(a).

1139.   Defendants engaged in unfair and deceptive acts or practices in violation of the Wyoming CPA by, at a minimum: (1) making misleading statements regarding the true cost of the price of test strips or causing reasonable inferences about the cost that had the tendency to mislead consumers, including but not limited to publishing, setting, or distributing the list price of test strips; (2) engaging in advertising concerning the role that Defendants played in setting the price paid for test strips, including but not limited to marketing material averring that the PBM Defendants make efforts to decrease the price of prescription drugs and/or test strips for consumers; (3) failing to disclose the inflated and/or fraudulent nature of the list price(s) set and/or charged by the Manufacturer Defendants for test strips; (4) making material misrepresentations regarding or failing to disclose the existence, amount, and/or purpose(s) of discounts, rebates, and/or other payments offered by the Manufacturer Defendants to the PBM Defendants and/or negotiated by the PBM Defendants in exchange for inclusion and/or tier placement of the Manufacturer Defendants' test strips on the PBM Defendants' formularies; (5) making material misrepresentations regarding or failing to disclose the portion of discounts, rebates, and/or other payments from the Manufacturer Defendants that the PBM Defendants keep; and/or (6) engaging in misleading, false, unfair and/or deceptive acts or practices by selling and/or facilitating the sale of test strips at a grossly inflated and/or fraudulently obtained price point.

1140.   Defendants owed and continue to owe Plaintiffs and the Wyoming members of the Classes a duty to refrain from the above-described unfair and deceptive practices and disclose the true nature of the pricing of the test strip products described herein.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1141.   Defendants knew or should have known that their conduct was in violation of the Wyoming CPA.

1142.   Despite knowing the true nature of their products and practices for years, Defendants intentionally and/or knowingly omitted and/or misrepresented material facts regarding the quality and characteristics of the test strip products described herein, with the intent to mislead regulators, Plaintiffs and the Wyoming members of the Classes, and continued to engage in unfair and deceptive practices in violation of the Wyoming CPA.

1143.   Defendants' unfair and deceptive acts or practices, omissions and misrepresentations were material to Plaintiffs and the Wyoming members of the Classes, and were likely to and/or did, in fact, deceive regulators and reasonable consumers, including Plaintiffs and the Wyoming members of the Classes.

1144.   Plaintiffs and other Wyoming members of the Classes relied upon Defendants' material misrepresentations and omissions regarding the test strips products, as set forth above. These material misrepresentations by Defendants proximately caused Plaintiffs and the Wyoming members of the Classes to overpay for the test strip products described herein. Because Defendants did not reveal the true nature of the Test Strip Pricing Scheme as described herein until this lawsuit was filed, the statute of limitation for filing claims against Defendants under the Wyoming CPA did not begin to accrue until the filing of this lawsuit.  Defendants either concealed or failed to reveal the facts until this filing.

1145.   Plaintiffs and the Wyoming members of the Classes suffered injury-in-fact, ascertainable loss and actual damages as a direct and proximate result of Defendants' unfair and deceptive practices and omissions and/or misrepresentations, at a minimum, in the form of increased and unfair prices paid for the test strips products described herein.

1146.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, who in many cases are unable to afford or gain access to test strip products. As such, Defendants' unlawful acts and practices complained of herein affect the public interest.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1147.    Pursuant to Wyo. Stat. § 40-12-108(a), Plaintiffs and the Wyoming members of the Classes seek damages as determined at trial, and any other just and proper relief available under the Wyoming CPA, including but not limited to court costs and reasonable attorneys' fees as provided in Wyo. Stat. § 40-12-108(b).

1148.    On or about the date of this filing, certain Plaintiffs sent a letter complying with Wyo. Stat. § 40-12-109.  If Defendants fail to offer to cure, or fail to complete a remedy of their deceptive trade acts and practices within the required time period, *see* Wyo. Stat. § 40-12-102(a)(ix), Plaintiffs seek all damages and relief available under the Wyoming CPA.

## COUNT SIXTY-THREE — COMMON LAW FRAUD

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1149.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1150.    Plaintiffs bring this Count on behalf of themselves and the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class.

1151.    As alleged extensively above, Defendants affirmatively misrepresented and/or concealed and suppressed material facts concerning: (a) the true cost and/or price of test strips; (b) the inflated and/or fraudulent nature of the list price(s) set and/or charged by Defendants for test strips; (c) the existence, amount, and/or purpose(s) of discounts and/or rebates offered and/or negotiated by Defendants for those products; and (d) the role that Defendants' played in the price paid for test strips, including but not limited to marketing material averring that Defendants decrease the price of prescription drugs and/or test strips for consumers.

1152.    Defendants valued their profits over the trust, health and safety of Plaintiffs and other Class members.

1153.    Necessarily, Defendants took steps to ensure that their employees and co-conspirators did not reveal the details of their scheme to inflate the price of test strips to consumers, including Plaintiffs and Class members.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 261

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1154.   Defendants' false representations and omissions were material to consumers, Plaintiffs and the members of the Classes.

1155.   Plaintiffs and Class members reasonably relied on Defendants' deception, and Defendants intended that they would so rely. Plaintiffs and Class members had no way of discerning that Defendants were, in fact, deceiving them because they possessed exclusive knowledge regarding the nature of diabetes test strip pricing; intentionally concealed the foregoing from, Plaintiffs, the Classes and the public; and made incomplete or negligent representations about the pricing of test strips and the Defendants' role in that pricing, while purposefully withholding material facts from Plaintiffs and the Classes that contradicted these representations.

1156.   Defendants' actions, representations, and misrepresentations demonstrate callous disregard for not only the rule of law but also public health. Indeed, as a direct result of Defendants' actions, access to live-saving test strips has been limited, denied, or forgone.

1157.   Defendants owed Plaintiffs and the Classes a duty to disclose, truthfully, all the facts concerning the true cost of test strips and the inflated and fraudulent nature of their pricing; the existence, amount, and purpose of rebated and discounts negotiated for those products; and the role that Defendants played in increasing the price of test strips.

1158.   Defendants hatched their deceptive schemes and knew that their customers, including Plaintiffs and Class members, did not know about (and could not reasonably discover) the manner in which they sought to artificially inflate the price of test strips. Defendants not only concealed all the facts concerning the true cost of test strips, but went further to make affirmative misrepresentations in marketing materials and other communications, that Defendants worked to lower the ultimate cost of prescription medications and/or test strips. Defendants engaged in this fraudulent concealment at the expense of Plaintiffs and the Classes.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1159.   Plaintiffs and the Class members were not aware of the concealed and misrepresented material facts referenced above, and they would not have acted as they did, had they known the truth.

1160.   As a direct and proximate result of Defendants' fraudulent scheme, Plaintiffs and the Class members sustained damages, including but not limited to paying excessive and inflated prices for test strips.

1161.   Defendants are liable to Plaintiffs and the Class members for damages in an amount to be proven at trial. Moreover, because Defendants acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiffs and Class members for the purpose of enriching themselves at Plaintiffs' and the Class members' detriment, Defendants' conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

### COUNT SIXTY-FOUR — UNJUST ENRICHMENT

(By the Non-ERISA Employee/Exchange Plaintiffs
and the Uninsured Plaintiffs, Against All Defendants)

1162.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1163.   Plaintiffs bring this Count on behalf of themselves and the Non-ERISA Employee/Exchange Plan Class and/or the Uninsured Class.

1164.   Defendants have benefitted from selling, setting prices for and negotiating discounts for test strips marketed and sold at an artificially inflated price.

1165.   Defendants have received and retained unjust benefits from the Plaintiffs and Class members, in the form of costs paid, copayments, and coinsurance payments, and inequity has resulted.

1166.   It is inequitable and unconscionable for Defendants to retain these benefits.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL - 263

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1167.   Because Defendants concealed their fraud and deception, Plaintiffs and the Class members were not aware of the true facts concerning Defendants efforts to inflate the cost of test strips described herein and did not benefit from Defendants' misconduct.

1168.   Defendants knowingly accepted the unjust benefits of its fraudulent conduct.

1169.   As a result of Defendants' misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs and Class members, in an amount to be proven at trial.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a.   Determine that this action may be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), (b)(2), and/or (b)(1), and direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Classes, and declare Plaintiffs as the representatives of the respective Classes they seek to represent, and appoint their attorneys as Class Counsel;

b.   Enter judgments against Defendants and in favor of Plaintiffs and the Classes for violations of the federal and state laws and legal standards invoked in this Complaint;

c.   Award preliminary and permanent injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the unlawful acts described above; an order requiring Defendants or their agents to disclose the existence and/or amount of any rebates, discounts, fees, or other payments received by the PBM Defendants for including test strips on any formulary, and an order requiring Defendants or their agents to disclose the true net price of test strips collected by the Manufacturer Defendants;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

d.  Find that the PBM Defendants are fiduciaries and/or parties in interest as defined by ERISA;

e.  Find that the PBM Defendants violated their fiduciary duties of loyalty and prudence to ERISA Class members, and that they engaged in prohibited transactions in violation of ERISA;

f.  Award to the ERISA Plaintiffs and the ERISA Class restitution, surcharge, and/or other appropriate equitable relief, including, without limitation, disgorgement of all profits and unjust enrichment that Defendants obtained from the ERISA Plaintiffs and the ERISA Class, as a result of the Defendants' unlawful actions;

g.  Order other such remedial relief as may be appropriate under ERISA, including the permanent removal of Defendants from any positions of trust with respect to the ERISA Plans of the members of the ERISA Class and the appointment of independent fiduciaries to serve in the roles the PBM Defendants occupied with respect to the ERISA Plans of the ERISA Class, including as pharmacy benefit administrators and managers;

h.  Order Defendants to pay pre-judgment and post-judgment interest as provided for by law or allowed in equity;

i.  Award Plaintiffs and the Classes damages (three times overcharges) in an amount to be determined at trial;

j.  Award Plaintiffs and the Classes their costs of suit, including reasonable attorneys' fees as provided by law, including under RICO, ERISA, the common fund doctrine, and applicable state law;

k.  Find that Defendants are jointly and severally liable for all claims;

l.  Order that Defendants must notify each and every individual who paid a copayment or coinsurance for covered prescription products that exceeded the true cost of the

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   product about the pendency of this action so that they may obtain relief from

2   Defendants for their harm; and

3   m. Award such further and additional relief as the case may require and the Court may

4   deem just and proper under the circumstances.

5                    **X.    JURY DEMAND**

6          Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs, on behalf of themselves and

7   the proposed Classes, demand a trial by jury on all issues so triable.

8

9

10

11   DATED this 24th day of May, 2017.

12                              **KELLER ROHBACK L.L.P.**

13

14   By */s/ Derek W. Loeser*
        */s/ Gretchen S. Obrist*
15        Derek W. Loeser, WSBA #24274
          Gretchen S. Obrist, WSBA #37071
16        1201 Third Avenue, Suite 3200
          Seattle, WA 98101-3052
17        Phone: (206) 623-1900
          Fax: (206) 623-3384
18        dloeser@kellerrohrback.com
          gobrist@kellerrohrback.com
19
          *Attorneys for Plaintiffs*
20

21

22

23

24

25

26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384